UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

HEWLETT-PACKARD                        )
DEVELOPMENT COMPANY, L.P.,             )
HEWLETT-PACKARD COMPANY,               )
and Compaq TRADEMARK B.V.,             )
                                       )
                Plaintiffs,            )
                                       )
vs.                                    )   Civil Action No. 04-3055
                                       )
MIDWEST INFORMATION                    )
TECHNOLOGY GROUP, INC. and             )
MICHAEL LAUBER,                        )
                                       )
                Defendants.            )

### AMENDED COUNTERCLAIM OF DEFENDANT MIDWEST INFORMATION TECHNOLOGY GROUP, INC.

COMES NOW the Defendant, **Midwest Information Technology Group, Inc.,** by and through its attorneys, **Schmiedeskamp, Robertson, Neu & Mitchell,** and for its Amended Counterclaim against Plaintiffs Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark B.V. states as follows:

### BACKGROUND

1.      MITG is a Missouri corporation with its principal place of business at 4220 Koch's Lane, Quincy, Illinois 62305.

2.      Hewlett-Packard Development Company, L.P. is a Texas limited partnership located at 20555 SH 249 in Houston, Texas 77070, and Hewlett-Packard Company is a Delaware corporation located at 3000 Hanover Street in Palo Alto, California 94304 (collectively "HP").



Compaq Trademark B.V. ("Compaq") is a Netherlands company with its principal place of business at Startbaan 16, 1187 Xr Amstelveen, The Netherlands.

3. On or about February 7, 2002 MITG and Compaq Direct, Inc. ("CDI") entered into a Standard Support Agreement ("Agreement"). (See Exhibit 1).

4. Under the Agreement, CDI retained MITG exclusively to provide CDI with computer related support services, which included computer parts sales, computer hardware maintenance and repair.

5. The services were offered by MITG to CDI's end users, customers, companies and commercial entities either directed or referred by CDI to MITG.

6. In return for the services performed and parts supplied by MITG, CDI agreed to pay MITG pursuant to the terms and conditions of the Agreement.

7. On or about February 8, 2002 MITG and CDI entered into a Middleware Agreement. (See Exhibit 2).

8. Under the terms of the Middleware Agreement, MITG agreed to and did develop software that linked together the parties' webtools and created an interface that sent orders from MITG's webtools directly into Compaq's VISTA-Order Entry System. After an order was reviewed, released and credit approval obtained, the Middleware system submitted an order acknowledgment to the parties' webtools.

9. The Middleware Agreement was entered into for a period of two (2) years. Thereafter, the Agreement automatically continued for a period of one year and from year to year thereafter unless one of the parties gave notice to the other not less than ninety (90) days prior to the end of the then current year that the party desired to terminate the Middleware Agreement.

10. On or about May 3, 2002 HP merged with Compaq and assumed the rights and obligations of Compaq under the Agreement and Middleware Agreement.

11. On October 30, 2003 HP provided notification that it was terminating the Agreement effective February 8, 2004. The Agreement has thus expired.

12. On March 19, 2004, HP provided notification that it was terminating the Middleware Agreement effective February 8, 2005. In short, the Middleware Agreement remains in full force and effect between the parties as of this date. (See Exhibit 3).

## COUNT I
## BREACH OF CONTRACT -STANDARD SUPPORT AGREEMENT

13. Defendant/Counterclaim Plaintiff, MITG hereby adopts and incorporates by reference each and every allegation contained within paragraphs 1 through 6 as well as paragraphs 10 and 11 of the Background above as if fully set forth herein.

14. The Agreement contains an exclusivity clause whereby HP gave MITG the exclusive right to provide parts and services to HP's customers. Consistent with that exclusivity, MITG was given a service level schedule and guarantee.

15. HP guaranteed a minimum fee payment to MITG each month for basic telephone service calls based upon either four hundred (400) calls per day or Forty-One Thousand Dollars ($41,000.00) per month, whichever was greater.

16. If MITG received more than the minimum four hundred (400) calls per day, creating a balance due above and beyond Forty-One Thousand Dollars ($41,000.00) in a given month, HP was obligated to pay MITG the additional sum due on the first day of the following month.

3

17. HP breached the provisions of the Agreement throughout its term by referring, routing, processing or diverting customer telephone calls away from MITG to HP's own Service Centers where these calls were processed in violation of the exclusivity clause which required that those calls be routed or referred to MITG for processing.

