E-FILED
Tuesday, 18 January, 2005  06:15:51 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P., HEWLETT-PACKARD COMPANY, AND COMPAQ TRADEMARK B.V.<br><br>Plaintiffs<br><br>vs.<br><br>MIDWEST INFORMATION TECHNOLOGY GROUP, INC. AND MICHAEL LAUBER,<br><br>Defendants. | § § § § § § § § § § § § § § § § § Civil Action No. 04-3055 |

**PLAINTIFFS' RESPONSE TO MIDWEST INFORMATION TECHNOLOGY GROUP, INC.'S MOTION FOR LEAVE TO AMEND COUNTERCLAIM**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW, Plaintiffs Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark B.V.("Plaintiffs"), file this Response to Midwest Information Technology Group, Inc.'s Motion for Leave to Amend Counterclaim and for good cause would show this Court as follows:

**SUMMARY OF REASONS FOR DENIAL OF MITG'S MOTION FOR LEAVE**

Defendant Midwest Technology Group, Inc.'s Motion should be denied for the following reasons:

1. it is futile to add a claim for tortious interference because as matter of law, Hewlett-Packard Company ("HP"), had the right to communicate with its own customers about the handling of the contract between HP and its customers after February 7, 2004;
2. it is futile to add a claim for tortious interference because as a matter of law MITG cannot carry its burden to prove HP's actions were without justification;
3. it is futile to add a claim for tortious interference because HP cannot interfere with its own contracts with its customers.

## MITG'S REQUEST TO ADD A FUTILE CLAIM SHOULD BE DENIED

Before a party is granted leave to amend to add a claim, the Court must consider whether it is futile to allow the claimant to assert the claim or determines that the claim has no merit. In order to prevail on its proposed counterclaim of tortious interference, MITG must prove, among other things, that HP was not justified in taking the alleged actions.[1] Under Missouri[2] law a plaintiff has the burden of producing substantial evidence to establish the absence of justification.[3] MITG's proposed claim fails as a matter of law, so its Motion should be denied.

### MITG Cannot Show HP Was Without Justification in Contacting its Own Customers

"Without justification" is defined as the absence of any legal right to take the actions that form the basis of the asserted claim.[4] In making a claim that there was no justification, MITG must provide substantial evidence.[5] MITG cannot show improper interference because HP had a legitimate economic interest and employed no improper means.[6] Competitive conduct that is not illegal and is not independently actionable does not become actionable simply because it interferences with another's prospective

---

[1] See, e.g., *Wigley v. Capital Bank of Southwest Missouri*, 887 S.W.2d 715, 720 (Mo. Ct. App. 1994).
[2] The relationship between MITG and HP was governed by the Standard Support Agreement, which provides that Missouri law controls. As discussed below, HP's conduct at issue was governed by and in compliance with its rights and responsibilities under the Agreement, thus HP has cited Missouri law. MITG moved its operations to Illinois during the course of the Agreement, so, in an abundance of caution, HP has also cited Illinois law. The elements of tortious interference are the same. *Fieldcrest Builders v. Antonucci*, 724 N.E. 2d 49, 61 (Ill. App. 1999); *Kempner Mobile Electronics, Inc. v. Southwestern Bell Systems, LLC*, 2004 U.S. Dist. LEXIS 3384*29-31 (N.D. IL. 2004); *Robert Stofer v. First National Bank of Effingham*, 571 N.E. 2d 157, 166 (Ill. App. 1991)("lack of legal justification is for inducing the breach is an essential element in stating a cause of action for tortious interference."); *but see, Roy v. Coyne*, 630 N.E.2d 1024 (Ill. App. 1994(indicating a split in authority in Illinois).
[3] *Sisters of St. Mary v. Blair*, 766 S.W.2d 773, 775 (Mo.App.1989).
[4] *Hensen v. Truman Med. Ctr.*, 62 S.W.3d 549, 555 (Mo. Ct. App. 2001); *SSM Health Care, Inc. v. Deen*, 890 S.W.2d 343, 346 (Mo. Ct. App. 1994).
[5] *Wigley*, 887 S.W.2d at 720.
[6] *Id.*

contractual relationship.[7] There is no impropriety in self-interested interference when a defendant has a legitimate economic interest in the contract or expectancy. *Id.* One who has a present existing economic interest, such as a prior contract of its own or a financial interest in the affairs of the entity with whom it allegedly interfered, is privileged to interfere with another's business expectancy to protect one's own economic interest.[8] No liability arises for interfering with a contract or business expectancy if the action complained of was an act that the defendant had a definite legal right to do without any qualification.[9]

Further, the Missouri appellate court has held that "if the alleged interference by defendant is in substantial part motivated to protect a present existing economic interest, then a showing of improper means is required."[10] In fact, one with a present existing economic interest is privileged to interfere with another's business expectancy to protect one's own economic interest.[11] Improper means are means that are "independently wrongful, notwithstanding the injury caused by the interference."[12] In order to demonstrate an improper means, MITG must show that HP's alleged acts were "independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law."[13] MITG cannot do this.

---

[7] *Community Title Co. v. Roosevelt Federal Savings & Loan Association*, 796 S.W.2d 369, 372(Mo. 1990).
[8] *Id., O'Connor v. Shelman*, 769 S.W.2d at 461.
[9] *Id.*
[10] *Wigley*, 887 S.W.2d at 721; *Community Title*, 798 S.W.2d at 372; *SSM Health Care, Inc.*, 890 S.W.2d at 346.
[11] *Community Title*, 796 S.W.2d at 372
[12] *SSM Health Care, Inc.*, 890 S.W.2d at 346.
[13] *Hensen*, 62 S.W.3d at 555, citing *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 317 (Mo. banc 1993). *See also SSM Health Care, Inc.*, 890 S.W.2d at 346.

