10. **Sharing of Profit on Parts.** As part of, and in consideration of the parties agreements herein, CDI and MITG agree to share gross profits on the sale of parts to Customers as follows:

    A. MITG shall be entitled to seventy-five percent (75%) of the gross profit on the sale of all parts to Customers and CDI shall be entitled to twenty-five percent (25%) of the gross profit on the sale of all parts to Customers. For purpose of this provision, "gross profit" shall equal the difference between the invoice price for the part as billed to CDI and MITG's cost in procuring or obtaining the part. CDI's share of the profits shall be accounted for, and deducted by MITG daily, from the balance due MITG by CDI as established by the daily invoices sent to CDI as provided in paragraph 9.

11. **Service Level Schedule and Guarantee.**

    A. As part of the services provided hereunder by MITG, MITG shall provide technical advice, assistance and support to Customers via telephone through its technicians at its call center facilities with such service being available to Customers during regular business hours, being 8:00 a.m. to 5:00 p.m. Monday through Friday (except holidays). Such service calls placed to MITG's technicians through its call centers, for technical support and assistance shall be billed and charged to CDI for each call of ten (10) minutes or less ("Basic Telephone Service Call"), as follows:

| | | |
|---|---|---|
| (i) | 0 - 40000 calls per month | $5.25 per call; |
| (ii) | 40,001 calls to 80,000 calls per month | $5.00 per call; and |
| (iii) | over 80,000 calls | $4.75 per call. |

The aforesaid charges ("Basic Telephonic Service Charge") shall apply for any Basic Telephone Service Call and shall be billed monthly by MITG to CDI as set out in subsection B.

    B. In consideration of MITG maintaining its call service centers with technicians available to Customers during regular business hours as outlined in subsection A, CDI shall guarantee a minimum fee payment to MITG each month for Basic Telephone Service Calls based upon either 400 calls per day or $41,000 per month whichever is greater (the "Minimum Fee"). Billing for Basic Telephone Service Charges is as follows: $41,000 shall be invoiced by MITG to CDI each month (the "Billing Month") on the 1st day of the Billing Month and shall be due on the 15th day of the Billing Month. At the end of the Billing Month, MITG shall calculate the Basic Telephone Service Charges due for the entire Billing Month based upon the Minimum Fee and number of Basic Telephone Service Calls received (and the charges therefore) as set out herein. If more than $41,000 is due therefore from CDI to MITG for the Billing Month, MITG shall invoice CDI for the additional sum due on the first day of the following month and such additional sum shall be due from CDI to MITG on the 15th day of that month.

12. **Other Terms and Conditions Governing Transactions.** In addition to the specific terms and conditions set forth in this Agreement, CDI understands and agrees that the

5

parts transactions and services rendered to Customers hereunder shall be governed and controlled, as well, by certain written policies and procedures of MITG including, but not limited to, those relating to returns, credit acceptability, its outsourcing rules ("MITG's Bible"), manufacturing authorization, etc. MITG shall provide copies of these policies to CDI as well as any amendments or revisions thereto from time to time as those policies and procedures may be modified or changed.

13. **Notices.** All notices, approvals, requests, consents, and other communications given pursuant to this Agreement shall be in writing and shall be effective when received, or, if earlier, five (5) days after it is sent, and either shall be hand-delivered, set by telex, sent by Federal Express service or sent by United States certified or registered mail, return receipt requested, addressed to the recipient at the address listed in the first paragraph of this Agreement or at such other location to which the recipient has directed notice in accordance with this section.

14. **Proprietary Rights.** Each party acknowledges that the other party exclusively owns certain proprietary software, web sites, trademarks, logos, copyrights, domain names and other proprietary and intellectual property rights (collectively, "Intellectual Property Rights"). In this regard, CDI specifically acknowledges that MITG has developed web sites, logos, etc. for not only CDI, but also, for its Customers and that all rights thereto belong to MITG as part of its Intellectual Property Rights. Each party agrees that it shall not use the other party's Intellectual Property Rights without the prior written permission of the other party unless such use is reasonably necessary for its efficient performance under this Agreement and then only to the extent so necessary, but without acquiring any rights therein or thereto as a result of such permitted or necessary use. Neither this Agreement nor such use shall not give either party any rights or entitlements to the Intellectual Property Rights of the other party. Moreover, neither party shall ever dispute the ownership or validity of the other party's Intellectual Property Rights or take or cause to be taken any action that would invalidate such party's Intellectual Property Rights or otherwise demise such parties Intellectual Property Rights. It is understood that neither party shall acquire nor claim any rights to the Intellectual Property Rights of the other party or adverse to the other party's Intellectual Property Rights by virtue of this Agreement. As between the parties, all Intellectual Property Rights shall inure solely to and for the benefit of the rightful owner thereof.

15. **Confidentiality.**
    A. Each party acknowledges that their relationship with the other party will bring them each into close contact with certain proprietary information of the other party. In recognition of the foregoing, the parties agree that during the term of this Agreement, and for a period of two (2) years after the term hereof, each party will keep secret and will not disclose to any other person or entity any confidential matters of the other party, except as specifically consented to in the writing by the other party. For purposes of this Agreement, the term "confidential matters" shall mean all technical, financial and business information of the parties, their respective suppliers, principals, and customers lists, the contents of any MITG Service Agreement, suppliers' lists, marketing plans, and pricing information.

B:   In connection herewith, the parties acknowledge that all documents pertaining to, or relating to the confidential matters of the other party, are the sole and exclusive property of that party and are considered part of such party's intellectual property. To the extent that any such documents are in the possession of the other party upon the termination of this Agreement, then in that event, the party in possession of such documents shall return all such documents and copies thereof to the owner.

16. **Reputation.** During the term of this Agreement and following the termination hereof, neither MITG nor CDI shall intentionally or willfully engage in any act, the result of which damages the business reputation or image of the other party. It is agreed that termination of this Agreement, as the result of the occurrence of an Event of Default shall not constitute an act that damages the reputation of the other party.

17. **Force Majeure.** MITG shall not be liable to CDI or any of its Customers for any failure by it to perform its obligations under this Agreement by reason of war, civil commotion, strike, labor disturbances or disputes, abnormal weather conditions, an act of God, or any other causes outside the reasonable control of MITG.

18. **No Assignment.** Neither this Agreement nor any terms hereunder shall be assignable by either party without the other party's prior written consent.

19. **Governing Law and Consent to Jurisdiction.** This Agreement shall be governed by, and construed under the laws of the State of Missouri, and the parties hereto consent to the jurisdiction of the courts of the State of Missouri in connection with any matter relating to or arising out of this Agreement.

20. **Arbitration.** Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by binding arbitration pursuant to the then current rules of the American Arbitration Association or as otherwise provided by a decision of a majority of the arbitrators, and both parties hereby submit to such arbitration in Missouri. In the event either party institutes litigation or arbitration involving this Agreement, the prevailing party shall be entitled to recover from the other party its reasonable attorney fees and costs incurred.

21. **Severability.** In the event any provision of this Agreement is found to be unenforceable, void, invalid, or to be unreasonable in scope, such provision shall be modified to the extent necessary to make it enforceable, and as so modified, this Agreement shall remain in full force and effect. Failure to exercise any rights contained in this Agreement shall not be construed as a waiver of such rights or of any default hereunder. The payment terms of this Agreement shall be independent and unconditional so that such timely payment shall not be subject to any setoff or counterclaim.

22. **Exclusive Agreement.** This Agreement is exclusive. Everything herein contained shall be deemed to provide MITG with an exclusive right to provide parts and services to the Customers.