E-FILED
Thursday, 12 May, 2005  03:39:16 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P., HEWLETT-PACKARD COMPANY, AND COMPAQ TRADEMARK B.V. <br><br> Plaintiffs <br><br> VS. <br><br> MIDWEST INFORMATION TECHNOLOGY GROUP, INC. AND MICHAEL LAUBER, <br><br> Defendants. | § § § § § § § § § § § § § § § § § | Civil Action No. 04-3055 |

## PLAINTIFFS' MOTION TO COMPEL

Plaintiffs Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark, B.V. (collectively "Plaintiffs") file this Motion to Compel seeking an order that Defendant Midwest Information Technology Group, Inc. ("MITG") provide the discovery requested below, and for good cause would show this Honorable Court as follows:

### MITG REFUSES TO PRODUCE RELEVANT INFORMATION RELATING TO ITS CLAIM FOR DAMAGES ARISING OUT OF PLAINTIFFS' ALLEGED TORTIOUS INTERFERENCE

MITG alleges that Plaintiffs interfered with their business relationships, but refuses to provide requested information on its sales, revenue and profits allegedly generated from these relationships that would allow Plaintiffs to evaluate MITG's claim for lost profit damages. Incredibly, MITG claims such information is irrelevant, overly broad and/or unduly burdensome. By its Amended Counterclaim, MITG added a claim for tortious interference claiming that unidentified persons working for Plaintiffs interfered with business relationships between MITG and its "clients, customers, suppliers and distributors." In its January 4, 2005 Motion for Leave

to File the Amended Counterclaim, MITG stated that it learned new information to support its claim after the October 2004 deadline to amend. Yet, five months later, and at the end of the fact discovery period, MITG still has not provided an amount of its damages and refuses to provide Plaintiffs with the information necessary to evaluate a claim for monetary damages based on lost profits, arising out of Plaintiffs' alleged tortious interference.

### THE PARTIES HAVE ATTEMPTED IN GOOD FAITH TO RESOLVE THIS DISPUTE, BUT HAVE BEEN UNABLE TO, AND THEREFORE SEEK THE COURT'S ASSISTANCE

Plaintiffs served interrogatories and requests for production directed at the tortious interference claim.[1] As discussed further below, Plaintiffs asked for the identity of these clients, customers, suppliers and distributors and for information about sales and the revenue and profits generated from these relationships from February 2000 to the present. MITG timely responded, but this consisted primarily of objections without much information. In several instances, MITG stated that it would be supplementing its answers.[2] Shortly after receiving these initial discovery responses, Plaintiffs sent a letter to MITG's counsel addressing the shortcomings in the responses.[3] On May 2, 2005, Plaintiffs received the promised supplemental answers.[4] The supplement addressed a few of the issues raised in the letter, but not all issues. Plaintiffs then sent another letter addressing the continued refusal to provide requested information, particularly the revenue and profit information.[5] MITG agreed to further supplementation of certain information, but stood on its objections as to other discovery requests.[6]

---

[1] True and correct copies of the interrogatories and requests for production are attached hereto at Tabs 1 and 2, respectively.
[2] True and correct copies of the initial answers to interrogatories and requests for production are attached hereto at Tabs 3 and 4, respectively.
[3] A true and correct copy of the letter is attached hereto at Tab 5.
[4] True and correct copies of the supplemental answers to interrogatories and requests for production are attached hereto at Tabs 6 and 7, respectively.
[5] A true and correct copy of the letter is attached hereto at Tab 8.
[6] A true and correct copy of the letter is attached hereto at Tab 9.

## THE SPECIFIC DISCOVERY REQUESTS AT ISSUE

**INTERROGATORY NO. 1**: State the amount of lost profits during and after the term of the Standard Support Agreement that you claim to have lost due to the tortious interference of HP…and state the factual basis for the amount and how it was calculated.

Despite the fact that fact discovery closes May 13, 2005, MITG answered that "total amount of lost profits is unknown…" and then goes on to describe purported acts of interference by HP.[7] MITG filed a claim alleging it lost business due to Plaintiffs' actions. MITG is the only party that can say what business was lost. And yet, at the close of discovery, it cannot or will not provide that information. This would seem to indicate that MITG simply speculated that it lost business, as it cannot provide information on a basic element of its claim. MITG did provide two spreadsheets summarizing information apparently gleaned from HP documents and, apparently unproduced MITG documents that show MITG's revenue and profits <u>gained</u> during 2004. Not only is there is no back up documentation provided to support the numbers on the spreadsheets, how the "margin" was calculated, etc.; the information is not relevant or responsive to the inquiry. The spreadsheets do not provide the dollar figure for the damages MITG is seeking. Thus, MITG has failed to fully and completely answer this Interrogatory.

