**E-FILED**
Thursday, 12 May, 2005 03:42:24 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P., HEWLETT-PACKARD COMPANY, AND COMPAQ TRADEMARK B.V.,<br><br>Plaintiffs<br><br>v.<br><br>MIDWEST INFORMATION TECHNOLOGY GROUP, INC. AND MICHAEL LAUBER,<br><br>Defendants. | §<br>§<br>§<br>§<br>§ Civil Action No. 04-3055<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**HEWLETT-PACKARD COMPANY'S INTERROGATORIES
TO MIDWEST INFORMATION TECHNOLOGY GROUP, INC.**

TO:   Defendant Midwest Information Technology Group, Inc., by and through its attorneys of record, James A. Hansen, Schmiedeskamp, Robertson, Neu & Mitchell, 525 Jersey, P.O. Box 1069, Quincy, Illinois 62306.

Plaintiff Hewlett-Packard Company hereby serves these Interrogatories to Defendant Midwest Information Technology Group, Inc. pursuant to Rule 33 of the Federal Rules of Civil Procedure.

Respectfully submitted,

_____
ELIZANN CARROLL
State Bar No. 00787209
JUNEAU, BOLL & WARD, P.L.L.C.
15301 Spectrum Dr., Suite 300
Addison Texas 75001
(972) 866-8333
(972) 866-8378 *fax*

MOLLY BUCK RICHARD
State Bar No. 16842800
THOMPSON & KNIGHT, LLP
1700 Pacific Ave., Suite 3300
Dallas, Texas 75201
(214) 969-1700
(214) 969-1750 *fax*

SCOTT D. SPOONER
Heyl, Royster, Voelker & Allen
Suite 575 National City Center
1 North Old State Capital Plaza
P. O. Box 1687
Springfield, IL 62705
(217) 522-8822
(217) 523-3902 *fax*

ATTORNEYS FOR PLAINTIFFS
HEWLETT-PACKARD DEVELOPMENT
COMPANY, L.P., HEWLETT-PACKARD
COMPANY AND COMPAQ
TRADEMARK B.V

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing documents was served on counsel for Defendants pursuant to the Federal Rules of Civil Procedure on this 2nd day of February 2005.

_____

## DEFINITIONS

1. "And" and "or" as used herein are inclusive, and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request matters that might otherwise be construed to be outside its scope.

2. "Any" means one or more.

3. "Communication" means any exchange, transmission or receipt (whether as listener, addressee, person called or otherwise) of information, whether such exchange, transmission or receipt be oral, written, or otherwise and includes, without limitation, any meeting, conversation, telephone call, letter, telegram and the exchange, transmission, or receipt of any document of any kind whatsoever.

4. "Describe," when used with reference to a request concerning documents, means any document that, in whole, in part, or in any way, characterizes, evaluates, appraises, assesses, refers to, relates to, regards, characterizes, alludes to, responds to, is connected with, comments on, is about, contrasts, compares, contradicts, analyzes, or in any way pertains to or provides a general explanation of the specified subject.

5. "Document" means written, recorded, or graphic materials of any kind, whether prepared by you or by any other person, that is in your employ, possession, custody, or control. The term includes but is not limited to agreements, contracts, letters, telegrams, inter-office communications, memoranda, reports, records, instructions, specifications, notes, notebooks, scrapbooks, diaries, diagrams, photographs, photocopies, charts, maps, drawings, blueprints, graphs, descriptions, drafts, minutes of meetings, conferences, and telephone or other conversations or communications, recordings, published or unpublished speeches or articles, publications, transcripts of telephone conversations, ledgers, financial statements, microfilm, microfiche, tape, disk or diskette recordings and computer printouts. The term "document" also

HEWLETT-PACKARD COMPANY'S INTERROGATORIES TO MIDWEST INFORMATION
TECHNOLOGY GROUP, INC. – Page 3

includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers; any such document is to be produced in a reasonably legible and useable form. The term "document" includes the original document (or a copy thereof if the original is not available) and all copies which differ in any respect from the original, including but not limited to any notation, underlining, highlighting, marking, or information not on the original.

