E-FILED
Thursday, 12 May, 2005  03:47:07 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P., HEWLETT-PACKARD COMPANY, AND COMPAQ TRADEMARK B.V. ) ) ) ) ) Plaintiffs, ) ) vs. ) ) MIDWEST INFORMATION ) TECHNOLOGY GROUP, INC. ) AND MICHAEL LAUBER, ) ) Defendants. ) | Civil Action No. 04-3055 |

## MIDWEST INFORMATION TECHNOLOGY GROUP, INC.'S SUPPLEMENTAL ANSWERS TO HEWLETT-PACKARD COMPANY'S INTERROGATORIES

COMES NOW Defendant Midwest Information Technology Group, Inc., by and through its attorneys, Schmiedeskamp, Robertson, Neu & Mitchell, and for its supplemental answers to Hewlett-Packard Development Company, L.P.'s interrogatories states as follows:

### DEFINITIONS

1.   "And" and "or" as used herein are inclusive, and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request matters that might otherwise be construed to be outside its scope.

2.   "Any" means one or more.

3.   "Communication" means any exchange, transmission or receipt (whether as listener, addressee, person called or otherwise) of information, whether such exchange, transmission or receipt be oral, written, or otherwise and includes, without limitation, any meeting, conversation, telephone call, letter, telegram and the exchange, transmission, or receipt of any document of any kind whatsoever.

4.   "Describe," when used with reference to a request concerning documents, means any document that, in whole, in part, or in any way, characterizes, evaluates, appraises, assesses,

refers to, relates to, regards, characterizes, alludes to, responds to, is connected with, comments on, is about, contrasts, compares, contradicts, analyzes, or in any way pertains to or provides a general explanation of the specified subject.

5.  "Document" means written, recorded, or graphic materials of any kind, whether prepared by you or by any other person that is in your employ, possession, custody, or control. The term includes but is not limited to agreements, contracts, letters, telegrams, inter-office communications, memoranda, reports, records, instructions, specifications, notes, notebooks, scrapbooks, diaries, diagrams, photographs, photocopies, charts, maps, drawings, blueprints, graphs, descriptions, drafts, minutes of meetings, conferences, and telephone or other conversations or communications, recordings, published or unpublished speeches or articles, publications, transcripts of telephone conversations, ledgers, financial statements, microfilm, microfiche, tape, disk or diskette recordings and computer printouts. The term "document" also includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers; any such document is to be produced in a reasonably legible and useable form. The term "document" includes the original document (or a copy thereof if the original is not available) and all copies which differ in any respect from the original, including but not limited to any notation, underlining, highlighting, marking, or information not on the original.

6.  "Identify" means to state:

   a.  in the case of a person other than a natural person, its legal name, the address of its principal place of business, its telephone number, and the name of its chief executive officer;

   b.  in the case of a natural person, his or her name, business telephone number, home and business address, employer, and title or position;

   c.  in the case of a service, the identity of its producer and/or distributor and its trade name;

   d.  in the case of costs, the type and amount;

   e.  in the case of a document, either

      (1)  the title of the document, the author, the title or position of the author, the addressee, the title or position of the addressee, the type of document, the date it was prepared, the number of pages it comprises, and the identity of all persons indicated as receiving copies of the document, its subject matter, its present location or custodian, or

      (2)  a reference to the document, if it has been produced;

   f.  in the case of verbal communication, discussion, or meeting, the type of communication, discussion or meeting, its date or approximate date, the

identity of its participants or attendees, and its general subject matter.

7. "Including" means including but not limited to.

8. "Or" means and/or.

9. "Person" means any natural person, corporation, partnership, company, sole proprietorship, association, institute, joint venture, firm, governmental body or division thereof, or other legal entity, whether privately or publicly owned or controlled, for profit or not-for-profit, or partially or fully government owned or controlled.

10. "Relate to," "regarding," and "relating to" mean, without limitation, to make a statement about, refer to, discuss, describe, reflect, contain, identify, allude to, respond to, connected with, commenting on, in respect to, about, contrasting, comparing, contradicting, analyzing, or in any way to pertain to, in whole or in part.

11. "HP" shall mean and refer to Hewlett-Packard Development Company, L.P. and Hewlett-Packard Company and their employees, consultants, representatives and any other individual or entity within its control or supervision, and all other persons acting in concert with them or at their direction.

12. "Plaintiffs" shall refer to Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark B.V. and all their employees, consultants, representatives or other individuals acting on behalf of or purporting to act on behalf of Plaintiffs.

13. "Defendant," "MITG," "you" or "your" shall mean Midwest Information Technology Group, Inc., its officers, directors, agents, servants, employees, consultants and any other individual or entity within its control or supervision, and all other persons or entities acting in concert with it or at its direction.

