E-FILED
Thursday, 12 May, 2005 03:48:29 PM
Clerk, U.S. District Court, ILCD

terminate its contract with Software House.

We do not have any knowledge or information as to who at HP made the statements and instructions to these entities.

INTERROGATORY NO. 3:

Identify each and every distributor and/or supplier with whom MITG did business or with whom MITG had a business relationship that you believe, claim or allege ceased doing business or terminated a business relationship with MITG due to the alleged interference by HP, as stated in the Amended Counterclaim.

ANSWER:   See answer to interrogatory No. 2.

INTERROGATORY NO. 4:

For each and every supplier and/or distributor you allege terminated a business relationship with MITG due to the alleged interference by HP, state the amount of revenue (gross and net) and amount of gross profit (gross and net) generated or earned by MITG from that supplier and/or distributor from February 7, 2000 until said supplier and/or distributor terminated the relationship.

ANSWER:   Objection. This interrogatory seeks information outside of the scope of the Standard Support Agreement and therefore is irrelevant. Further, Defendant has not alleged any interference by HP as to any supplier and/or distributor from the timeframe of February 7, 2000 up to and including the date in which the Standard Support Agreement was entered into between the parties. Further answering, and without waiving said objections, MITG states that it is impossible to state with certainty the alleged loss of revenue or profit as a result of the actions of HP as MITG was forced to obtain product and services elsewhere to meet the needs of its customers.

INTERROGATORY NO. 5:

Identify each and every entity you allege was an MITG customer or client, who you believe, contend or allege was contacted by HP and (1) informed that the Standard Support Agreement was terminated or was not in effect before the February 7, 2004 termination date, and/or (2) instructed to or told they should order spare parts from HP, rather than MITG, beginning prior to the February 7, 2004 termination date.

ANSWER:   Each and every entity that HP sent letters to as referenced in its own discovery documents and testimony of its employees. Specific documents produced by HP state that HP sent letters to at least the top 110 MITG customers and tracked MITG customers based on those that generated over $500 in sales over the six months prior to January 20, 2004 as referenced in

Exhibit Chizek OO, PP and QQ. As the documents produced by HP reference, the top accounts of MITG were sent correspondence. HP has yet to identify the entities in which that letter was sent to. That information is not within our possession. However, it is our belief that the letter was sent to all of the MITG accounts as referenced in documents HP 6145-6156 and the Table S Account List contained within HP 4665-5063.

Further, see documents HP 6132-6134 stating that the HP PBCO agents should be directed to stop referring any parts inquiries to the HP Direct number immediately as of January 16, 2004. The MITG phone number was to be removed from phone lists and all parts inquiries and order submissions for any available pmCompaq or HP parts were to be directed to Roseville among other things contained in said documents.

Obviously, we do not have in our possession all the entities that were affected by these actions of HP. Also, see Exhibit Meyerfeld R regarding new account set-ups directed away from MITG and to HP prior to the end of the Standard Support Agreement.

Agilent and DHL are two known accounts that were provided specific customer solutions by MITG during the Standard Support Agreement. In January 2004 HP contacted and made presentations to these entities regarding the ordering process as contained in discovery and by way of example documents HP 5066 and HP 5179.

See also deposition testimony of MITG employees.

INTERROGATORY NO. 6:

Identify each and every entity that told or informed MITG (orally or in writing) that it had been contacted by HP and told to cease using MITG for the ordering of spare parts prior to February 7, 2004.

ANSWER:    None.

INTERROGATORY NO. 7:

Identify each and every client or customer with whom MITG did business or with whom MITG had a business relationship that you believe, claim or allege ceased doing business or terminated a business relationship with MITG due to the alleged interference by HP, as stated in the Amended Counterclaim.

ANSWER:    See attached documents produced herein labeled MITG 1023-1026; interrogatory answers 1, 2 and 5. See also deposition testimony of MITG employees.

INTERROGATORY NO. 8:

For each and every client or customer you allege terminated a business relationship with

MITG due to the interference by HP, state the number of orders (and for each order, number of spare parts purchased), amount of revenue (gross and net) and of gross profit (gross and net) generated or earned by MITG from that client or customer from February 7, 2000 until the termination of the relationship.

ANSWER: Objection. This interrogatory seeks information for a time period prior to the Standard Support Agreement that was entered into the parties and is therefore irrelevant. Further objecting, this interrogatory is overly broad and unduly burdensome.

INTERROGATORY NO. 9:

Identify each and every client or customer who placed an order with MITG from February 7, 2002 through February 7, 2004 that has not placed an order for, or acquired any spare parts from or through MITG since February 8, 2004.

ANSWER: This request cannot be answered as posed. MITG did not keep track of its orders from February 7, 2002 through February 8, 2004 on an entity based system where parts could be tracked to each client or customer. What MITG has done is to take the orders placed in January 2004 by entities identified in document HP 5072-5083 and compare their order totals for January and February 2004. MITG has also produced a spreadsheet by customer for the remainder of 2004 to compare order totals. See documents MITG 1023-1026.

INTERROGATORY NO. 10:

Identify all the clients or customers to whom you are referring in paragraphs 33-34 and 43 of the Amended Counterclaim and for each, state the last date upon which you believe you had a business relationship with said client or customer and the last date on which they ordered spare parts from MITG.

ANSWER: See answers to interrogatories 4, 5, 7 and 9 herein.

INTERROGATORY NO. 11:

Identify the suppliers and/or distributors to whom you are referring to paragraphs 41-43 of the Amended Counterclaim and for each, state the last date upon which you believe you had a business relationship with said supplier or distributor.

ANSWER: See answers to interrogatories 2 and 3 herein.

INTERROGATORY NO. 12:

Identify any and all documents in your possession, custody and/or control or which you

8

allege exist (even if you are not currently in possession of such documents) that support, evidence or refer to HP's alleged instruction(s) to "various suppliers and distributors of MITG not to do further business with MITG," as pled in paragraph 41 of the Amended Counterclaim.

ANSWER:    None other than those produced by HP in this case. All communications with MITG were verbal.

INTERROGATORY NO. 13:

Identify any and all documents in your possession, custody and/or control or which you allege exist (even if you are not currently in possession of such documents) that support, evidence or refer to HP's communication(s) (oral or written) with MITG clients or customers that you believe, claim or allege constitutes tortuous interference, as pled in your Amended Counterclaim.

ANSWER:    MITG does not have any in its possession other than those produced by HP in this case and referenced herein.

MIDWEST INFORMATION TECHNOLOGY
GROUP, INC., Defendant

By: _____
One of its Attorneys

Delmer R. Mitchell
James A. Hansen
Schmiedeskamp, Robertson, Neu & Mitchell
Attorneys for Defendant
525 Jersey
P.O. Box 1069
Quincy, Illinois 62306
Telephone:  217-223-3030
Facsimile:  217-223-1005

9

## ATTESTATION

STATE OF Illinois )
                  ) SS.
COUNTY OF Adams )

Ronald D. Haught, Jr., as President of Midwest Information Technology Group, Inc., being first duly sworn on oath, deposes and states that he has read the foregoing Supplemental Answers to Interrogatories, and the answers made herein are true, correct and complete to the best of his knowledge and belief.

Midwest Information Technology Group, Inc.

By: _____
Ronald D. Haught, Jr., President

Subscribed and Sworn to before me this 27th day of April, 2005.

Pennie L. Seals

"OFFICIAL SEAL"
PENNIE L SEALS
NOTARY PUBLIC STATE OF ILLINOIS
COMMISSION EXPIRES 11/13/08

10