# HP and Compaq v. MITG

3:04-cv-03055-JES-CHE # 49-12   Page 1 of 6

## CondenseIt™
### E-FILED

Thursday, 12 May, 2005 03:52:41 PM
Clerk, U.S. District Court, ILCD

1

2

3                  UNITED STATES DISTRICT COURT

4                  CENTRAL DISTRICT OF ILLINOIS

5                     SPRINGFIELD DIVISION

6

7  HEWLETT-PACKARD DEVELOPMENT          )
   COMPANY, L.P., HEWLETT-PACKARD       )
8  COMPANY, and COMPAQ TRADEMARK B.V.,)
                                        )
9            Plaintiffs,                )
                                        )
10         - vs -                       ) No. 04-3055
                                        )
11 MIDWEST INFORMATION TECHNOLOGY       )
   GROUP, INC., and MICHAEL LAUBER,     )
12                                      )
             Defendants.                )
13

14

15           DEPOSITION of RONALD HAUGHT, taken in the

16 above-entitled case before Gina Nottingham, a Notary

17 Public and Certified Shorthand Reporter of Adams

18 County, Illinois, at 9:00 o'clock A.M., on February

19 18, 2005, at 525 Jersey Street, Quincy, Adams County,

20 Illinois.

21

22

23

24

25

---

Right column:

1

2   DEPONENT

3   RONALD HA

4

5

6

7

8

9

10

11

12

13   NUMBER
     Depositio
14   Depositio
     Depositio
15   Depositio
     Depositio
16   Depositio
     Depositio
17   Depositio
     Depositio
18   Depositio
     Depositio
19   Depositio
     Depositio
20   Depositio
     Depositio
21   Depositio
     Depositio
22   Depositio
     Depositio
23   Depositio

24

25

---

Page 2

1    APPEARANCES:

2        MS. ELIZANN CARROLL
         Attorney at Law

Page 2                                                                          Page 4

1

2                                    (Whereupon the Deponent was

3                                    sworn by the Notary Public.)

4                          R O N A L D   H A U G H T

5   having been first duly sworn by the Notary Public,

6   deposeth and saith as follows:

7                          EXAMINATION BY

8                          MS. CARROLL:

9        Q.   Can you state your name for the record,

10   please, sir?

11       A.   Ronald Dean Haught, Jr.

12       Q.   And what is your address, Mr. Haught?

13       A.   4304 Deer Ridge Road, Quincy, Illinois,

14   62305.

15       Q.   Thank you.  Have you had your deposition

16   taken before?

17       A.   Yes.

18       Q.   How many times?

19       A.   Several over the years.  I was former law

20   enforcement, so I have been through this process a

21   few times over the years.

22       Q.   Okay.  Any of the depositions relating to

23   MITG?

24       A.   One.

25       Q.   Okay.  And what kind of case was that?

1 notice. Have you seen that document before? It's
2 Exhibit 20.

3　　　MR. HANSEN: I can tell you he may not have
4 seen the notice. He has seen the exhibit.

5　　　MS. CARROLL: Q. That's fine. And I
6 understand from your lawyer, if you can confirm with
7 me, that it's also your understanding that you are
8 the representative on all of the, all 22 topics
9 except 8 and 9 on which your CFO, Miss Koch, was
10 designated. Is that your understanding?

11　　　MR. HANSEN: And, just so the record is
12 clear, 12.

13　　　MS. CARROLL: Q. 12 you all were jointly
14 designated on that topic?

15　　A. That's correct.

16　　Q. What did you do, if anything, to prepare
17 for your deposition today?

18　　A. Read over a few -- well, I read over the
19 original contract. That's really about it.

20　　Q. The Standard Support Agreement?

21　　A. That's correct, yes, and the Middleware
22 document, yes.

23　　Q. And have you or has MITG calculated the
24 actual damages that you claim it suffered due to the
25 plaintiff's alleged breach of contract of the

1 Standard Support Agreement?

2　　A. No. I have been unable to totall

24 actual damages that you claim it suffered due to the
25 plaintiff's alleged breach of contract of the

ou

MITG

ere in
that

ly and

is
acity as
stions

1 Standard Support Agreement?

2    A. No.  I have been unable to totally
3 calculate those damages.

4    Q. Why is that?

5    A. Well, for one you, I believe, just recently
6 turned over the documents necessary for us to be able
7 to fully evaluate that on one case.  Secondly, the
8 damages will more than likely be calculated by an
9 expert, because I don't feel that's my level of
10 expertise.

11    Q. And what documents are you referring to in
12 terms of the documents necessary to fully evaluate
13 the claim?

14    A. Well, if I'm not incorrect, part of our
15 claim for damages is based on misdirected or
16 redirected calls away from my facility, and those
17 records I would not have any, you know, any per se
18 knowledge of.  So we have asked that those records be
19 produced by your client.

20    Q. And I'll get into the diversion issue in a
21 little while.  Have you calculated the damages that
22 you claim that MITG has suffered due to
23 Hewlett-Packard's alleged misuse of the Middleware,
24 or breach of the Middleware Agreement?

25    MR. HANSEN:  Has he or the company?

Page 9

1      MS. CARROLL: Q. Has he or the company,
2 uh-huh.
3      A. We have not calculated as well based on a
4 previous answer, which is, I think that would be
5 determined by an expert.
6      Q. Do you believe that you have all of the
7 documents that would be necessary for an expert to
8 make that calculation?
9      MR. HANSEN: Object to form. Go ahead.
10      THE WITNESS: Can you rephrase that for
11 me?
12      MS. CARROLL: Q. Yeah. You indicated
13 before that there were some documents that you just
14 got that would assist you in calculating the damages
15 relating to the Standard Support Agreement. Do you
16 believe that there are any outstanding documents that
17 you need from HP that would help you calculate? Are
18 you waiting for something from HP to calculate those
19 damages?
20      A. I have yet to see those documents.
21 Actually I know that they were received. I don't
22 know what the content of those documents are. So I
23 don't feel I can answer that question today.
24      Q. Well, tell me who -- do I understand your
25 breach of the Middleware Agreement claim to be that

Page 10

1 HP has used the Middleware for the benefit of a third
2 party?

24      Q. Well, tell me who -- do I understand your
25  breach of the Middleware Agreement claim to be that

Page 10

1  HP has used the Middleware for the benefit of a third
2  party?
3        MR. HANSEN:  Object to form.  I think the
4  pleading speaks for itself.  But subject to that, he
5  can answer it.
6        THE WITNESS:  Yes.
7        MS. CARROLL:  Q. All right.  And do you
8  know what third party or parties have been given the
9  use of the Middleware?
10     A. Can you put that in more specific terms?
11     Q. Yeah.  Tell me who is using the Middleware
12  improperly?
13     A. I don't have specific knowledge of the
14  customers using that tool as I do not have access to
15  those records from within HP.
16     Q. Okay.  Have you calculated the damages that
17  you claim MITG has suffered due to the alleged
18  tortious interference by HP?
19     A. The tortious interference claim, if I'm not
20  incorrect, was just recently filed, and we are still
21  trying to develop all of the information and get the
22  information so that those determinations can be
23  made.  So today, no.
24     Q. Okay.  And just so the record is clear, I'm
25  reserving my right to retake his deposition on those

**Gina L. Nottingham, C.S.R.**