UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P., HEWLETT-PACKARD COMPANY, and COMPAQ TRADEMARK B.V., ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| vs. ) ) | Civil Action No. 04-3055 |
| MIDWEST INFORMATION TECHNOLOGY GROUP, INC. ) ) ) | |
| Defendant. ) | |

### DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S EXPERT, OR, IN THE ALTERNATIVE, FOR ATTORNEY'S FEES AND COSTS AND ADDITIONAL TIME TO DESIGNATE A RESPONSIVE EXPERT

COMES NOW the Defendant/Counterclaim Plaintiff, **Midwest Information Technology Group, Inc.** ("MITG"), by and through its attorneys, **Schmiedeskamp, Robertson, Neu & Mitchell**, and submits this memorandum of law in opposition to the Plaintiff's motion to strike Defendant's expert, or, in the alternative, for attorney's fees and costs and additional time to designate a responsive expert.

### INTRODUCTION

In its Rule 26 disclosures, MITG designated Scott A. Stringer as its expert on economic damages in this case. On June 30, 2005, MITG provided Hewlett-Packard ("HP") with Stringer's expert report. (A copy of this report is attached as <u>Exhibit A</u>). On July 27, 2005, Plaintiff deposed Stringer. During Stringer's deposition, the parties and Stringer learned that errors were made in Stringer's original calculation of MITG's damages. Specifically, Stringer's analysis assumed that

every customer who purchased through MITG was subject to the 75/25% profit split between MITG and HP. (Deposition of Scott Stringer, <u>Exhibit B</u>, p. 116; Stringer's Supplemental Expert Report, <u>Exhibit C</u>). In addition, Stringer used all of the gross orders of HP E-spares to calculate damages under the assumption that Andover calls were diverted to Roseville by HP beginning in May 2002, when, in fact, HP did not actually begin to divert calls to Roseville until November 9, 2002. (Deposition of Scott Stringer, <u>Exhibit B</u>, p. 72-73; Stringer's Supplemental Expert Report, <u>Exhibit C</u>). On August 17, 2005, Stringer supplemented his original report to correct these errors and to reflect newly received information. (<u>Exhibit C</u>).

HP's motion to strike is premised on the errors made in Stringer's original report and the claim that Stringer's calculations in the supplemental report are still incorrect and "wrong." HP's claims are essentially that Stringer relied on erroneous facts and assumptions, his calculations were wrong, he misunderstands facts of the case, he relied on information from MITG, and he was lazy and shoddy.

For the reasons stated in this memorandum, Stringer's supplemental report is proper and HP provides no basis for barring MITG's use of Stringer as its expert. HP's claims actually focus on Stringer's credibility rather than the admissibility of his report and testimony. The proper avenue for HP's attacks on Stringer's credibility are in a further deposition and cross-examination, or by an expert retained by HP.[1] HP's dislike of the methodology employed by Stringer and the opinions reached is insufficient to bar Stringer's admissibility as an expert witness.

---

[1] HP seeks a further deposition of Stringer and additional time to obtain an expert to respond to Stringer's report and testimony. MITG does not object to the further deposition of Stringer, and has advised HP's counsel that it does not object to additional time needed to obtain a responsive expert.

## ARGUMENT

I. **HP's MOTION IS NOT PROPERLY BEFORE THIS COURT BECAUSE HP HAS FAILED TO COMPLY WITH LOCAL RULE 7.1 AND HAS FILED A MOTION WITH NO SUPPORTING LEGAL AUTHORITY.**

In the conclusion of its motion to strike, HP represents its motion as one brought pursuant to Fed. R. Evid. 702, Fed. R. Evid. 703, and "Daubert." However, in its argument, HP fails to cite these authorities, or for that matter, any other authorities supporting the legal assertions made. HP fails to explain how the rules and the Daubert case (Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993)) apply to support banning Stringer's participation in this case on behalf of MITG.

Local Rule 7.1 clearly requires citation to authority to support any argument made through the submission of a proper legal memorandum. Ill. C.D. Local R. 7.1(B)(1). In fact, the rule states "[e]very motion . . . shall be accompanied by a memorandum of law including a brief statement of the specific points or propositions of law and supporting authorities upon which the moving party relies . . ."Ill. C.D. Local R. 7.1(B)(1). Incredibly, HP fails to cite any legal authority in its argument and fails to submit the required legal memorandum.

