Page E-FILED
Wednesday, 14 September, 2005 03:25:06 PM
Clerk, U.S. District Court, ILCD

**Pennie Seals**

JUN 1 6 2005

| | |
|---|---|
| **From:** | ECF_Returns@ilcd.uscourts.gov |
| **Sent:** | Thursday, June 16, 2005 3:11 PM |
| **To:** | ECF_Notices@ilcd.uscourts.gov |
| **Subject:** | Activity in Case 3:04-cv-03055-JES-CHE Hewlett Packard DC, et al v. Midwest Information, et al "Order on Motion to Compel" |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. District Court

### Central District of Illinois

Notice of Electronic Filing

The following transaction was received from CC, ilcd entered on 6/16/2005 at 3:10 PM CDT and filed on 6/16/2005
**Case Name:** Hewlett Packard DC, et al v. Midwest Information, et al
**Case Number:** 3:04-cv-3055
**Filer:**
**Document Number:**

**Docket Text:**
MINUTE ENTRY: for telephone conference regarding Motion to Compel. Attys Carroll and Hansen present. Motion to Compel (d/e 49) and Response (d/e 53) considered and motion heard. Motion to Compel (d/e 49) ALLOWED in part and DENIED in part as follows: Interrogatory No. 1 in motion ALLOWED; Interrogatories Nos. 4, 8, 9 and Requests for Production: Requests Nos. 3, 4, 5, 10 & 11 ALLOWED. Interrogatories Nos. 2, 3, 5, 7, 10 & 11 DENIED. Plaintiff given to and including 7/8/05 to comply. Plaintiffs-Counter/defendant's Request in the Motion to Compel to be allowed to take or continue depositions of MITG representatives on the information that is the subject of the motion and on MITG's claim for monetary damages on MITG's Breach of Contract claims ALLOWED. Parties are to comply with the dates in the scheduling order to identify experts and provide reports and a date will be set later to complete these depositions and for the parties' experts to supplement their experts' reports. Th! e parties are to confer and submit to the Court the dates proposed for the court to consider to complete these depositions and for their experts to supplement the experts reports. Entered by Mag. Judge Charles H. Evans on 6/16/05. (CC, ilcd)

The following document(s) are associated with this transaction:

**3:04-cv-3055 Notice will be electronically mailed to:**

Elizann Carroll    ecarroll@juneauboll.com, cburgwin@juneauboll.com

James A Hansen    jhansen@srnm.com, pseals@srnm.com

Delmer R Mitchell    dmitchell@srnm.com, lgrunden@srnm.com



EXHIBIT
D

6/16/2005

)                                        )

Molly Buck Richard     molly@richardlawgroup.com

Scott D Spooner     sspooner@hrva.com, sprecf@hrva.com;mclark@hrva.com

**3:04-cv-3055 Notice will be delivered by other means to:**

1

2                      U.S. DISTRICT COURT

3             CENTRAL DISTRICT OF ILLINOIS *COPY*

4                SPRINGFIELD DIVISION

5

6  HEWLETT-PACKARD DEVELOPMENT   )
    COMPANY, L.P., HEWLETT-PACKARD)

7  COMPANY, AND COMPAQ TRADEMARK,)
    B.V.,                       )

8             PLAINTIFFS,    )

9                        )
            vs.          )  No. 04-3055

10                      )
   MIDWEST INFORMATION      )

11  TECHNOLOGY GROUP, INC., AND  )
    MICHAEL LAUBER,        )

12                      )
           DEFENDANTS.    )

13

14        DISCOVERY DEPOSITION of RONALD HAUGHT, taken in

15 the above-entitled case before Tracy L. Grott, a Notary

16 Public and Certified Shorthand Reporter of Adams County,

17 Illinois, at 2:30 p.m., on July 25, 2005, at 525 Jersey, in

18 the City of Quincy, County of Adams, State of Illinois,

19 pursuant to stipulation hereto annexed.

