to cease doing business with MITG and that these entities did, in fact, cease doing business with MITG. MITG has no admissible evidence to support that claim. Rather, it claims in discovery that this occurred, but provided only hearsay upon hearsay, and/or rank speculation. [Undisputed Fact C:5]. Haught's testimony that he was told by one of his (unidentified) employees that the employee was told by someone (unidentified) at a company that someone at HP (also unidentified) told the company to stop doing business with MITG. [Undisputed Fact C:5] This is not admissible evidence in support of a claim. MITG had over a year to investigate the basis for its claim – many months both before and after it filed its Amended Counterclaim – and still could not find any admissible evidence to support this claim.

Similarly, MITG simply pleads that HP sent a letter and made telephone calls before the SSA expired on February 7, 2004 telling them of a process change after February 7, 2004. Haught acknowledged nothing in the letter was incorrect [Undisputed Fact C:4]. In discovery, MITG speculated, without providing any facts to support it, that HP told Customers to stop doing any business with MITG, but has no admissible evidence of such words or actions. Instead, MITG simply assumes that if a Customer did not buy from MITG after February 7, 2004 it was because of HP's letter, which makes no mention of MITG [Undisputed Facts C:5, 6]. As with the suppliers and distributors [Undisputed Fact 7], MITG had more than enough time to try to come up with discoverable evidence to support its claim, but does not. Assumptions are not evidence, so summary judgment is appropriate.

**HP HAD A LEGITIMATE ECONOMIC INTEREST AND USED NO IMPROPER MEANS IN CONTACTING ITS CUSTOMERS, SO MITG'S TORTIOUS INTERFERENCE CLAIM FAILS.**

MITG has the burden of producing substantial evidence to establish an absence of justification.[11] Case law has defined this as the absence of any legal right to take the actions that form the basis of the asserted claim.[12] There is no improper interference if HP had a legitimate economic interest and employed no improper means.[13] Thus, competitive conduct that is not illegal and is not independently actionable does not become actionable simply because it interferes with another's prospective contractual relationship.[14] Further, in cases where there is a mixed motive – where actions are based at least in part on protecting a present existing economic interest – it has been held that "if the alleged interference by defendant is in substantial part motivated to protect a present existing economic interest, then a showing of improper means is required."[15]

Improper means refers to "independently wrongful, notwithstanding the injury caused by the interference."[16] In order to demonstrate an improper means, MITG must show that HP's actions are "independently wrongful, such as threats, violence, trespass, defamation,

---

[11] *Id.* Because the SSA, which controls the relationship between HP and MITG, is governed by Missouri law, HP cites Missouri law. During the term of the SSA, MITG moved to Illinois, so in an abundance of caution, HP has reviewed Illinois law. The elements of tortious interference are the same as those set forth above. *Fieldcrest Builders v. Antonucci*, 724 N.E.2d 49, 61 (Ill. App. 1999); *Robert Stofer v. First National Bank of Effingham*, 571 N.E.2d 157, 166 (Ill. App. 1991)(lack of legal justification for inducing the breach is an essential element of a cause of action for tortious interference); but see, *Roy v. Coyne*, 603 N.E.2d 1024 (Ill. App. 1994)(indicating a split in authority in Illinois).

[12] *Hensen v. Truman Med. Ctr.*, 62 S.W.3d 549, 555 (Mo. Ct. App. 2001); *SSM Health Care, Inc. v. Deen*, 890 S.W.2d 343, 346 (Mo. Ct. App. 1994).

[13] *Id.*

[14] *O'Connor v. Shelman*, 769 S.W.2d 458, 461 (Mo. Ct. App. 1989).

[15] *Wigley*, 887 S.W.2d at 721; *Cmty. Title v. Roosevelt Fed. S&L*, 798 S.W.2d 369, 372 (Mo. banc 1990); *SSM Health Care, Inc.*, 890 S.W.2d at 346.

[16] *SSM Health Care, Inc.*, 890 S.W.2d at 346.

misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law."[17]

MITG cannot carry its burden to defeat summary judgment because it has no evidence to contradict the evidence that demonstrates HP's actions were justified and certainly were not "improper" as that term is defined in this context. The letters about which MITG complains speak for themselves, with the key item reading: "effective February 7, 2004, parts ordering through the organization known as HP Direct will no longer be available." [Undisputed Fact C:2]. Haught admitted that nothing in the letters is false [Undisputed Fact C:4]. The only evidence regarding the telephone calls is from the depositions of HP employees Louise Meyerfeld and Richard Chizek, and that testimony establishes that these calls were follow-ups to selected Customers to ensure that they understood the changes. [Undisputed Fact C:3]. This is not tortious interference; it is good business.

