E-FILED
Monday, 20 February, 2006  04:16:12 PM
Clerk, U.S. District Court, ILCD

Page 5

```
 1              MICHAEL LAUBER,
 2  having been first duly sworn, testified as follows:
 3              EXAMINATION BY:
 4              MS. CARROLL
 5      Q   Can you state your name for the record,
 6  sir.
 7      A   Mike Lauber.
 8      Q   What is your address, Mr. Lauber?
 9      A   2727 Highway M.
10      Q   Here in Quincy?
11      A   Maywood, Missouri.
12      Q   And I'm sure that Mr. Hansen has gone over
13  what we're going to do today in your deposition, but
14  I want to remind you of a couple of rules. If you
15  can, be sure to speak clearly. It will make our
16  court reporter's job easier and make the record
17  clearer. If you can, remember to answer out loud.
18  I may ask you a yes or no question and nodding your
19  head or saying uh-huh or huh-uh is not going to help
20  the court reporter. And if you do that, I'll try to
21  remind you to say something that's yes or no or
22  that's appropriate. Also, if you can, let me finish
23  my question before you begin your answer so we're
24  not speaking over each other. It will make the
25  record clear and, again, make Tracy's job easier.
```

Page 6

```
 1  And sometimes I ask really long questions, so if you
 2  can have some patience, it could take me a while to
 3  spit it out. You understand your testimony today is
 4  just as though you were in front of a judge and
 5  jury?
 6      A   Yes.
 7      Q   Have you had your deposition taken before?
 8      A   Yes.
 9      Q   Yes? How many times?
10      A   Just once.
11      Q   When was that?
12      A   The early '90s.
13      Q   Okay. And was it anything that related to
14  MITG?
15      A   No.
16      Q   Have you ever testified in court or in an
17  arbitration proceeding before?
18      A   In regards to the -- I had an accident in
19  the '90s. That was the only time I testified.
20      Q   Okay. All right. Were you a party to a
21  lawsuit involving the accident?
22      A   Yes.
23      Q   Have you ever, during any time you were at
24  MITG, are you aware of MITG being involved in any
25  lawsuits in which your input was necessary?
```

Page 7

```
 1      A   No.
 2      Q   All right. You're being represented by
 3  Mr. Hansen and his firm in this case, is that
 4  correct?
 5      A   Yes.
 6      Q   And do you have a joint defense agreement
 7  that has been entered into, do you know?
 8          MR. HANSEN:  Hold on, let me -- I'm just
 9      going to object as to whatever the arrangement
10      is with Mr. Lauber and this firm is certainly
11      protected by attorney/client privilege, so I
12      don't know what you're getting at.
13  MS. CARROLL:
14      Q   Well do you have -- well, let me ask you
15  this, do you have in terms of an arrangement, it
16  isn't necessarily privilege, you're being
17  represented by Mr. Hansen's firm, do you have an
18  indemnity agreement or anything between you and MITG
19  for MITG to cover any damages that might be assessed
20  against you in the event that the plaintiffs prevail
21  against you in this lawsuit?
22          MR. HANSEN:  Again, I'll object, but
23      certainly he can testify if there's any
24      agreement between him and MITG.
25      A   No, nothing, no, you know.
```

Page 8

```
 1  BY MS. CARROLL:
 2      Q   Okay, that's fine. Who is your current
 3  employer, sir?
 4      A   Schneider National Trucking.
 5      Q   Okay. What do you do for Schneider
 6  National Trucking?
 7      A   I'm a professional driver.
 8      Q   And how long have you been working at
 9  Schneider National Trucking?
10      A   Since September 24th of '04.
11      Q   And who was your, immediately prior, who
12  was employer?
13      A   MITG.
14      Q   Okay. I'm sorry you said September 24th?
15      A   Correct.
16      Q   And why did you leave MITG?
17      A   I was laid off.
18      Q   Okay. How long had you been at MITG
19  before you got with them?
20      A   6 years.
21      Q   And I'm sorry, when was your last day at
22  MITG, do you recall?
23      A   June 4th, 2004. Either the 3rd or 4th. I
24  think it was around the 4th.
25      Q   All right. Okay. So you started at MITG
```