18. MITG notified HP of its violation of the Agreement in 2003. Nevertheless, and despite the notification from MITG that HP was breaching the exclusivity clause of the Agreement, HP knowingly and intentionally continued to divert, handle and process sales calls that should have gone to MITG.

19. By way of this continued action, HP acted in bad faith and intentionally and fraudulently denied MITG its contractual rights. HP's actions substantially harmed, hindered and negated the business opportunity of MITG in fulfilling the parts orders that were its exclusive right under the Agreement.

WHEREFORE, Defendant/Counterclaim Plaintiff, Midwest Information Technology Group, Inc. prays that this Court enter judgment in its favor and against Plaintiffs/Counterclaim Defendants, Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark B.V. for damages in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus its costs and attorney's fees expended herein, and for such other and further relief as the Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT STANDARD SUPPORT AGREEMENT – PUNITIVE DAMAGES

20.   Defendant/Counterclaim Plaintiff, MITG hereby adopts and incorporates by reference each and every allegation contained within paragraphs 13 - 19 of Count I of its Counterclaim above as if fully set forth herein.

WHEREFORE, Defendant/Counterclaim Plaintiff Midwest Information Technology Group, Inc. prays that this Court enter judgment in its favor and against Plaintiffs/Counterclaim Defendants, Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark B.V. for punitive damages and for such other and further relief as the Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT – MIDDLEWARE AGREEMENT

21.   Defendant/Counterclaim Plaintiff, MITG hereby adopts and incorporates by reference each and every allegation contained within paragraphs 1, 2, 7-10 and 12 of the Background above as if fully set forth herein.

22.   The Middleware Agreement specifically provides that HP shall not modify, revise or sublicense the Middleware to others or use the Middleware for the benefit of any parties other than MITG without MITG's prior written consent.

23.   Further, the Middleware and all information and documentation relating thereto is to be held in confidence by HP, its subsidiaries and affiliates and cannot be disclosed to third parties without MITG's prior written consent.

24. HP acknowledges in the Middleware Agreement that the Middleware is the sole and exclusive property of MITG and that HP has no rights to its ownership or use except as expressly provided in the Agreement.

25. Despite the provision contained within the Middleware Agreement as summarized above, HP has directly violated and continues to directly violate the Middleware Agreement by using the Middleware with and for others of its customers, all without MITG's prior written approval or consent.

26. HP has misappropriated the Middleware for use with third parties which have been and are now conducting business with HP. HP has done so without obtaining any prior written approval or consent of MITG.

27. HP is using the Middleware, contrary to the terms of the Middleware Agreement, to interface orders placed by other customers despite the fact that the Middleware is the sole and exclusive property of MITG and MITG has not consented to such use.

WHEREFORE, Defendant/Counterclaim Plaintiff, Midwest Information Technology Group, Inc. prays that this Court enter judgment in its favor and against Plaintiffs/Counterclaim Defendants, Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark B.V. for damages in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus its costs and attorney's fees expended herein, and for such other and further relief as the Court deems just and proper.

## COUNT IV
## BREACH OF CONTRACT - MIDDLEWARE AGREEMENT – PUNITIVE DAMAGES

28.     Defendant/Counterclaim Plaintiff, MITG hereby adopts and incorporates by reference each and every allegation contained within paragraphs 21-27 above as if fully set forth herein.

29.     HP has breached the provisions of the Middleware Agreement throughout its term by knowingly and intentionally misappropriating the Middleware for use with third parties which have been and are now conducting business with HP.

30.     HP has acted in bad faith and intentionally and fraudulently denied MITG its contractual rights. HP's actions have substantially harmed, hindered and negated the business opportunity of MITG in that the Middleware is the sole and exclusive property of MITG, that HP has no rights to its ownership or use except as expressly provided in the Middleware Agreement, and HP has misappropriated the Middleware without obtaining any prior written approval or consent of MITG.

WHEREFORE, Defendant/Counterclaim Plaintiff Midwest Information Technology Group, Inc. prays that this Court enter judgment in its favor and against Plaintiffs/Counterclaim Defendants, Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark B.V. for punitive damages and for such other and further relief as the Court deems just and proper.

## COUNT V
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

31.     Defendant/Counterclaim Plaintiff, MITG, hereby adopts and incorporates by reference each and every allegation contained within paragraphs 1 - 6 as well as paragraphs 10 and 11 of the Background above as if fully set forth herein.

7

32. The Agreement contains an exclusivity clause whereby HP gave MITG the exclusive right to provide parts and services to customers. Consistent with that exclusivity, MITG was given a service level schedule and guarantee.