The case of *Community Title v. Roosevelt S&L* is insightful. Community Title claimed a business expectancy in the form of a lender's policy of title insurance. Roosevelt's loan commitment form required borrowers to provide such a policy from a title insurance company it approved. Roosevelt, as the beneficial party to the title insurance policy, had an economic interest in the proposed policy. In addition, Roosevelt had an economic interest in identifying those who sold or transferred an interest in property upon which Roosevelt held a deed of trust containing a due-on-sale clause. Community was facilitating and promoting activity to defeat enforcement of the forbidden due-on-sale clause. Because of Roosevelt's economic interest in the title insurance policy and in identifying its borrowers who entered into contracts for deeds, it was entitled to reject a title insurance policy issued by Community Title unless in doing so it employed some improper means.[14]

As shown by the Standard Support Agreement ("Agreement"), which is attached to MITG's proposed Amended Counterclaim and as pled in paragraphs 3-5 of same, Compaq Direct, ("CDI") a subsidiary of Compaq, Inc.,[15] and MITG entered into a contract by which MITG was providing services to CDI's customers. More specifically, the Agreement provides that MITG was to provide sales and service to CDI Customers "directed or referred by CDI to MITG." [Agreement ¶1]. MITG appears to claim that it developed a business relationship with CDI's customers through its service of those customers. It then alleges that HP interfered with those alleged relationships by

---

[14] *Lick Creek Sewer Systems v. Bank of Bourbon,* 747 S.W.2d 317, 323 (Mo.App.1988); *Hill v. Kansas City Star Co.,* 719 S.W.2d 808, 811 (Mo.App.1986).
[15] Hewlett-Packard Company and Compaq, Inc. merged in May, 2002. Post-merger, CDI became HP Direct. For the sake of consistency in this Response, Plaintiffs will use CDI or "Direct" to identify the party from Plaintiffs' side to the Agreement.

informing its own customers of a change in the process for ordering spare parts, including the issuance of new account numbers and new access points (websites and phone numbers) for ordering spare parts [proposed Amended Counterclaim ¶¶ 33-40]. HP acknowledges such communications (true and correct copies of the letters are attached hereto as Exhibit A), but the letters, on their face, prove HP's actions were justified. The letters state that the new process would be effective February 8, 2004, which is after the termination of the Agreement with MITG [see Defendants' Answer, ¶5, by which MITG admits the termination date]. Thus, HP's action about which MITG complains is the act of contacting its own customers to inform its customers how to continue ordering spare parts after February 7, 2004. That act most certainly is not a "wrongful act," as defined above. Because MITG's claim, as proposed, fails as matter of law, its request for leave to amend should be denied.

Moreover, the only contract or business relationship in place was HP's relationship with the customers of CDI. HP obviously cannot interfere with its own contractual relationships or if it did, it would not give rise to a cause of action for MITG. A party to a contract cannot tortiously interfere with his own contract.[16] As the Missouri appellate court has stated:

> An action for inducing a breach of contract will lie against only a third party, not a party to the subject contract. A party to the contract cannot be held responsible for inducing himself to commit a breach or for conspiring to breach it. To hold otherwise would be tantamount to permitting recovery of punitive damages in a contract action, which the Supreme Court of Missouri has declared to be improper.[17]

---

[16] *Wigley*, 887 S.W.2d at 722.

[17] *White v. Land Clearance for Redevelopment Auth.*, 841 S.W.2d 691, 695 (Mo. Ct. App. 1992).

Thus, MITG's proposed claim for tortious interference of contract arising out of MITG's servicing of CDI customers should be denied as without merit.

MITG also alleges, without sufficient factual pleadings, that HP "instructed various suppliers and distributor of MITG not to do further business with MITG." MITG does not plead the necessary elements of a tortious interference claim as to these suppliers and distributors, including whether the claim is to an exiting contract or business expectancy, HP's knowledge of the existence or possibility of a relationship, or a wrongful act by HP. The vagueness of the pleading shows the complete lack of merit of this claim.

## CONCLUSION

MITG seeks to add a claim that it cannot prevail on as a matter of law. HP has the right to communicate with its own customers about how those customers could order spare parts for their HP/Compaq equipment. MITG was servicing CDI customers pursuant to a contract between CDI and MITG. To the CDI customers, they dealt with Compaq/HP Direct, not MITG. The fact that Compaq/HP Direct decided, legitimately, to serve its customers in a different manner is not actionable. Accordingly, MITG's Motion for Leave to Amend should be denied.

Respectfully submitted,

s/Elizann Carroll
ELIZANN CARROLL
State Bar No. 00787209
JUNEAU, BOLL & WARD, P.L.L.C.
15301 Spectrum Dr., Suite 300
Addison Texas 75001
(972) 866-8333
(972) 866-8378 *fax*

MOLLY BUCK RICHARD
State Bar No. 16842800
THOMPSON & KNIGHT, LLP
1700 Pacific Ave., Suite 3300
Dallas, Texas 75201
(214) 969-1700
(214) 969-1750 *fax*

SCOTT D. SPOONER
Heyl, Royster, Voelker & Allen
Suite 575 National City Center
1 North Old State Capital Plaza
P. O. Box 1687
Springfield, IL 62705
(217) 522-8822
(217) 523-3902 *fax*

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on this the 18th day of January, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to James Hansen, counsel for Defendants, and Molly Buck Richard and Scott Spooner, counsel for Plaintiffs.

/s Elizann Carroll
ELIZANN CARROLL
State Bar No. 00787209
JUNEAU, BOLL & WARD
15301 Spectrum Dr., Suite 300
Addison Texas 75001
(972) 866-8333
(972) 866-8378 *fax*
ecarroll@juneauboll.com