**INTERROGATORY NOS. 4, 8, 9 AND REQUEST FOR PRODUCTION NOS. 3, 4, 5, 10, 11**:

Each of these interrogatories and requests for production address MITG's sales, revenue (gross and net) and profit (gross and net) from clients, customers, suppliers and/or distributors from February 7, 2000 (two years before the Standard Support Agreement entered into between MITG and Compaq Direct) to the date the entity allegedly terminated its relationship with MITG. MITG objected to each of these discovery requests, claiming that the discovery "seeks [information/documents] outside the scope of the Standard Support Agreement and is therefore

---

[7] MITG also states, irrelevantly, that the total profits earned by HP due to its alleged interference is likewise unknown. This latter statement is irrelevant because MITG did not plead to recover such damages and, even if such damages might be recoverable, MITG would not be entitled to disgorgement under its pleadings.

PLAINTIFFS' MOTION TO COMPEL            PAGE 3

irrelevant." In response to Interrogatory No. 8 and each of the Requests, MITG asserted the objections of "overly broad and unduly burdensome." To the extent MITG provided any answer it was simply to reference the spreadsheets discussed above [MITG 1023-1026].

MITG's claim, as pled, is that HP communicated with entities with whom MITG had a business relationship prior to and after the termination of the Standard Support Agreement, which resulted in these entities ceasing to do business with MITG, and thus resulting in lost profits by MITG. A basic understanding of the relationship between Plaintiffs and MITG and MITG and its customers and clients is important to understanding this claim. Prior to the Standard Support Agreement, MITG sold spare parts as MITG. During the term of the Standard Support Agreement [February 7, 2002 – February 7, 2004], MITG began acting as Compaq Direct/HP Direct[8] to sell spare parts to Compaq/HP Direct customers. MITG also continued its separate business selling spare parts as MITG. Thus, the termination of the Agreement on February 7, 2004 terminated MITG's role as the servicer of HP Direct's customer's Compaq/HP spare part needs. The logical result of MITG having lost the HP Direct part of the business, and consequently revenues and profits it derived from acting as HP Direct for HP, is that MITG's overall revenue and profits may have decreased. MITG is not claiming that the termination of the Agreement was wrongful or that HP was not entitled to terminate the Agreement. Thus, the possibility that business was down or that MITG derived revenue only from selling spare parts as MITG, and not as HP Direct, may be an expected consequence of the end of the business relationship; not due to actions taken by HP.

The only documentation MITG has produced are the spreadsheets comparing revenue or profits the month before the termination to the months immediately post-termination, which

---

[8] The Agreement was entered into between Compaq Direct, a subsidiary of Compaq, and MITG. HP and Compaq merged, so Compaq Direct changed its name to HP Direct.

PLAINTIFFS' MOTION TO COMPEL             PAGE 4

appears to address MITG's post-termination revenue and profits made, is irrelevant. If MITG is claiming that those customers on the spreadsheets that did not order from MITG after February 7, 2004 were interfered with, then the sales, revenue and profits generated from sales to these customers before the termination is highly relevant. MITG was an on-going business and to prove a claim for lost profits it must show with reasonable certainty that it was making a profit before the alleged interference and had a reasonable expectation of future profits, which was lost due to the actions of HP. Thus, past sales, revenues and profits from those customers allegedly interfered with are relevant to MITG's claim for lost profits. Certainly the four-year period prior to the termination is a reasonable time period.

MITG, as counter-plaintiff, must establish with reasonable certainty the occurrence of lost profits. If it cannot provide such certainty, the alleged lost profits are not recoverable. The most common method of proving lost profits is a comparison of the plaintiff's profits prior to the tortious conduct with the profits received after the commission of the tort. The purpose of this comparison is to show a decrease in profits after the wrongdoing. In this case, MITG apparently does not find this method favorable, and thus is refusing to provide the information and documentation. The fact that MITG may not like this method to prove lost profits or finds the information unhelpful does not make the information irrelevant. Plaintiffs are entitled to this information to prepare a defense to any amount of lost profits claimed by MITG.

**INTERROGATORY NO. 2, 3, 5, 7, 10, 11**

MITG agreed, with reservations[9], in its letter of May 9, 2005 to "identify" persons asked about in these Interrogatories. MITG claims that Plaintiffs interfered with its customers, clients, suppliers and distributors. The Interrogatories ask for the identity of the customers, clients,

---

[9] MITG agreed to "supplement any information we have or can obtain as to company names, phone numbers or individuals...." [Tab 9, emphasis added]

supplier and distributors **and** who at HP made the statements or engaged in actions MITG contends constitute interference. Plaintiffs include this section in their Motion in an abundance of caution and to preserve Plaintiffs position that the answers are incomplete without all information being provided on both parts of the Interrogatories. Otherwise, the answer is hearsay upon hearsay, which (while non-admissible) makes it impossible for Plaintiffs to investigate the claims.