6.  "Identify" means to state:

    a.    in the case of a person other than a natural person, its legal name, the address of its principal place of business, its telephone number, and the name of its chief executive officer;

    b.    in the case of a natural person, his or her name, business telephone number, home and business address, employer, and title or position;

    c.    in the case of a service, the identity of its producer and/or distributor and its trade name;

    d.    in the case of costs, the type and amount;

    e.    in the case of a document, either

        (1)    the title of the document, the author, the title or position of the author, the addressee, the title or position of the addressee, the type of document, the date it was prepared, the number of pages it comprises, and the identity of all persons indicated as receiving copies of the document, its subject matter, its present location or custodian, or

        (2)    a reference to the document, if it has been produced;

    f.    in the case of verbal communication, discussion, or meeting, the type of communication, discussion or meeting, its date or approximate date, the identity of its participants or attendees, and its general subject matter.

7.  "Including" means including but not limited to.

8.  "Or" means and/or.

9.  "Person" means any natural person, corporation, partnership, company, sole proprietorship, association, institute, joint venture, firm, governmental body or division thereof,

or other legal entity, whether privately or publicly owned or controlled, for profit or not-for-profit, or partially or fully government owned or controlled.

10. "Relate to," "regarding," and "relating to" mean, without limitation, to make a statement about, refer to, discuss, describe, reflect, contain, identify, allude to, respond to, connected with, commenting on, in respect to, about, contrasting, comparing, contradicting, analyzing, or in any way to pertain to, in whole or in part.

11. "HP" shall mean and refer to Hewlett-Packard Development Company, L.P. and Hewlett-Packard Company and their employees, consultants, representatives and any other individual or entity within its control or supervision, and all other persons acting in concert with them or at their direction.

12. "Plaintiffs" shall refer to Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark B.V. and all their employees, consultants, representatives or other individuals acting on behalf of or purporting to act on behalf of Plaintiffs.

13. "Defendant," "MITG," "you" or "your" shall mean Midwest Information Technology Group, Inc., its officers, directors, agents, servants, employees, consultants and any other individual or entity within its control or supervision, and all other persons or entities acting in concert with it or at its direction.

14. "Lauber" shall mean and refer to Defendant Michael Lauber and any other person or entity acting in concert with or on behalf of Michael Lauber.

## INSTRUCTIONS

1. These interrogatories are continuing in nature and include all documents, information and other data that any person subject to these interrogatories possesses, controls, prepares or receives between the date of receipt of this request and the date on which this

HEWLETT-PACKARD COMPANY'S INTERROGATORIES TO MIDWEST INFORMATION
TECHNOLOGY GROUP, INC. – Page 5

proceeding is final and no longer subject to any further proceedings. If any document otherwise responsive to these requests has left your possession or control since the inception of this action, identify the document and describe its disposition and current location and status.

2. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa. The masculine form of a noun or pronoun shall be considered to include within its meaning the feminine form of the noun or pronoun, and vice versa.

3. Regardless of the tense employed, all verbs shall be read as applying to the past, present, and future as is necessary to make any paragraph more, rather than less, inclusive.

4. For any document or description of a document withheld under a claim of privilege or work product, please state:

    a. the name and title of the author(s);

    b. the name and title of the person(s) to whom the document was addressed;

    c. the name and title of the person(s) to whom a copy of the document or its contents, or any part thereof, was sent or conveyed or to whom the document or a copy, or any part thereof, was shown;

    d. its date;

    e. the number of pages;

    f. a brief description of the subject matter;

    g. the paragraphs(s) of this request to which the document is otherwise responsive; and

    h. the nature and basis of the privilege claimed.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

State the amount of lost profits during and after the term of the Standard Support Agreement that you claim to have lost due to the tortious interference by HP, as alleged in the Amended Counterclaim, and state the factual basis for the amount and how the amount was calculated.