14. "Lauber" shall mean and refer to Defendant Michael Lauber and any other person or entity acting in concert with or on behalf of Michael Lauber.

## INSTRUCTIONS

1. These interrogatories are continuing in nature and include all documents, information and other data that any person subject to these interrogatories possesses, controls, prepares or receives between the date of receipt of this request and the date on which this proceeding is final and no longer subject to any further proceedings. If any document otherwise responsive to these requests has left your possession or control since the inception of this action, identify the document and describe its disposition and current location and status.

2. The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa. The masculine form of a noun or pronoun shall be considered to include within its meaning the feminine form of the noun or

pronoun, and vice versa.

    3.    Regardless of the tense employed, all verbs shall be read as applying to the past, present, and future as is necessary to make any paragraph more, rather than less, inclusive.

    4.    For any document or description of a document withheld under a claim of privilege or work product, please state:

    a.    the name and title of the author(s);

    b.    the name and title of the person(s) to whom the document was addressed;

    c.    the name and title of the person(s) to whom a copy of the document or its contents, or any part thereof, was sent or conveyed or to whom the document or a copy, or any part thereof, was shown;

    d.    its date;

    e.    the number of pages;

    f.    a brief description of the subject matter;

    g.    the paragraphs(s) of this request to which the document is otherwise responsive; and

    h.    the nature and basis of the privilege claimed.

## INTERROGATORIES

INTERROGATORY NO. 1:

State the amount of lost profits during and after the term of the Standard Support Agreement that you claim to have lost due to the tortious interference by HP, as alleged in the Amended Counterclaim, and state the factual basis for the amount and how the amount was calculated.

ANSWER:   Total amount of lost profits is unknown as HP selectively targeted the top 110 accounts of MITG and later all accounts (as referenced in Exhibit Meyerfeld P and other documents) and sent them a migration announcement prior to the ending of the Standard Support Agreement. Further, HP instructed its own PBCO agents to stop referring any parts inquiries to the HP Direct phone number as of January 16, 2004. (Exhibit Chizek NN). Also, the agents were to remove the HP Direct (MITG) referral number from all phone lists and to address all parts inquiries and orders to Roseville all in violation of the Standard Support Agreement and before it

terminated. MITG is not in possession of the amount of lost profits due to these actions by Plaintiff. The total amount of profits that has been gained by HP due to the interference with and taking of our business is unknown as HP has not produced any documents showing the amount of profits it gained from the accounts it targeted, took from us or from the orders it stop referring to us and took in house at the HP Roseville Call Center.

However, MITG has attempted to gain some idea based on its own numbers by taking the document bate stamped HP 5072-5083 and comparing the numbers from those entities that had ordered over $500 from HP Direct (MITG) in the six months prior to January 2004 (as reflected in HP 5072-5083) and pulled their order numbers for January 2004. We then compared those orders to February 2004. We also pulled sales numbers reflecting prior customer of ours during the term of the Standard Support Agreement and what sales were made to those same customers after the agreement was terminated by HP. Attached are the spreadsheets documenting the lost profits bate stamped MITG 1023-1026.

INTERROGATORY NO. 2:

Identify each and every supplier and/or distributor who you believe, contend or allege was instructed by HP not to do further business with MITG, and state who at or acting on behalf of HP you believe, contend or allege made such statement or gave such instruction.

ANSWER:   Parts Now, CP&S (Computer Parts & Services), Avnet Technology Solutions and Software House International. See also deposition testimony of MITG employees.

On or about July 1, 2004 Ron Haught of MITG received a telephone call from Tom Walter who is the owner of Parts Now. Mr. Walter contacted Ron and indicated that somebody high up on the blue side of HP had been calling their authorized HP parts re-sellers and asking them not to sell product to MITG because HP stated MITG was representing themselves out as HP. Tom told Ron that the inference has been that Parts Now will lose the HP business if he continues to sell product to MITG. Tom informed Ron that HP wanted Parts Now to provide HP all the sales records of Parts Now to MITG for the past year. Tom Walter informed Ron Haught he provided all the documentation HP requested.

On or about November 1, 2004 Terri Welch of MITG contacted Avnet to determine why MITG had not been receiving orders or part requests from them lately. She was informed MITG had been cut off by their legal department and buyers were instructed not to purchase from MITG because MITG did not have "true HP product" and Avnet was instructed to secure product through HPFS. Terri Welch was directed to speak with Laura Harris of Avnet regarding the situation. Laurie Harris referred Terri Welch to Greg Peterson, Vice President of Avnet Partner Solutions. All calls by Ms. Welch to Mr. Peterson have not been returned and Avnet has not done business with MITG since.

Within the last month Software House International informed MITG employee Rich Rice that they were told by HP that MITG was not an authorized reseller and if Software House International purchased any product from MITG and it was discovered by HP, HP would

5