Absent a proper legal memorandum and citation to legal authority, HP's motion is not properly before this court, and the court should reject HP's arguments as unsupported by citation to authority. Piquard v. City of East Peoria, 887 F. Supp. 1106, 1127 (C.D. Ill. 1995) (rejecting arguments made without proper citation to authority and supportive legal memorandum as required by local rule); Draper v. Pickus, 2005 WL 1564983 at *6, n 6 (N.D. Ill. 2005), citing 330 West Hubbard Restaurant Corp. v. U.S., 203 F.3d 990, 997 (7th Cir. 2000) (party's failure to develop claim waives argument on appeal; "it is not the obligation of this court to research and construct the legal

3

arguments open to the parties, especially when they are represented by counsel . . . In order to develop a legal argument effectively, the facts at issue must be bolstered by relevant legal authority."); Board of Education of Tp. High School Dist. No. 205 v. Illinois State Bd. of Educ., 1989 WL 106610 at *4 (N.D. Ill. 1989) (it is the responsibility of the parties to present legal argument supported by citation to the relevant body of law; sweeping references to legal authority are insufficient). Thus, HP's motion should be denied on this basis alone.

II.   **MITG MEET ITS DUTY TO SUPPLEMENT ITS EXPERT REPORT ONCE IT DISCOVERED PORTIONS OF THE FIRST REPORT WERE INCORRECT.**

It is improper to claim MITG had no right to supplement its initial expert report when the initial report contained errors. MITG had, and continues to have, a clear duty to supplement the report. Pursuant to Fed. R. Civ. P. 26(e),

> "[a] party who has made a disclosure . . . is under a duty to supplement or correct the disclosure . . . to include information thereafter acquired if ordered by the court *or in the following circumstances:*
>
> (1) A party is under a duty to supplement . . . its disclosures . . . if the party *learns that in some material respect the information disclosed is incomplete or incorrect . . . .*"

Fed. R. Civ. P. 26(e)(1). Rule 26(e)(1) requires supplementation or correction of expert reports and information provided by the expert at deposition. Fed. R. Civ. P. 26(e)(1).

HP also fails to mention that this court specifically provided that supplemental expert reports could be submitted. On June 16, 2005, this court granted HP's motion to compel MITG to produce information on its customer base and sales for the year 2000 up to February 1, 2002, prior to entering into the standard support agreement. (See June 16, 2005 Order, attached as Exhibit D). In its June 16 order, the court recognized that it would be necessary to supplement expert reports based on the

4

information MITG was now ordered to disclose, and provided for expert reports to be supplemented. (See Exhibit D).

HP claims the supplemental report should not be allowed because information used to correct the errors in the initial report was not "thereafter acquired" as stated in Fed. R. Civ. P. 26(e). HP provides no definition of "thereafter acquired" as used in the Rule, and there is no indication that "thereafter acquired" should not be synonymous with "thereafter learned." In addition, as explained above, the court specifically allowed for supplemental expert reports based on information that was "thereafter acquired" ---- the information MITG was ordered to produce. Stringer notes in his supplemental report that after his first report was completed, he received a disc with an electronic spreadsheet created by MITG after July 1, 2005, based on information originally produced by HP. This newly acquired information sorted and calculated MITG's sales volume by CSN and outsourced orders for the years 2002-2004. (See Exhibit C). This spreadsheet was created combining information obtained from HP through discovery with the information from the materials MITG was ordered to produce on June 16 relating to its sales and customers from 2000-2002. The information on sales from 2000-2002 was produced by MITG only after the court's June 16 order and therefore provided to Stringer after the initial disclosure deadline. (See Exhibits C and D). Thus, it was proper to supplement the report based on the court's June 16 order.

To argue that the report should not have been supplemented despite the discovered errors, the presentation of new information, and the court's provision for supplementing the report is contrary to the rule. In fact, had MITG not supplemented its expert report, it would have risked sanctions under Fed. R. Civ. P. 37(c)(1) for the failure to do so. According to Rule 37(c)(1), a party is subject to sanctions for failing to disclose information required by Rule 26(a) or 26(e)(1), or to

5

amend a prior response as required by Rule 26(e)(2), unless the failure to do so is harmless. Fed. R. Civ. P. 37(c)(1). If MITG failed to supplement the expert report which contained incorrect and incomplete information, such failure would not have been harmless ---- it would have been knowingly concealing false information. The requirement of supplementation is discussed at length in the comments to Rule 26. A party, and specifically its attorney, is under an obligation to supplement whenever it learns its prior disclosures are incorrect, and the Rule prohibits knowing concealment of such inaccuracies. Fed. R. Civ. P. 26(e)(1). MITG has complied with this obligation.