20

21

22             Tracy L. Grott, CSR
              2901 Sonata Drive

23             Quincy, IL  62301
              217-223-3624

24

25

**EXHIBIT**

E

_____

```
 1   APPEARANCES

 2   MS. ELIZANN CARROLL
     Attorney at Law
 3   Juneau, Boll & Ward
     15301 Spectrum Drive, Suite 300
 4   Addison, TX  75001
              appeared for the Plaintiffs.
 5

 6   MR. JAMES HANSEN
     Attorney at Law
 7   Schmiedeskamp, Robertson, Neu & Mitchell
     525 Jersey
 8   P.O. Box 1069
     Quincy, IL  62306
 9            appeared for the Defendants.

10

11

12

13

14

15

16

17

18

19

20

21

22   Tracy L. Grott, CSR
     License No. 084-004435
23   2901 Sonata Drive
     Quincy, IL  62301
24   217-223-3624

25
```

1    Q.    All right.  And then would that be true

2    also for the tortious interference claim that you

3    have given him information about your business for

4    him to come up with the actual dollar amount?

5    A.    Once again, I need to review it, but I

6    would say I believe so.

7    Q.    Okay.  What about --

8        MR. HANSEN:  Just so the record's clear,

9    based on the Court's order, that report may be

10    supplemented based on some stuff that's been

11    produced and once Mr. Haught talks to

12    Mr. Stringer -- the experts were given leave to

13    amend reports if needed.

14        MS. CARROLL:  All right.

15        MR. HANSEN:  I'm saying if the number

16    changes you're going to get a supplement

17    report.

18        MS. CARROLL:  I'm not saying -- if we try

19    this case a year from now -- just whenever you

20    get around to it.

21        MR. HANSEN:  Thank you.

22    Q    (By Ms. Carroll) Fair enough. What I

23    haven't seen is any number since you're last

24    deposition for a dollar figure for the breech of the

25    Middleware Agreement which you also deferred that to

# Schmiedeskamp, Robertson, Neu & Mitchell

**LAWYERS**

525 JERSEY

P.O. BOX 1069

**Quincy, Illinois**

62306

DELMER R. MITCHELL
DENNIS W. GORMAN
JERRY L. BRENNAN
WILLIAM G. KELLER, JR.
WILLIAM M. McCLEERY, JR.
TED M. NIEMANN
GENA J. AWERKAMP*
BRETT K. GORMAN*
HAROLD B. OAKLEY*
MICHAEL A. BICKHAUS*
DAVID G. PENN
JAMES A. HANSEN*
GREGORY A. PRATT
BABETTE L. BRENNAN*
ANDREW K. CASHMAN*
MELINDA S. MADISON**

*ALSO LICENSED IN MISSOURI
**ALSO LICENSED IN NEW YORK

CARL G. SCHMIEDESKAMP (1898-1987)
JOHN T. ROBERTSON (1916-1995)
———
RICHARD B. NEU • RETIRED
———
(217) 223-3030

FAX (217) 223-1005

www.srnm.com

F.E.I.N. 37-0670873

August 3, 2005

**VIA FACSIMILE & U.S. MAIL**
Ms. Elizann Carroll
Juneau, Boll & Ward
15301 Spectrum Dr., Ste. 300
Addison, TX 75001

Re:   Hewlett Packard v. MITG, Inc. and Michael Lauber
      Cause No. 04-3055; United States Central District of Illinois

Dear Elizann:

As we discussed recently, I believe we will be able to get through all of the material and formulate a Supplemental Response to the tortuous interference Interrogatories by Friday, August 12, 2005. I am hopeful that at that point in time you will be able to decide whether or not to conduct further telephonic or in person depositions of any MITG representatives.

I have also met with my client and had ongoing discussions regarding the spreadsheet that Teresa Koch forwarded to our expert Scott Stringer that you saw at the deposition. Unfortunately I went back and I did find that it was e-mailed to me on June 27, 2005. I do not have recollection of ever seeing this or reviewing it otherwise it would have been forwarded to you. I apologize for not enclosing this prior to you coming to Quincy but you certainly can inquire of Teresa Koch as you see fit in any further deposition. I will make Teresa available as soon as possible based on our schedules.