Further, under the SSA, MITG provided services and sold parts to Customers of Compaq/HP Direct. HP informed those Customers of changes in the parts ordering process after the end of MITG's contract to provide sales and services expired. [Undisputed Facts C:2-3] Certainly HP had a legitimate economic interest in ensuring that customers looking for genuine HP and Compaq spare parts knew how to contact HP to continue to acquire parts. Because of this showing of legitimate economic interest, MITG must show that HP used improper means in protecting its interest. MITG has no such evidence. As discussed above, the evidence shows that HP accurately represented the changes to be implemented, the date of the implementation, and the other aspects of the transition from MITG/HP Direct to HP personnel in Roseville and

---

[17] *Hensen*, 62 S.W.3d at 555, citing *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 317 (Mo. banc 1993). See also *SSM Health Care, Inc.*, 890 S.W.2d at 346.

the HP website. The fact that the letter did not mention that MITG had been the vendor acting as HP Direct and/or provide contact information for MITG is not a basis for a claim for tortious interference.

### MITG's Damage Calculation, Which is Based Strictly on the Assumption that Any Entity that Did Not Do Business with MITG After February 7, 2004 Was Tortiously Interfered With, Is Not Supported By Admissible Evidence

In his second attempt to come up with damages for the tortious interference claim, MITG's expert, Scott Stringer, reported that he (1) reviewed a list of Customers contacted by HP; (2) compared that list to a list of customers who bought from MITG between February 7, 2004 to the end of that year. He eliminated from list #1 anyone who was on list #2. He then determined which of the remaining companies on list #1 were "regular" customers of MITG by reviewing records of prior year's sales and counting only those who bought from MITG in both 2002 and 2003 [Stringer Depo #2 125:13-129:12; 133:8-24]. If a customer fit the criteria for a "regular" customer,[18] and did not buy from MITG after February 7, 2004, Stringer assumed that the reason they did not buy from MITG was because HP had tortiously interfered with the alleged relationship between that customer and MITG [Undisputed Fact 6]. He has no basis for making that assumption, for all of the reasons discussed above, so his report and testimony is no evidence of damages.

### CONCLUSION

Plaintiffs/Counter-Defendants are entitled to summary judgment because Counter-Plaintiff MITG cannot prevail on its claims for breach of contract and tortious interference. HP has negated the existence of a material element of MITG's claim for breach of the SSA and has

---

[18] As shown by Stringer deposition testimony pages 144:25-155:3, Stringer erred in his determination of regular customers by including on the list companies that clearly did not fit the criteria, because they did not buy from MITG in both of the years, thus calling into question Stringer's entire analysis.

demonstrated that MITG cannot show evidence to support a necessary element of this claim by demonstrating that the calls at issue were not subject to the exclusivity provision of the SSA and that MITG cannot establish damages because its calculation is based on inadmissible evidence. Further, HP has negated the existence of a material element of MITG's claim for breach of the Middleware Agreement and has demonstrated that MITG cannot show evidence to support a necessary element of this claim by showing that HP did not make unauthorized and/or improper use of the Middleware and that MITG has no proof of improper use or of damages. Finally, HP is entitled to judgment on the tortious interference claim because HP has negated the existence of a material element of MITG's claim for tortious interference and has demonstrated that MITG cannot show evidence to support a necessary element of this claim. The actions complained of do not constitute interference, were justified, were not improper and MITG has no admissible evidence of damages.

For the reasons set forth above, Plaintiffs/Counter-Defendants respectfully requests that this Court grant summary judgment on all three of the counterclaims asserted by MITG, enter a take nothing judgment against MITG, award HP attorney's fees relating to its defense of MITG's breach of the Standard Support Agreement[19], award costs of court and grant to Plaintiffs such other and further relief to which they may show themselves justly entitled. In the alternative, if this Court does not render judgment on all counterclaims, as requested herein, Counter-Defendants request that, pursuant to Federal Rule 56(d), the Court, if practicable, ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted and issue an order specifying the facts that appear without controversy, and directing further proceedings in the action as are just.

---

[19] Paragraph 20 of the SSA provides "[i]n the event either party institutes litigation … involving this Agreement, the prevailing party shall be entitled to recover from the other party its reasonable attorney fees and costs incurred."

COUNTER-DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO THE COUNTERCLAIMS ASSERTED BY
MIDWEST INFORMATION TECHNOLOGY GROUP, INC.                                                    PAGE 22

Respectfully submitted,

/s Elizann Carroll
ELIZANN CARROLL
Texas State Bar No. 00787209
JUNEAU, BOLL & WARD, P.L.L.C.
15301 Spectrum Dr., Suite 300
Addison Texas 75001
(972) 866-8333
(972) 866-8378 *fax*

MOLLY BUCK RICHARD
Texas State Bar No. 16842800
THE RICHARD LAW GROUP
8411 Preston Road, Suite 890
Dallas, TX 75225
(214) 206-4300
(214) 206-4330 (fax)

SCOTT D. SPOONER
Heyl, Royster, Voelker & Allen
Suite 575 National City Center
1 North Old State Capital Plaza
P. O. Box 1687
Springfield, IL 62705
(217) 522-8822
(217) 523-3902 *fax*

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this the 11th day of January, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to James Hansen, counsel for Defendants, and Molly Buck Richard and Scott Spooner, counsel for Plaintiffs.

/s Elizann Carroll
ELIZANN CARROLL
State Bar No. 00787209
JUNEAU, BOLL & WARD
15301 Spectrum Dr., Suite 300
Addison Texas 75001
(972) 866-8333
(972) 866-8378 *fax*
ecarroll@juneauboll.com