1  on behalf of Compaq Direct, were they billing Compaq
2  Direct, do you know?
3    A   I don't know.
4    Q   Okay. Are you aware of any other -- of
5  MITG supplying parts to any other, for example,
6  directly to Compaq or HP for their service personnel
7  as opposed to providing it for their customers?
8    A   Yes.
9    Q   Okay. Tell me about that, about what that
10 part of the business involved.
11   A   If there was a technician that was on-site
12 that needed a part, they would call us for the part.
13   Q   And would that be third-party parts or any
14 kind of parts?
15   A   It was mostly -- I only dealt with
16 third-party parts.
17   Q   Okay. Did that relationship exist before
18 the Standard Support Agreement?
19   A   I don't know.
20   Q   Okay. But at some point you began, at
21 least you became aware of on-site HP technical
22 people calling in?
23   A   I don't know if they were HP technical
24 people.
25   Q   Okay. Well, let me back up. I mean I'm

1  talking about MITG providing parts not selling them
2  to Compaq or Hewlett-Packard's customers, but
3  actually providing that to and billing to Compaq or
4  HP, so for example, an HP on-site maintenance
5  person, service person, needs a third-party part,
6  they would call MITG to get that, source that part
7  for them?
8    A   I am aware of that, yes.
9    Q   Okay. When do you recall that part of the
10 business, the first you became aware of that part of
11 the business?
12   A   I don't know. I don't know the date of
13 it.
14   Q   Okay. Was it -- can you say whether it
15 was before or it started before or after the
16 Standard Support Agreement in February of '02?
17   A   I don't know.
18   Q   Okay. How much -- strike that. When the
19 folks were calling in, these technical people or the
20 support people were calling in for that, how did
21 they contact you? They'd call in for parts?
22   A   Yes.
23   Q   What number were they calling?
24   A   I don't know.
25   Q   What was your involvement? You obviously

1  have some knowledge of it, what was your role in
2  this?
3    A   I dealt with an Intel specific account
4  which had Sun parts and NCR parts.
5    Q   This was an account that you were kind of
6  handling, the person on behalf of MITG?
7    A   Yes.
8    Q   Okay. And tell me what kind, tell me what
9  happened in that relationship, what was going on
10 when Intel needed MITG's services or HP on behalf of
11 Intel?
12   A   It would be a technician on-site that
13 needed a part, he would call and say, I need this
14 part number and we would ship out that part number.
15   Q   Okay. Who was -- that's what I'm trying
16 to find out, when you say, "he called," who was he
17 calling? Was he calling HPdirect.com or?
18   A   I don't know.
19   Q   You don't know, okay. Are you aware of
20 other accounts, you mentioned Intel was one that you
21 were in charge of, were there other specific
22 accounts that you were aware of that had a similar
23 situation?
24   A   No.
25   Q   Okay.

1         (Exhibit No. 7 was marked for
2         identification)
3    Q   Let me hand you what's been marked as
4  Deposition Exhibit 7, baits label HP 001926 and the
5  top email is a May 18, 2003 email from Ron Haught to
6  you and to Mr. Bloomquist, items you were working on
7  do you see that?
8    A   Yes.
9    Q   The email is from May 15 from you
10 informing Troy, who is Troy Bloomquist at HP.com, a
11 list of action items that I'm working on, do you see
12 that?
13   A   Yes.
14   Q   The first one, compiling information from
15 Wiltel Site surveys, what does that mean?
16   A   Wiltel was a service provider that was
17 taking care of the HP customers.
18   Q   And what was MITG doing with Wiltel?
19   A   Providing parts.
20   Q   Were you involved in providing parts to
21 Wiltel?
22   A   Yes.
23   Q   Was this similar to what you were doing
24 with Intel?
25   A   This is what Intel was, yes.