33. Throughout the term of the Agreement MITG had developed valid business relationships with its customers.

34. HP knew of the valid business relationships that MITG had developed with its business customers throughout the term of the Agreement.

35. The Agreement did not terminate until February 7, 2004.

36. In January 2004, HP identified the top eighty-nine (89) accounts of MITG based on a review of the amount of sales volume and order calls by MITG with its clients.

37. HP deliberately, intentionally and knowingly targeted the top eighty-nine (89) accounts of MITG and sent letters to each of these top MITG accounts prior to the Agreement terminating, without the acknowledgment from or the consent of MITG, indicating process changes as to the ordering of parts, account numbers and other information regarding the placement of parts orders.

38. The correspondence informed MITG clients that their parts orders would be placed with HP and no longer with MITG despite the fact the Agreement had not terminated and HP and MITG were still bound by the exclusivity clause contained within the Agreement.

39. HP deliberately, intentionally and knowingly followed their original January correspondence with phone calls to the top MITG accounts on or about February 1, 2004 despite the fact that the Agreement was still in full force and effect between HP and MITG.

40. Further, HP deliberately, intentionally and knowingly sent additional correspondence to the remaining two thousand plus customers of MITG the first week of February indicating that MITG would no longer be handling any of the service calls on behalf of HP and that all customer contacts should be immediately directed to HP. Said actions occurred prior to any termination of the Agreement between the parties.

41. HP also specifically and intentionally instructed various suppliers and distributors of MITG not to do further business with MITG.

42. HP's intentional interference with the business relationships of MITG induced and/or caused a termination of the business relationships of MITG with its clients, customers, suppliers and distributors.

43. HP's intentional interference has caused actual termination of the business relationships MITG had with its clients, customers, suppliers and distributors.

44. HP lacked justification for its actions in intentionally interfering with the business relationships of MITG.

45. As a result of the intentional interference of HP with the business relationships of MITG, MITG has been damaged. By way of these actions, HP acted in bad faith and intentionally and fraudulently denied MITG its business relationships which substantially harmed, hindered and negated the business relationships of MITG and have resulted in lost profits during and after the Agreement between the parties.

WHEREFORE, Defendant/Counterclaim Plaintiff, Midwest Information Technology Group, Inc. prays that this Court enter judgment in its favor and against Plaintiffs/Counterclaim Defendants, Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark

B.V. for damages in an amount in excess of One Hundred Thousand Dollars ($100,000.00) plus its costs and attorneys' fees expended herein, and for such other and further relief as the Court deems just and proper.

## COUNT VI
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS – PUNITIVE DAMAGES

46. Defendant/Counterclaim Plaintiff, MITG hereby adopts and incorporates by reference each and every allegation contained within paragraphs 31 through 45 of Count V of its Amended Counterclaim above as it is fully set forth herein.

WHEREFORE, Defendant/Counterclaim Plaintiff Midwest Information Technology Group, Inc. prays that this Court enter judgment in its favor and against Plaintiffs/Counterclaim Defendants, Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark B.V. for punitive damages and for such other and further relief as the Court deems just and proper.

s/       James A. Hansen
James A. Hansen IL Bar #6244534
Attorney for Defendant/Counterclaim Plaintiff,
Midwest Information Technology Group, Inc.
Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey Street, P. O. Box 1069
Quincy, IL 62306-1069
Telephone: (217) 223-3030
Facsimile: (217) 223-1005
E-mail: jhansen@srnm.com

CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of January, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Molly Buck Richard
>Thompson & Knight, LLP
>1700 Pacific Avenue, Suite 3300
>Dallas, TX 75201-4693
>
>Elizann Carroll
>Juneau, Boll & Ward
>15301 Spectrum Drive, Suite 300
>Addison, TX 75001
>
>Scott Spooner
>Heyl, Royster, Voelker & Allen
>Suite 575, National City Center
>1 North Old State Capitol Plaza
>P.O. Box 1687
>Springfield, IL 62705-1687

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: None.

>s/        James A. Hansen
>James A. Hansen IL Bar #6244534
>Attorney for Defendant/Counterclaim Plaintiff,
>Midwest Information Technology Group, Inc.
>Schmiedeskamp, Robertson, Neu & Mitchell
>525 Jersey Street, P. O. Box 1069
>    Quincy, IL 62306-1069
>Telephone: (217) 223-3030
>Facsimile: (217) 223-1005
>E-mail: jhansen@srnm.com