"Identify" is defined in paragraph 6 of Definitions, to include, for a company, its legal name, principal place of business, telephone number and name of the Chief Executive Officer or for a person, his/her name, business telephone number, home and business address, employer and title or position. MITG did not object to the definition but did not provide the requested information, despite the lack of an objection and a request in April that the information be included in the Supplemental Answers [see Tab 8]. Further, although MITG cited deposition testimony of MITG employees, MITG's corporate representative on this issue did not "identify" the entities or persons about whom these interrogatories inquire.[10] In fact, MITG's counsel stated on the record that the answers to written discovery, which are the subject of this Motion, might provide more information. The initial answers and the supplement provide some, but certainly not all of the information requested. Plaintiffs request that this Court order MITG to provide the requested information. Plaintiffs have no way to investigate MITG's claims unless MITG reveals this information.

---

[10] Ron Haught, the owner of MITG and the corporate representative on the tortious interference claim, testified vaguely about what customers, clients, suppliers or distributors MITG was referencing and provided no information on the identity of the alleged HP person(s) who contacted those entities. [*See* Haught deposition, pp 247-275, Tab 10].

PLAINTIFFS' MOTION TO COMPEL          PAGE 6

**PLAINTIFFS SEEK THE RIGHT TO TAKE THE DEPOSITIONS OF ENTITIES HP ALLEGEDLY INTERFERRED WITH, AND TAKE OR CONTINUE THE DEPOSITIONS OF MITG REPRESENTATIVES ON THE INFORMATION AND DOCUMENTS THAT ARE THE SUBJECT OF THIS MOTION, AND ON MITG'S CLAIM FOR MONETARY DAMAGES ON ITS BREACH OF CONTRACT CLAIMS**

As stated above, fact discovery in this case closes on May 13, 2005. In its Motion for Leave to Amend, MITG claimed, incorrectly, that Plaintiffs would have "adequate opportunity to cross-examine Defendants representatives in the upcoming depositions." This statement did not prove to be true. MITG has failed and refused to provide requested information in response to deposition questioning and written discovery. Additionally, Mr. Haught, MITG's owner and designated corporate representative stated in his February 18, 2005 deposition that:

1. he was lacking information on the tortious interference claim because it was such a new claim; and

2. he did not know the amount of damages MITG was claiming for any of its three claims (breach of the Standard Support Agreement, breach of the Middleware Agreement and tortious interference) because he needed an expert to do that.[11]

The lack of preparation of the corporate representative on the damages, combined with the refusal to provide obviously relevant information and documents has prejudiced Plaintiffs. Accordingly, Plaintiffs request that this Court permit Plaintiffs to continue the depositions of Ron Haught and any other representative of MITG who may have pertinent information on these issues.[12]

---

[11] Haught Depo pp 7-10 [Tab 10].This case is almost 18 months old and MITG has yet to calculate any of its damages. This deferral of its obligations is highly prejudicial to Plaintiffs.

[12] Mr. Haught deferred to MITG CFO Teresa Koch on explanations of the financials. To the extent that continues, particularly as on the spreadsheets, Plaintiffs request the right to continue Ms. Koch's deposition. Likewise, if Mr. Haught, as corporate representative defers to a sales person such as Richard Rice on a communication, or testifies that a certain person had the contact with the customer, Plaintiffs request the right to ask that person questions on the issue(s) about which Mr. Haught deferred.

PLAINTIFFS' MOTION TO COMPEL          PAGE 7

WHEREFORE, Plaintiffs respectfully request that this Court grant this Motion, overrule Defendant Midwest Information Technology Group, Inc's objections, order Defendant to fully answer Interrogatory Nos. 1, 2, 3, 4, 5, 7, 8, 10 and 11, produce documents responsive to Request for Production Nos. 3, 4, 5, 10 and 11, allow the depositions as requested above, and grant to Plaintiffs such other and further relief to which they may show themselves justly entitled.

Respectfully submitted,

/s Elizann Carroll
ELIZANN CARROLL
Texas State Bar No. 00787209
JUNEAU, BOLL & WARD, P.L.L.C.
15301 Spectrum Dr., Suite 300
Addison Texas 75001
(972) 866-8333
(972) 866-8378 *fax*

MOLLY BUCK RICHARD
Texas State Bar No. 16842800
Richard Law Group
8411 Preston Road, Suite 890
Dallas, TX 75225
(214) 206 4300
(214) 206 4330 (fax)

SCOTT D. SPOONER
Heyl, Royster, Voelker & Allen
Suite 575 National City Center
1 North Old State Capital Plaza
P. O. Box 1687
Springfield, IL 62705
(217) 522-8822
(217) 523-3902 *fax*

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this the 12th day of May, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to Delmer Mitchell and James Hansen, counsel for Defendants, and Molly Buck Richard and Scott Spooner, counsel for Plaintiffs.

/s Elizann Carroll
ELIZANN CARROLL
State Bar No. 00787209
JUNEAU, BOLL & WARD
15301 Spectrum Dr., Suite 300
Addison Texas 75001
(972) 866-8333
(972) 866-8378 *fax*
ecarroll@juneauboll.com