**ANSWER**:


**INTERROGATORY NO. 2:**

Identify each and every supplier and/or distributor who you believe, contend or allege was instructed by HP not to do further business with MITG, and state who at or acting on behalf of HP you believe, contend or allege made such statement or gave such instruction.

**ANSWER**:


**INTERROGATORY NO. 3:**

Identify each and every distributor and/or supplier with whom MITG did business or with whom MITG had a business relationship that you believe, claim or allege ceased doing business or terminated a business relationship with MITG due to the alleged interference by HP, as stated in the Amended Counterclaim.

**ANSWER**:


**INTERROGATORY NO. 4:**

For each and every supplier and/or distributor you allege terminated a business relationship with MITG due to the alleged interference by HP, state the amount of revenue (gross

HEWLETT-PACKARD COMPANY'S INTERROGATORIES TO MIDWEST INFORMATION
TECHNOLOGY GROUP, INC. – Page 7

and net) and amount of gross profit (gross and net) generated or earned by MITG from that supplier and/or distributor from February 7, 2000 until said supplier and/or distributor terminated the relationship.

**ANSWER**:


**INTERROGATORY NO. 5:**

Identify each and every entity you allege was an MITG customer or client, who you believe, contend or allege was contacted by HP and (1) informed that the Standard Support Agreement was terminated or was not in effect before the February 7, 2004 termination date, and/or (2) instructed to or told they should order spare parts from HP, rather than MITG, beginning prior to the February 7, 2004 termination date.

**ANSWER**:


**INTERROGATORY NO. 6:**

Identify each and every entity that told or informed MITG (orally or in writing) that it had been contacted by HP and told to cease using MITG for the ordering of spare parts prior to February 7, 2004.

**ANSWER**:


**INTERROGATORY NO. 7:**

Identify each and every client or customer with whom MITG did business or with whom MITG had a business relationship that you believe, claim or allege ceased doing business or terminated a business relationship with MITG due to the alleged interference by HP, as stated in the Amended Counterclaim.

**ANSWER**:


**INTERROGATORY NO. 8:**

For each and every client or customer you allege terminated a business relationship with MITG due to the interference by HP, state the number of orders (and for each order, number of spare parts purchased), amount of revenue (gross and net) and of gross profit (gross and net) generated or earned by MITG from that client or customer from February 7, 2000 until the termination of the relationship.

**ANSWER**:


**INTERROGATORY NO. 9:**

Identify each and every client or customer who placed an order with MITG from February 7, 2002 through February 7, 2004 that has not placed an order for, or acquired any spare parts from or through MITG since February 8, 2004.

**ANSWER**:


**INTERROGATORY NO. 10:**

Identify all the clients or customers to whom you are referring in paragraphs 33-34 and 43 of the Amended Counterclaim and for each, state the last date upon which you believe you had a business relationship with said client or customer and the last date on which they ordered spare parts from MITG.

**ANSWER**:

**INTERROGATORY NO. 11:**

Identify the suppliers and/or distributors to whom you are referring to paragraphs 41-43 of the Amended Counterclaim and for each, state the last date upon which you believe you had a business relationship with said supplier or distributor.

**ANSWER:**


**INTERROGATORY NO. 12:**

Identify any and all documents in your possession, custody and/or control or which you allege exist (even if you are not currently in possession of such documents) that support, evidence or refer to HP's alleged instruction(s) to "various suppliers and distributors of MITG not to do further business with MITG," as pled in paragraph 41 of the Amended Counterclaim.

**ANSWER:**


**INTERROGATORY NO. 13:**

Identify any and all documents in your possession, custody and/or control or which you allege exist (even if you are not currently in possession of such documents) that support, evidence or refer to HP's communication(s) (oral or written) with MITG clients or customers that you believe, claim or allege constitutes tortious interference, as pled in your Amended Counterclaim.

**ANSWER:**