Further, when applying Rule 26 the courts must consider the "conduct of the trial, the importance of the evidence to the proponent, and the ability of the defendant to formulate a response." BASF Corp. v. Old World Trading Co., 1992 WL 22201 at *4 (N.D. Ill. 1992), citing Smith v. MIT, 877 F.2d 1106, 1111 (1st Cir. 1989). Stringer's testimony is obviously important to MITG's claim for damages. In addition, because HP has plenty of time to evaluate the supplemental report, redepose Stringer, and retain a responsive expert, there is no prejudice to HP and the supplemental report should be allowed. BASF, 1992 WL 22201 at 5. When the opportunity to redepose the expert is available, exclusion is not the proper remedy. See BASF, 1992 WL 22201 at *5 (noting party's decision to seek exclusion "belies its claim of prejudice" and "exposes its motion to what it is: an attempt to exclude what may be damaging evidence.")

Contrary to HP's assertion, the supplemental report of Scott Stringer is admissible under the rules, and granting HP additional time to obtain its own expert and redepose Stringer, if necessary, is the appropriate remedy.

### III. ALLOWING STRINGER TO SUPPLEMENT HIS REPORT DOES NOT PREJUDICE HP.

HP claims the supplemental report is untimely and implies it will be prejudiced if MITG is allowed to supplement the report. HP's claim seems to be that it will now have to redepose Stringer at additional cost, has needlessly expended travel costs to depose Stringer the first time, and cannot meet its deadline to disclose its own expert by October 1. HP asks this court to require MITG to pay HP its attorney fees and costs to redepose Stringer and pursue this motion to strike. Again, HP cites no authority allowing the requested relief. HP is not entitled to recoup its fees and costs from MITG.

Although Fed. R. Civ. P. 26(e) provides for supplementing expert reports within the disclosure deadline established by the court, courts have expanded this deadline when the opposing party is not prejudiced and the timing of the disclosure was justified. Spearman Industries, Inc. v. St. Paul Fire and Marine Ins. Co., 138 F. Supp.2d 1088, 1094-1095 (N.D. Ill. 2001) (although supplemental report was provided after disclosure deadline, expert and initial report were disclosed within the deadline; expert was sole evidence on issue of causation; and opposing party had sufficient time to prepare to cross-examine expert); Sherrod v. Lingle, 223 F.3d 605, 613 (7th Cir. 2000) (expert and initial report were disclosed before deadline; opposing party had sufficient time to prepare to cross-examine expert); Knowles Elec., LLC v. Microtronic U.S., Inc., 2000 WL 310305, at *6 (N.D. Ill. 2000) (supplemental report disclosed 30 days prior to trial; expert was made available for deposition); Barron v. Lee Enterprises, Inc., 183 F. Supp. 2d 1077, 1083 (C.D. Ill. 2002) (denying motion to strike supplemental disclosures because party failed to show it was prejudiced).

Here, Stringer's initial report was disclosed before the July 1, 2005 deadline. In response to a motion to compel filed by HP, the court, on June 16, 2005, ordered MITG to produce certain materials, and specifically acknowledged that expert reports could be supplemented based on the

7

materials MITG was ordered to produce. (See Exhibit D). MITG's counsel informed HP's counsel during Ron Haught's July 25, 2005 deposition (two days before Stringer's scheduled deposition) that MITG intended to have Stringer supplement his report based on the court's June 16 order. (See Deposition of Ron Haught taken July 25, 2005, Exhibit E, p. 8). HP's counsel chose to proceed with Stringer's July 27, 2005 deposition anyway.

Stringer did not learn until his deposition of the errors made, and it is appropriate to correct the expert report based on information acquired during the deposition. See Wilson v. Sundstrand Corp., 2003 WL 22012673 at *8 (N.D. 2003) (noting fact that report was supplemented as result of deposition testimony does not necessarily make it improper). Thus, one week after Stringer's deposition, on August 3, 2005, MITG's counsel sent a letter to HP's counsel advising that Stringer's report would be supplemented in light of information learned at his deposition. (Exhibit F). Stringer's report was promptly supplemented on August 17, 2005, less than a month after his deposition and six weeks prior to any deadline faced by HP for disclosing any experts. (Exhibit C).