Finally, pursuant to Rule 26(e)(1) my expert will be supplementing his report to include and revise the calculations regarding the tortuous interference claim based on additional information (the disc of invoices also produced to you previously) and other portions of his original report that were incorrect. Pursuant to Federal Rule of Civil Procedure 26(e)(1), an obligation is imposed upon a party to supplement an expert disclosure if the party learns that in some material respect the information disclosed is incomplete or incorrect. In light of the deposition testimony I have spoken to Mr. Stringer and there is incorrect information in his report which will be supplemented.


EXHIBIT F

I am writing to inform you of this as soon as possible. In light of the fact that you are to disclose any rebuttal experts by October 15, 2005, I believe you will have adequate time to review the supplemental report and conduct any supplemental depositions as necessary. I am pushing to have the supplemental information to you as quick as possible. It is my hope that we can have that to you by Friday, August 12, 2005. Hopefully any supplemental depositions can then be conducted before the end of the month. If you need an extension on your disclosure date I will not object and we can work out a date. Since expert discovery does not close until March 2006 I think we have plenty of time.

Finally, after I have supplemented the report and our discovery answers we will be in a better position to communicate regarding any further settlement negotiations. Please contact me if you would like to discuss this further.

Very truly yours,

James A. Hansen

JAH/pls

1

1

2                    U.S. DISTRICT COURT

3              CENTRAL DISTRICT OF ILLINOIS

4                 SPRINGFIELD DIVISION

5

6    HEWLETT-PACKARD DEVELOPMENT    )
     COMPANY, L.P., HEWLETT-PACKARD )
7    COMPANY, AND COMPAQ TRADEMARK, )
     B.V.,                          )
8                                   )
                PLAINTIFFS,         )
9                                   )
                vs.                 )    No. 04-3055
10                                  )
     MIDWEST INFORMATION            )
11   TECHNOLOGY GROUP, INC., AND    )
     MICHAEL LAUBER,                )
12                                  )
                DEFENDANTS.         )
13

14          DISCOVERY DEPOSITION of RONALD HAUGHT, taken in

15   the above-entitled case before Tracy L. Grott, a Notary

16   Public and Certified Shorthand Reporter of Adams County,

17   Illinois, at 2:30 p.m., on July 25, 2005, at 525 Jersey, in

18   the City of Quincy, County of Adams, State of Illinois,

19   pursuant to stipulation hereto annexed.

20

21

22                  Tracy L. Grott, CSR
                     2901 Sonata Drive
23                   Quincy, IL  62301
                     217-223-3624
24

25

EXHIBIT

G

1

COPY

```
 1

 2                    U.S. DISTRICT COURT

 3                CENTRAL DISTRICT OF ILLINOIS

 4                   SPRINGFIELD DIVISION

 5

 6   HEWLETT-PACKARD DEVELOPMENT    )
     COMPANY, L.P., HEWLETT-PACKARD)
 7   COMPANY, and COMPAQ TRADEMARK,)
     B.V.,                         )
 8                                 )
                 Plaintiffs,       )
 9                                 )   Civil Action
                 vs.               )   No. 04-3055
10                                 )
     MIDWEST INFORMATION           )
11   TECHNOLOGY GROUP, INC., and   )
     MICHAEL LAUBER,               )
12                                 )
                 Defendants.       )
13

14          DISCOVERY DEPOSITION of THERESA KOCH, taken in the

15   above-entitled case before Tracy L. Grott, a Notary Public

16   and Certified Shorthand Reporter of Adams County, Illinois,

17   at 1:30 p.m., on July 25, 2005, at 525 Jersey, in the City

18   of Quincy, County of Adams, State of Illinois, pursuant to

19   stipulation hereto annexed.

20

21

22                    Tracy L. Grott, CSR
                        2901 Sonata Drive
23                     Quincy, IL  62301
                        217-223-3624
24

25
```