Further, the dispositive motion deadline in this case is over six months away (March 31, 2006). Expert discovery does not close until March 1, 2006. The case is not set for trial until July 10, 2006. Thus, HP is not under any time crunch which warrants striking Stringer's participation in this case. HP has plenty of time to redepose Stringer and retain its own expert if it so desires. Although HP must currently disclose its expert by October 1, MITG does not object, and in fact previously consented to, an extension of this deadline. (See Letter from MITG's counsel to HP's counsel dated August 3, 2005 attached as Exhibit F). HP is not prejudiced by MITG's supplemental expert report.

8

Finally, HP fails to furnish this court with any basis or legal authority for assessing fees and costs against MITG. In fact, there is no basis to require MITG to pay HP's attorney fees and costs for pursuing this motion or redeposing Stringer, because HP was not prejudiced and MITG was substantially justified in supplementing its expert report when it did. See e.g., Fed. R. Civ. P. 37(c)(1); U.S. v. Kemper Money Market Fund, Inc., 781 F.2d 1268, 1278 -1279 (7th Cir. 1986); Ahng v. Allsteel, Inc., 96 F.3d 1033, 1037 (7th Cir. 1996). HP claims it spent thousands of dollars preparing for, traveling to, and taking Stringer's deposition in St. Louis. HP's counsel fails to inform this court that she was in Quincy, Illinois on July 25 (two days before Stringer's deposition in St. Louis) to take the depositions of Ron Haught and Teresa Koch. (See cover sheets from these depositions, attached as Exhibit G). HP's counsel chose to take Stringer's deposition in conjunction with the depositions of Haught and Koch, and was well aware that Stringer's report would likely be supplemented based on the court's June 16 order. She was informed of this fact during the July 25 depositions. (Deposition of Ron Haught, taken on July 25, 2005, Exhibit E, p. 8). HP acknowledged as early as July 15, 2005, in its status report to the court (d/e 57), that the court granted the parties permission to supplement expert reports and even informed this court that its July 27 trip to St. Louis to take Stringer's deposition may be "a wasted trip." (d/e 57, p. 1, 2). In its own status report, MITG informed this court that certain information was overnighted to HP's counsel and that MITG had no problem with allowing HP to reschedule the July 25 and July 27 deposition dates. (d/e 58, p. 2). HP *chose not* to reschedule the depositions, despite receipt of additional information from MITG, despite knowing MITG's expert report would be supplemented and despite the offers of MITG's counsel. Any monetary loss HP incurred due to taking Stringer's deposition on July 27 was due to the decision of HP's counsel to take the deposition on that date.

9

IV. **STRINGER'S SUPPLEMENTAL REPORT AND OPINIONS ARE PROPER AND ADMISSIBLE.**

HP's claims that Stringer's supplemental report is improper are without merit. HP ignores the law on expert evidence, wrongly relies on portions of Stringer's initial report and deposition testimony, and self-servingly misstates the facts in this case.

HP claims Stringer's opinions are incorrect because portions of his initial report and/or deposition, which have been corrected in the supplemental report, were incorrect. For example, HP argues that Stringer's opinion was based on his misunderstanding and mistaken belief as to facts and testimony in this case, that "[a] review of the documents will also show is [sic] that the 5000 call number provided by Haught and relied on by Stringer is wrong" (HP's motion to strike, p. 7), and that Stringer did not seek explanation for information he did not understand.

These errors form the basis for and are corrected by the supplemental report. (See Exhibit C). Stringer has now taken into account, *inter alia*, that Andover did not begin redirecting calls to Roseville until November 2002; customers who continued buying from MITG after the SSA ended should be excluded from damages; damages for the loss of customers who ceased buying from MITG after the SSA ended must be prorated; and actual historical customer data in computing tortious interference damages must be used. See (Exhibit C).

HP also takes issue with statements made by Stringer. These issues revolve around HP's own misinterpretation of the facts in this case. HP's repeated statement that MITG never earned the 75/25% profit split on CSN parts is completely untrue. Pursuant to the "MITG bible," which is part of the agreement between MITG and HP, if MITG received an order for a CSN part, it could purchase the part from an outside vendor if the outside vendor's part was priced at least $175.00 less (for memory and hard drives $100.00 less) than HP's part. (See Deposition of Ron Haught, taken

February 18, 2005, <u>Exhibit H</u>, p. 37-39, and Haught Deposition Exhibit 4, p. 4, attached to <u>Exhibit H</u>). In this event, MITG would receive a 75% profit on the sale of the CSN parts. (See Deposition of Ron Haught, taken February 18, 2005, <u>Exhibit H</u>, p. 37-39, and Haught Deposition Exhibit 4, p. 4, attached to <u>Exhibit H</u>).