HP and Compaq v. MITG       CondenseIt™                    Ronald Haught

---

**Page 1**

```
 1

 2

 3              UNITED STATES DISTRICT COURT

 4             CENTRAL DISTRICT OF ILLINOIS

 5                 SPRINGFIELD DIVISION

 6

 7   HEWLETT-PACKARD DEVELOPMENT        )
     COMPANY, L.P., HEWLETT-PACKARD     )
 8   COMPANY, and COMPAQ TRADEMARK B.V.,)
                                        )
 9             Plaintiffs,              )
                                        )
10          - vs -                      )  No. 04-3055
                                        )
11   MIDWEST INFORMATION TECHNOLOGY     )
     GROUP, INC., and MICHAEL LAUBER,   ),
12                                      )
               Defendants.              )
13

14

15        DEPOSITION of RONALD HAUGHT, taken in the

16   above-entitled case before Gina Nottingham, a Notary

17   Public and Certified Shorthand Reporter of Adams

18   County, Illinois, at 9:00 o'clock A.M., on February

19   18, 2005, at 525 Jersey Street, Quincy, Adams County,

20   Illinois.

21

22

23

24

25
```

**Page 2**

```
 1   APPEARANCES:

 2        MS. ELIZANN CARROLL
          Attorney at Law
 3        15301 Spectrum Drive, Suite 300
          Addison, Texas  75001
 4
                    appeared for the Plaintiffs.
 5
          MR. JAMES HANSEN
 6        Attorney at Law
          525 Jersey Street
 7        Quincy, Illinois  62301

 8                  appeared for the Defendants.

 9   ALSO PRESENT:

10        Ms. Gaynelle Jones
          Litigation Counsel for Hewlett-Packard
11

12

13

14

15

16

17

18

19

20
     MRS. GINA L. NOTTINGHAM, CSR
21   License No. 084-002584
     924 Rim Road
22   Quincy, Illinois  62301
     (217)  224-7009
23

24

25
```

**Page 3**

```
 1                    I N D E X

 2   DEPONENT                              PAGE NUMBER

 3   RONALD HAUGHT

 4        Examination by Ms. Carroll          4

 5

 6

 7

 8

 9

10

11

12               E X H I B I T S

13   NUMBER                          MARKED   IDENTIFIED
     Deposition Exhibit Number 20       *         7
14   Deposition Exhibit Number 5        *        17
     Deposition Exhibit Number 4        *        37
15   Deposition Exhibit Number 2        *        42
     Deposition Exhibit Number 1        *        43
16   Deposition Exhibit Number 6        *        64
     Deposition Exhibit Number 22      72        72
17   Deposition Exhibit Number 19       *        76
     Deposition Exhibit GG              *        96
18   Deposition Exhibit Number 23     147       147
     Deposition Exhibit M               *       154
19   Deposition Exhibit KK              *       169
     Deposition Exhibit Number 24     169       172
20   Deposition Exhibit Number 25     169       171
     Deposition Exhibit B               *       184
21   Deposition Exhibit C               *       194
     Deposition Exhibit Number 21       *       206
22   Deposition Exhibit Number 26     209       209
     Deposition Exhibit Number 27     222       222
23   Deposition Exhibit Number 28     263       263

24

25
```

**Page 4**

```
 1

 2             (Whereupon the Deponent was

 3              sworn by the Notary Public.)

 4        R O N A L D   H A U G H T

 5   having been first duly sworn by the Notary Public,

 6   deposeth and saith as follows:

 7                 EXAMINATION BY

 8                 MS. CARROLL:

 9        Q.   Can you state your name for the record,

10   please, sir?

11        A.   Ronald Dean Haught, Jr.

12        Q.   And what is your address, Mr. Haught?

13        A.   4304 Deer Ridge Road, Quincy, Illinois,

14   62305.

15        Q.   Thank you.  Have you had your deposition

16   taken before?

17        A.   Yes.

18        Q.   How many times?

19        A.   Several over the years.  I was former law

20   enforcement, so I have been through this process a

21   few times over the years.

22        Q.   Okay.  Any of the depositions relating to

23   MITG?

24        A.   One.

25        Q.   Okay.  And what kind of case was that?
```

EXHIBIT H

## Page 37

1 A. Okay.

2 Q. You were trying to take advantage of the

3 opportunity that might be presented by them wanting

4 to send out resources and you wanted to be able to

5 take advantage of that opportunity to grow your

6 business. Is that fair?