HP also claims Diane Pound's deposition testimony that the Andover call center only sold Compaq and DEC parts demonstrates the inaccuracy of Stringer's statement that Andover and MITG had the same sales mix. However, there is ample evidence, through testimony of HP's own employees, that the Andover call center and MITG had the same sales mix. Diane Pound testified that Andover and MITG had the capacity to take the same calls. Specifically, she testified that if the Andover call center did not have a part, they could refer the call to MITG.[2] (Deposition of Diane Pound, <u>Exhibit I</u>, p. 37-38, 68). Furthermore, when the Andover call center began receiving calls beyond their capacity, HP indicated the solution to deal with the excess calls would be to forward those calls to MITG for handling, because MITG "has the capacity and can take care of these customers." (Deposition of Roland Soriano, <u>Exhibit J</u>, p. 13, 17, 20, Deposition of Richard Chizek, <u>Exhibit K</u>, p. 13, 25, 29-30, and Chizek Deposition Exhibit KK, attached to <u>Exhibit K</u>). Thus, contrary to HP's assertions, there is evidence indicating that MITG and the Andover call center had the same sales mix.

What HP is doing is making arguments assessing the credibility of a witness's testimony against the credibility of an expert's testimony. Issues that depend on witnesses' credibility are for the jury to decide. <u>Latino v. Kaizer</u>, 58 F.3d 310, 315 (7th Cir. 1995). These issues are not appropriate for argument regarding the admissibility of Stringer or his report.

---

[2] MITG is also referred to as HP/Compaq Direct.

11

Although HP fails to cite any authority on which it relies for its positions, MITG feels it must address what it believes is the premise of HP's stance as to Stringer. In the conclusion of its motion to strike, HP represents its motion as one brought pursuant to Fed. R. Evid. 702, Fed. R. Evid. 703, and "Daubert."

Fed. R. Evid. 702 provides that "scientific, *technical, or other specialized knowledge*" is admissible if it "will assist the trier of fact to understand the evidence or to determine a fact issue," and the testimony is (1) based on sufficient facts or data; (2) the product of reliable principles or methods; and (3) the expert has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702 (emphasis added). According to the Daubert court, Rule 702 is flexible and the focus is solely on the "principles and methodology" used by the expert, not the conclusions reached. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 594-95, 113 S.Ct. 2786 (1993). In addition, there is no requirement that the procedure used by the expert be "generally accepted" by the community to be admissible. Daubert, 509 U.S. at 588.

In Kuhmo Tire Co. v. Carmichael, the Supreme Court determined that the factors outlined in Daubert *may*, but need not necessarily, be utilized in determining the reliability of expert evidence that is not scientific (i.e., that which is technical or relies on other specialized knowledge). Kuhmo Tire Co. v. Carmichael, 526 U.S. 137, 141, 150, 119 S.Ct. 1167 (1999). The Daubert factors do not necessarily apply to every expert in every case. Kuhmo Tire, 526 U.S. at 141. Instead, when the evidence's factual basis, data, principles, methods, or their application are brought sufficiently into question, the court's challenge is to determine if the evidence has a "reliable basis in the knowledge and experience of the relevant discipline." Kuhmo Tire, 526 U.S. at 149.

Here, the relevant discipline is accounting. Stringer, a Certified Public Accountant, was asked to determine MITG's lost profits. Illinois law does not require lost profits to be determined with absolute certainty, and lost profits can be recovered based on "any criteria by which the probable profits can be estimated with reasonable certainty." Havoco of America v. Sumitomo Corp. of America, 971 F.2d 1332, 1345 (7th Cir. 1992). HP claims that Stringer's analysis is flawed, in part because he uses information gained from MITG and makes certain assumptions. However, it is permissible for Stringer to use information gained from MITG and to make certain assumptions based on that information in reaching his conclusions. See Tuf Racing Products, Inc. v. American Suzuki Motor Corp., 223 F.3d 585, 591 (7th Cir. 2000) (accepting accountant's calculations of lost earnings based on information obtained from Tuf and assumptions provided by Tuf's counsel).