7 A. What is that question in reference to, the

8 actual facility itself?

9 Q. The -- well, I asked what kind of

10 projections you were making, and you talked about

11 increasing call volumes and then Compaq letting

12 people go and sending work to you.

13 A. Correct.

14 Q. And what I'm asking is was part of the

15 reason for having more space the ability to take on

16 that additional work?

17 A. Yes, that's correct. Thank you.

18 Q. Okay. Sometimes it takes me awhile.

19 A. We all have that problem.

20 Q. Since you have been deposed so many times,

21 I didn't give you the warning at the beginning that

22 my questions sometimes take a half-hour.

23     Let me ask you to take a look at Exhibit 4,

24 which is a document bates MITG 0527 through 31. It's

25 dated December 5 of 2001. Do you recognize this

## Page 38

1 document?

2 A. First let me ask is there a cover page

3 missing possibly?

4 Q. Well, this is the way the document came to

5 me. So if there is a cover page missing, I don't

6 know where it went because I didn't get it. . It

7 indicates it is Page 1, and unless there was a

8 transmittal letter from you to him --

9 A. No. What I was getting at is I was

10 assuming, and this looks to me to be the quote/

11 unquote bible of the process, but I was looking for

12 something quite --

13 Q. Okay. And this document has been

14 identified in response to request for production that

15 this is the bible.

16 A. Right.

17 Q. Tell me how this document came about?

18 A. It came about, quite frankly, from issues

19 that were consistently arising through various

20 processes, etc. Sherry Ellis is a lovely lady and

21 did a fine job for your client being a pain to us,

22 and that was part of the reason this document was put

23 in place is it seemed that the rules would

24 consistently change depending on her mood, whether it

25 was customer complaint, who was to handle the

## Page 39

1 customer complaint, what the escalation process was.

2 I believe there is, you know, issues in here in

3 regards to the wrong order of and things of that

4 nature, our main procedures and things of that

5 nature. So those things were put in place to try to

6 alleviate some of those issues on a consistent basis,

7 and as well the communication was a big issue.

8 Q. All right. And RMA stands for?

9 A. Return Material Authorization.

10 Q. All right. Prior to creation of the bible

11 here, did MITG handle RMA?

12 A. Yes.

13 Q. And so this is simply putting, this is what

14 we are going to do, this is what our responsibilities

15 are, we agree that we are going to handle it this

16 way, and you CEI are going to do X, Y, and Z?

17 A. I wouldn't phrase it that way, no.

18 Q. Okay.

19 A. It was more of a general meeting of the

20 minds in regards to, these are our problems, these

21 are the processes, and this was the generally agreed

22 to solution, so that there wasn't it's her word, his

23 word, etc., etc.

24 Q. So this is just the process -- we all agree

25 this is the process. We are going to put it in

## Page 40

1 writing so everybody knows?

2 A. Basically, yeah. So it's easily referred

3 back to, correct. .

4 Q. Prior to the Standard Support Agreement,

5 did MITG have a website that MITG customers could

6 use? For example, is there an MITG.com?

7 A. Yes.

8 Q. Was that an interactive website for

9 customers to order parts?

10 A. Define interactive.

11 Q. Well, for example, if you go to any kind of

12 regular shopping, retail, you put it in a shopping

13 cart and you put your credit card number in and you

14 can buy that part. Could you do that prior to the

15 Standard Support Agreement on an MITG website? I

16 want to order a spare part. I order it, I give you

17 my credit card number, and I wait for it to show up

18 UPS?

19 A. Yes, but it's not that simple. It's -- it

20 was more based off of e-mail and quote type of

21 scenario. The technology you are talking about

22 really didn't evolve and become mainstream until a

23 little bit later.

24 Q. It is true after the Standard Support

25 Agreement that when people went on the website, for

AUG 3 0 2004

December 5, 2001

### *RMA Responsibilities*

*CSN:*

MITG receives customer requests for return and forwards customer to Custom Edge.