Most of the fault HP finds with Stringer's report and opinions are credibility issues, not issues related to the admissibility of his report and opinions. For example, HP finds fault with Stringer not being aware of certain facts (see HP's motion to strike, p. 5); Stringer's calculation of profit and revenue for CSN parts (see HP's motion to strike, p. 5); Stringer's acceptance of Ron Haught's calculation of MITG's monthly call volume (see HP's motion to strike, p. 6). These, in addition to other claims made by HP, focus on Stringer's credibility rather than his admissibility on MITG's behalf.

In Deputy v. Lehman Brothers, Inc., 345 F.3d 494, 506 (7th Cir. 2003), the Seventh Circuit reversed a Wisconsin district court for rejecting expert testimony based on similar issues. Specifically, the district court in Deputy rejected the expert's testimony because the expert (a handwriting analyst) could not identify a set of scientific principles or standards she applied; the expert did not adequately explain inconsistencies in her reasoning; the expert's report contained a

13

typographical error; the expert admitted she did not ask to view certain documents; the expert admitted she could not render an opinion at one time, but changed her mind and could render an opinion only four days later; the expert acknowledged certain differences with various handwriting samples; and the expert was less than candid in testifying about involvement in an unrelated case. Deputy, 345 F.3d at 506. According to the court "[m]ost of these seven stated reasons concerned issues of credibility and persuasiveness, but such considerations are relevant only in valuing the testimony, not in determining its admissibility." Deputy, 345 F.3d at 506.

Here, as in Deputy, HP asserts that Stringer's opinions are wrong. The court's role is not to determine issues of credibility and persuasiveness rather admissibility. Deputy, 345 F.3d at 506. Stringer supports and explains his methodology in his reports, and as a certified public accountant certified in business valuation by the National Association of Certified Valuation Analysts, he is qualified to perform the analysis he provides. HP makes no argument contesting Stringer's skill, expertise, training or education. HP's assertions are insufficient to completely bar Stringer's testimony in this case.

## CONCLUSION

The total lack of citation to facts in the record or to any legal authority supporting the various assertions and principles stated by HP in its motion to strike is, alone, sufficient to permit this court to deny its motion. The court cannot and should not merely take HP's word for what the facts surrounding MITG's customer base, compensation under the SSA, and losses are, and should not be required to conduct HP's legal research. HP is capable of following the rules of this court and putting together a well-supported legal argument. The fact HP has not done so only serves to demonstrate that its motion to strike Stringer as MITG's expert has no basis in law or fact.

MITG has not attempted to hide the errors in Stringer's original report, but rather, requested Stringer recalculate the damages based on the correct information discovered during his deposition and new information received after the disclosure of his initial report. MITG should not be penalized for complying with its duty to supplement disclosures and discovery under Fed. R. Civ. P. 26.

HP attempts to convince this court it is attacking the methodology used by Stringer when in actuality HP seeks a declaration that Stringer's opinions are wrong ---- a declaration which this court cannot provide. Therefore, the court must deny HP's motion to strike.

                                  s/              James A. Hansen
James A. Hansen IL Bar #6244534
Attorney for Defendant/Counterclaim Plaintiff,
Midwest Information Technology Group, Inc.
Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey Street, P. O. Box 1069
Quincy, IL 62306-1069
Telephone: (217) 223-3030
Facsimile: (217) 223-1005
E-mail: jhansen@smm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of September, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Molly Buck Richard
    Thompson & Knight, LLP
    1700 Pacific Avenue, Suite 3300
    Dallas, TX 75201-4693

    Elizann Carroll
    Juneau, Boll & Ward
    15301 Spectrum Drive, Suite 300
    Addison, TX 75001

    Scott Spooner
    Heyl, Royster, Voelker & Allen
    Suite 575, National City Center
    1 North Old State Capitol Plaza
    P.O. Box 1687
    Springfield, IL 62705-1687

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: None.

    s/_____James A. Hansen_____
    James A. Hansen IL Bar #6244534
    Attorney for Defendant/Counterclaim Plaintiff,
    Midwest Information Technology Group, Inc.
    Schmiedeskamp, Robertson, Neu & Mitchell
    525 Jersey Street, P. O. Box 1069
    Quincy, IL 62306-1069
    Telephone: (217) 223-3030
    Facsimile: (217) 223-1005
    E-mail: jhansen@srnm.com