Custom Edge will research the claim as necessary.

Custom Edge will issue the RMA number and document it in the notes.

Custom Edge will order replacement part (if applicable) and update the claim with MSC number for replacement part. If feasible, the webtool will track the replacement part to customer. If this is not feasible, Custom Edge will track replacement part to customer and update notes when delivered.

Custom Edge will send call tags to customer for return of part and put tracking numbers in claim.

Custom Edge will contact the customer regarding return of part.

Custom Edge will track return part from customer to warehouse.

Custom Edge will issue credits to customer accordingly and document in claim.

*Outsourced:*

MITG receives customer requests for return and researches the claim.

MITG will order replacement part (if applicable).

MITG will send call tags to customer for return of part.

MITG will make follow up calls to customer on 3rd and 5th business day after customer receives tags.

MITG will inform Custom Edge on 6th business day if customer has not returned part and Custom Edge will bill customer accordingly.

MITG will (upon return of part from customer) issue any credit necessary to Custom Edge.

If a customer says he/she has returned a part on their own accord and there is no proof of delivery, MITG will not be held responsible.

2 ways to start an RMA:
- Phone 800-848-4589 (from their invoice, or past purchase knowledge)
- Web Page www.compaqdirectparts.com/rma (CSR, phone prompts)

RMA Issue Possibilities:
- DOA
  o Replacement no restock fee charged
  o Return for credit on product $150.00 or more
- Incorrect part ordered by customer error
  o Return for credit $150.00 or more, 20% Restock fee charged
- Incorrect part ordered due to technical support
  o Replacement no restock fee charged
  o Return for credit



**DEPOSITION EXHIBIT**
2/17/05
ML #4

MITG 0527

1

- Incorrect part received,
  - o Replacement no restock fee charged
  - o Return for credit
- No longer wants part
  - o Return for credit on product $150.00 or more
- Unacceptable Conditions (dirty, etc.)
  - o Replacement no restock fee charged
  - o Return for credit
- Damaged in Shipping
  - o Replacement no restock fee charged
  - o Return for credit
- Damaged from the warehouse
  - o Replacement no restock fee charged
  - o Return for credit
- Duplicated in the shipping process
  - o Return
- Missing parts
  - o Replacement no restock fee charged
  - o Return for credit
- Wrong Size due to technical support
  - o Replacement no restock fee charged
  - o Return for credit
- Wrong Size ordered by customer
  - o Return for credit $150.00 or more, 20% Restock fee charged
- Wrong Size received
  - o Replacement no restock fee charged
  - o Return for credit
- Part failed within specified warranty period
  - o Replacement no restock fee charged
- Wrong brand due to technical support
  - o Replacement no restock fee charged
  - o Return for credit

- Wrong brand ordered by customer
  - o Return for credit $150.00 or more, 20% Restock fee charged
- Wrong brand received
  - o Replacement no restock fee charged
  - o Return for credit
- Delayed shipment *Current
  - o Return for credit $150.00 or more, 20% Restock fee charged
- Delayed shipment *Future (ie: Dispatch Service)
  - o Return for credit
- Refused shipment
  - o 20% Restock Fee charged

RMA Specifications:

- Once an RMA is issued, it will remain valid for 5 business days after the receipt of the call tags.
- Products must be in their original packaging and must include all manuals, power cords, and Compaq Direct Parts installed software and options.
- Opened software and opened consumable products (ie: printer cartridges, paper, etc.) are not eligible for return.
- Products cannot be returned if they are damaged, have been modified, or have had serial numbers removed.
- One part per RMA number. All parts must be shipped from customer to "warehouse" individually.
- Shipping charges are non-refundable.
- If product is received back to Compaq Direct Parts and tested and is not defective a 20% restock fee will be charged.

RMA Procedures:

1. RMA request submitted online or via phone to MITG, Inc.
2. Researched and approved/rejected within 2 business days by MITG, Inc.
3. Call tags sent to the customer (if applicable) within 1 business day and replacement part sent (if applicable) by MITG, Inc.
   a. At this point MITG, Inc. will contact with the customer and give them the information of their call tags being shipped or that their RMA has been rejected. Documentation will be made at this point.
4. 2nd Business Day After Tags are sent: MITG, Inc. will track call tags going to customer and verify delivery.
5. 2nd Business Day After Tags are Received at customer location: MITG, Inc. will track call tags coming from the customer
   a. If parts are "in transit" skip to #8.
   b. If parts are NOT "in transit" back to MITG, Inc. customer will be contacted and advised if they do not return this part they will not receive a credit, or will be charged for the part, whichever is applicable. Information obtained will be documented.

   If the customer claims that they did not receive the tags at this point the RMA process will start over with #3 above. While on the phone with the customer verification will be made of the address. Documentation will be made.
6. 5th Business Day After Tags are Received at customer location: MITG, Inc. will track call tags coming from the customer
   a. If parts are "in transit" skip to #8.
   b. If parts are NOT "in transit" back to MITG, Inc. customer will be contacted and advised if they do not return this part they will not receive a credit, or will be charged for the part, whichever is applicable. Information obtained will be documented.
      If the customer claims that they did not receive the tags at this point the RMA process will start over with #3 above. While on

the phone with the customer verification will be made of the address. Documentation will be made.

7. 6th Business Day:
   a. If part is NOT "in transit" recorded documentation by MITG, Inc., of trying to get part back from customer, will be forwarded to Custom Edge.
      Custom Edge. will have to:
      1. Contact customer and attempt to get part "in transit" from the customer and the necessary documentation relayed to MITG within 2 business days.
      2. Using the information obtained MITG will bill Omaha for necessary charges.
      3. Custom Edge. will bill customer if necessary.

8. When part is received at MITG, Inc. it will be inspected.
   a. If correct part has the correct serial numbers in tact the part will be returned to vendor if necessary.
   b. If customer returns a part that has been tampered with, or does not follow RMA Specifications the part will be returned to customer with rejection notification. At this point MITG, Inc. will bill CEI accordingly. Custom Edge. will bill customer if necessary.

9. Track to vendor and verify receipt. Credit Custom Edge. accordingly. Custom Edge. will credit the customer if necessary.

### *Billing Issues/Disputes*

- Any issues that Custom Edge has regarding billing will be emailed to Erika (cc: Terri, Teresa) explaining the dispute.
- Erika will have 24 hours in which to research the issue and reply.
- If a claim that has been billed requires a re-bill of a different amount, the impending credit will be for the first billing. The second, different amount cannot be short paid.

### *CSN Orders vs. Outsourcing*

- Product may be purchased from an outside vendor if it is at least a $175.00 price difference than CSN. For memory and hard drives, the price difference to outsource is $100.00.
- If a part is unavailable from CSN at the time of order, the part can be ordered from an outside vendor. This information will be noted in the claim.
- If a part sourced through CSN has an ETA of more than 2 business days, the part can be outsourced. If this is done, MITG will notify Custom Edge of the change in cost centers.
- If CSN makes two (2) consecutive shipments that are incorrect or defective, MITG has the right to outsource the part as a customer satisfaction issue. If this is done, MITG will notify Custom Edge.

### *Communication*

- ☐ Communication between employees of Custom Edge and employees of MITG(whether initiated by either party) will maintain an acceptable level or professionalism by all parties.
- ☐ If an issue requires contact via phone to achieve a more prompt resolution, this discussion and resolution must follow in an email as to provide proper documentation and assure understanding by all parties involved.
- ☐ Custom Edge will utilize the webtool to obtain information that is available there. This tool was put into place to provide everyone with readily accessible information regarding all claims.
- ☐ There will be a weekly conference call between Custom Edge and MITG to discuss and resolve any matters at hand. These calls will take place on Tuesdays at 3:00p.m. and will be initiated by MITG.

Signatures:

_____          _____
Ronald D. Haught, Jr                                    Troy Bloomquist
MITG                                                          Custom Edge

Date: _____              Date: _____

This document may be amended with approval by both parties.

MITG 0531

5