UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P., HEWLETT-PACKARD COMPANY, and COMPAQ TRADEMARK B.V., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 04-3055 |
| MIDWEST INFORMATION TECHNOLOGY GROUP, INC., | ) ) ) | |
| Defendant. | ) | |

### DEFENDANT'S MEMORNADUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant, **Midwest Information Technology Group, Inc.** ("MITG"), by and through its attorneys, **Schmiedeskamp, Robertson, Neu & Mitchell**, submits its Memorandum in Support of its Motion for Summary Judgment as to the claims asserted against it by Plaintiffs, Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark B.V. (collectively "HP") pursuant to Federal Rules of Civil Procedure 56(b) requesting that this Court render judgment in favor of the Defendant as to the claims in Plaintiffs' First Amended Complaint.

### INTRODUCTION

HP has filed its First Amended Complaint seeking damages against MITG on four theories: infringement of HP's trademarks, federal trademark infringement under 15 U.S.C. §1114, Federal Lanham Act violation under 15 U.S.C. §1125(a), and common law trademark infringement and unfair competition. (See Plaintiff's First Amended Complaint attached hereto

and incorporated herein without attachments as Exhibit 1). In particular, HP alleges that MITG continued to use various domain names after the termination of the Standard Support Agreement between the two parties which ended on February 8, 2004. (See Para. 22 of Exhibit 1). HP alleges, among other things, that MITG sought to capitalize on HP's success by using the domain names; MITG caused confusion, mistake or deception as to goods and services by use of the domain names; and the conduct of MITG in using the domain names at issue was willful and done with the intention of trading upon HP's valuable goodwill. (See Para. 25, 26, 27, and 34 of Exhibit 1).

On February 25, 2004, MITG was notified by the National Arbitration Forum that a complaint had been filed against MITG pursuant to the Uniform Domain Name Dispute Resolution Policy adopted by the Internet Corporation for Assigned Names and Numbers ("ICANN"). (See Complainant Transmittal Cover Sheet attached hereto and incorporated herein as Exhibit 2). MITG was informed that it would receive an official copy of the complaint and was required to submit a response to both the Forum and the Complainant (HP) in accordance with the policies and rules of the National Arbitration Forum. (See Exhibit 2). MITG did in fact receive the complaint filed by HP and filed its response. (A copy of the Complaint filed by HP is attached hereto and incorporated herein as Exhibit 3; A copy of MITG's response is attached hereto and incorporated herein as Exhibit 4). In addition, HP then went ahead and filed an Additional Submission with the National Arbitration Forum. (A copy of HP's Additional Submission is attached hereto and incorporated herein as Exhibit 5).

In its complaint with the National Arbitration Forum, HP alleged that the domain names being used by MITG caused confusion in the marketplace; that MITG had no rights or legitimate

2

interest in the domain names; and the registration and use of the domain names by MITG was done in bad faith. (See Exhibit 3). As such, HP sought a decision from the National Arbitration Forum that the domain name registrations be transferred to HP based on the alleged conduct of MITG. (See Exhibit 3). In its additional submission, HP acknowledged that it had already filed this action in federal court after it had submitted the arbitration request. (See Exhibit 5). Regardless, HP asked the panel to proceed and issue its decision on the arbitration request. (See Exhibit 5).

On April 8, 2004, the panelist for the National Arbitration Forum complied with HP's request and issued his decision. (A copy of the National Arbitration Forum decision is attached hereto and incorporated herein as Exhibit 6). The arbitrator determined that HP had failed to establish all three elements required of it and therefore the relief sought was denied. (See Exhibit 6). In fact, the arbitrator determined that HP failed to prove both that the registration and use of the domain names were done in bad faith. (See Exhibit 6). The decision indicated that the disputed domain names were registered by or on behalf of a company (MITG) that was an authorized supplier of parts and services for HP and that HP itself had conceded that it gave implicit consent to MITG's use of the domain names. (See Exhibit 6). As such, HP could not reasonably contend that the domain names were registered in bad faith. (See Exhibit 6).

HP's claims filed with this Court against MITG are precluded by the doctrines of collateral estoppel and res judicata based on the arbitration decision previously rendered against HP with the National Arbitration Forum. As such, MITG seeks summary judgment on the claims brought by HP against MITG as the matters have already been litigated.

3

## UNDISPUTED MATERIAL FACTS

1.  MITG and Compaq Direct, Inc., a subsidiary of Compaq Computer Corp. ("CDI"), entered into a Standard Support Agreement (SSA) on February 7, 2002. By way of this Agreement, MITG was to "provide CDI with computer related support services which shall include, but not be limited to, computer hardware maintenance and repair. These services will be offered to CDI end users, customers, companies or commercial entities (collectively "Customers") directed or referred by CDI to MITG." (See Para. 1 of the SSA attached hereto and incorporated herein as Exhibit 7).

2.  Customers contacting CDI to buy spare parts could be connected to MITG from websites (which incorporated Compaq and later HP trademarks in the domain names) and were handled by MITG. (See Para. 20 of Exhibit 1; See §5 of Exhibit 3).

3.  The SSA contained an exclusivity clause whereby MITG was given the exclusive right to provide parts and services to the Customers. (See Para. 22 of Exhibit 7).

4.  In May 2002, Hewlett-Packard merged with Compaq and assumed the rights and obligations of Compaq under the SSA. (See Para. 5 of Exhibit 11).

5.  In May 2002, after HP and Compaq merged, the Customers under the SSA continued to contact MITG through the same websites with additional links created using HP trademarks. (See pp. 37 and 77 of the deposition of William Crowley attached hereto and incorporated herein as Exhibit 10; see the declaration of William Crowley prepared by and on behalf of HP attached hereto and incorporated herein as Exhibit 11).

6.  CDI and MITG also entered into a Middleware Agreement on February 8, 2002. Pursuant to the Agreement, MITG was to develop software that would allow MITG to place

orders under the SSA directly into CDI's VISTA order entry system. (A copy of the Middleware Agreement is attached hereto and incorporated herein as Exhibit 12).

7. During the course of the contractual relationship between Compaq and MITG and HP and MITG, HP granted express and implied consent to MITG to use the domain names to facilitate sales of HP's parts. (See Para. 20 of Exhibit 1).

8. MITG registered and used domain names with the consent of HP. HP had actual and constructive notice when it merged and assumed the obligations of Compaq that the domain names had been registered. (See Para. 20 of Exhibit 1; see also pages 39-44 of the deposition of Michael Lauber attached hereto and incorporated herein as Exhibit 8; see also pages 37-41 of the deposition of Troy Bloomquist attached hereto and incorporated herein as Exhibit 9).

9. HP terminated the Standard Support Agreement by letter dated October 30, 2003 with an effective termination date of the SSA of February 7, 2004. HP terminated the Middleware Agreement by letter dated March 19, 2004 indicating an effective termination date of the Middleware Agreement of February 8, 2005. (See letters dated October 30, 2003 (MITG 08) and March 19, 2004 (HP 001123) attached hereto and incorporated herein as Exhibit 13).

10. On or about February 25, 2004 HP filed its original Complaint in accordance with the Uniform Domain Name Dispute Resolution Policy with the National Arbitration Forum. (See Exhibit 3).

11. MITG filed its response with the National Arbitration Forum to HP's Complaint on or about March 18, 2004. (See Exhibit 4).

12. HP filed an additional submission with the National Arbitration Forum on March 22, 2004 advising the panel that it had filed a complaint in the United States District Court for the Central District of Illinois against MITG and in spite of that filing asked the panel to proceed with issuing a decision in the arbitration proceeding. (See Exhibit 5).

13. On April 8, 2004, arbitrator David Sorkin issued the decision by which it was determined that HP failed to establish all three elements required of HP and the relief sought by HP was denied. (See Exhibit 6).

14. Arbitrator David Sorkin determined that HP could not reasonably contend that the domain names were registered in bad faith and HP's failure to prove bad faith registration was dispositive of the matter before the panel. (See Exhibit 6).

15. The domain names at issue here are: compaqonlineparts.com, compaqdirectonline.com, compaqdirectspareparts.com, compaqdirectservices.com, compaqdirectparts.com, compaqdirectparts.net, hponlineparts.com, hpdirectonline.com, hpdirectonlineparts.com, hpdirectspareparts.com, hpdirectservices.com, hpdirectparts.com, hpdirectprinterparts.com, hpdirectprinters.com, hponlineservices.com, hponlinespares.com, and hpoptionparts.com. (See Exhibit 1).

16. The domain names at issue in this lawsuit include the same domain names that were at issue in the arbitration. (See Exhibits 1 and 3).

**ARGUMENT**

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

6

R. Civ. P. 56(c). The moving party has the initial burden to identify the parts of the pleadings, depositions, interrogatory answers, admissions, and affidavits which it believes demonstrate the lack of any genuine issue of material fact. Vitug v. Multistate Tax Commission, 860 F. Supp. 546, 549 (N.D. Ill. 1994), citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). Only then, does the non-moving party have any burden to demonstrate the existence of a genuine issue of material fact. Vitug, 860 F. Supp. at 549; Fed. R. Civ. P. 56(c).

I.  **HP's claims are barred by the doctrine of collateral estoppel.**

Collateral estoppel operates to preclude relitigation of an issue that has been fairly, completely, and necessarily resolved in a prior proceeding. Taylor v. Peoples Gas Light & Coke Company, 275 Ill.App.3d 655, 660, 656 N.E.2d 134, 139 (1st Dist. 1995). The requirements for the collateral estoppel doctrine to apply are that: "(1) the issue decided in the prior adjudication is identical to that presented in the instant suit; (2) the party against whom the estoppel is asserted was a party or in privity with a party to the prior litigation; and (3) the prior suit resulted in a final judgment on the merits." Id. Collateral estoppel promotes judicial economy and prevents repetitive litigation. Bickel v. Subway Development of Chicagoland, Inc., 354 Ill.App.3d 1090, 1102, 822 N.E.2d 469, 479 (Ill. App. 5th Dist. 2004).

In the prior arbitration, HP sought a declaration that MITG was using identical and/or confusingly similar domain names as to those containing the marks of HP. (See Exhibit 3). HP alleged that the addition of descriptive terms such as "parts", "direct" and "online" did nothing to prevent the domains from being confusingly similar to HP and Compaq marks and therefore MITG was confusing the public. (See Exhibit 3).

7

Further, HP contended that MITG had no rights or legitimate interests in the domain names because MITG was not commonly known by HP's marks nor had MITG used the domain names in connection with a bonafide offering of goods or services for a legitimate noncommercial and fair use since the termination of the agreement (SSA) with HP. (See 5(b) of Exhibit 3). HP further alleged that MITG was using the domain names to resolve to a website providing a customer notice explaining that HP would no longer be making offerings through MITG. (See 5(b) of Exhibit 3). Additionally, HP alleged that MITG was providing a prominent link to the MITG website. This MITG website link allowed consumers to allegedly purchase computer parts and accessories of HP's competitors. (See 5(b) of Exhibit 3). Throughout their arbitration complaint HP alleged that it had not authorized MITG to use any of the HP or Compaq marks in their domain names. HP alleged that MITG had registered domain names prior to entering into the agreement with HP and had no authorization to do so from HP. Lastly, in Section 5(b) of their arbitration complaint, HP alleged that MITG had no right or legitimate interest in or to the domain names in questions. (See 5(b) of Exhibit 3).

In its arbitration complaint, HP also alleged that MITG had registered and was using the domain names in bad faith. (See 5(c) of Exhibit 3). HP alleged MITG's only right to use the domain names arose out of HP's implied consent under the SSA. (See Exhibit 3). HP further alleged that after the agreement ended that MITG had no legitimate right to continue to use Compaq and HP marks. (See 5(c) of Exhibit 3). HP alleged, among other things, in its registration and bad faith section, that MITG's continued passive holding of a disputed domain name permitted further inference of bad faith. (See Exhibit 3). HP alleged that the domain names

were used by MITG as an attempt to attract customers to MITG's website and create consumer confusion as to HP's sponsorship of MITG's website. (See 5(c) of Exhibit 3).

Despite the fact that it had already filed this lawsuit, HP submitted an additional submission with the arbitration forum acknowledging that other legal proceedings were under way. (See Exhibit 5). In spite of the fact HP knew it had filed a lawsuit against MITG with this Court, HP specifically asked the arbitration panel to proceed with a decision in the arbitration proceeding. (See Exhibit 5). The arbitration forum did just what HP asked and rendered a decision. (See Exhibit 6). HP lost the arbitration ruling and was denied the relief it requested. (See Exhibit 6).

The allegations in Plaintiff's First Amended Complaint filed with this Court are identical to those filed in the arbitration complaint. Specifically, HP is alleging that MITG has sought to capitalize on HP's success by using domain names that are confusing similar to the HP marks and is therefore infringing on HP's rights in its trademarks. (See Para. 25 of Exhibit 1). Further, HP alleges that MITG's activities in using the domain names after the termination of the SSA are likely to cause confusion, mistake or deception as to the source, origin or approval of MITG's products and services. (See Para. 31 of Exhibit 1). The allegations continue that MITG has infringed on HP's trademarks and are likely to lead the public to conclude that the products and services marketed by MITG are sponsored by HP. (See Para. 32 of Exhibit 1).

Further, in its additional submission and in its First Amended Complaint, HP alleged that MITG was "simply infringing upon Complainants' trademark rights in bad faith"; "that MITG's actions indicate their bad faith intent to profit from use of the domain names in violation of Complainants' trademark rights"; and "MITG was continuing to use the domain names after

Complainant asked them to stop." (See Exhibits 1 and 5). HP decided to roll the dice with its arbitration proceeding and even went so far as to ask the arbitration panel to proceed with a decision with full knowledge of the risks associated with such a decision in light of a pending federal lawsuit and preclusion issues.

As a general rule, arbitration awards have the same res judicata and collateral estoppel effect as court judgments. Taylor v. Peoples Gas Light & Coke Company, 275 Ill.App.3d 655, 660, 656 N.E.2d 134, 139 (1st Dist. 1995); Lo Russo v. Industrial Commission, 258 Ill.App.3d 59, 629 N.E.2d 753 (1994); Herriford v. Boyles, 193 Ill.App.3d 947, 953, 550 N.E.2d 654, 658-59 (1990); Restatement (Second) of Judgments §84 (1992). The only exceptions are where it appears the arbitration proceeding was unfair or the result unreliable, or where giving the award preclusive effect would be incompatible with other legal or contractual policies. Taylor v. Peoples Gas Light & Coke Company, 275 Ill.App.3d 655, 660, 656 N.E.2d 134, 139 (1st Dist. 1995); Lo Russo v. Industrial Commission, 258 Ill.App.3d 59, 629 N.E.2d 753 (1994); Herriford v. Boyles, 193 Ill.App.3d 947, 953, 550 N.E.2d 654, 658-59 (1990); Restatement (Second) of Judgments §84 (1992).

There is nothing to support an argument from HP that the arbitration proceeding was unfair or the result unreliable. HP filed no appeal or objection subsequent to the decision of the arbitrator. Further, there is nothing to suggest that giving the award preclusive effect is incompatible with other legal or contractual policies. There is nothing contractually stated by the Standard Support Agreement or Middleware Agreement between the parties to not give the arbitration decision full and binding effect. In fact, HP was the entity that sought the arbitration forum against MITG. HP made the decision to proceed with an action with the National

Arbitration Forum. The fact that HP lost that decision does not make the award incompatible with legal or contractual policies.

Collateral estoppel applies in this case because HP had a full and fair opportunity to litigate the issues in the arbitration proceedings. The application of the doctrine of collateral estoppel is not a result of any injustice to HP as it has been given a full and fair opportunity to present its case. In fact, the "full and fair opportunity requirement" is satisfied even if only a slight amount of evidence was presented on the disputed matter decided in the first suit. Schratzmeier v. Mahoney, 246 Ill.App.3d 871, 875, 617 N.E.2d 65, 68, *citing* Raper v. Hazelett & Erdal, 114 Ill.App.3d 649, 449 N.E.2d 268 (1983). Finally, the courts have determined that "actually litigated" does not mean thoroughly litigated, but only that the parties disputed the issues and the trier fact resolved it. Id. The doctrine of collateral estoppel generally applies as long as the party had a procedural, substantive and evidentiary opportunity to be heard on the issue. Fried v. Polk Brothers, Inc., 190 Ill.App.3d 871, 878, 546 N.E.2d 1160, 1164 (1989).

HP had the full and fair opportunity to litigate the issues in the prior arbitration proceeding. HP presented numerous evidentiary documents in support of its claims. (See Exhibit 3). HP even realized what it was doing when it disclosed its federal lawsuit yet still asked the arbitration panel to proceed with a ruling. HP could have withdrawn its arbitration request but decided to forge ahead. HP did so at its own peril. The issues presented by HP were disputed and the trier of fact resolved the matter. Therefore, HP had a procedural, substantive and evidentiary opportunity to be heard on the issues and is estopped from relitigating the issues now in this case.

**II.    HP'S claims are barred by the doctrine of res judicata.**

HP's claims are also barred by the doctrine of res judicata. The doctrine of res judicata requires that: "(1) the second suit be based upon the same claim, demand or cause of action as the prior one; (2) both cases involve the same parties or their privies; and (3) the first case was decided on the merits by a tribunal of competent jurisdiction." Spiller v. Continental Tube Co., 95 Ill.2d 423, 432, 447 N.E.2d 834, 838 (1983). Res judicata promotes judicial economy and prevents repetitive litigation. Bickel v. Subway Development of Chicagoland, Inc., 354 Ill.App.3d 1090, 1102, 822 N.E.2d 469, 479 (Ill. App. 5th Dist. 2004). The Illinois Supreme Court has stated that the "transactional" test is the exclusive test for res judicata analysis. River Park Inc. v. City of Highland Park, 184 Ill.2d 290, 703 N.E.2d 883 (1998). To determine if the causes of action are the same requires viewing "the claim in factual terms and consider if it is coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff." River Park Inc. v. City of Highland Park, 184 Ill.2d 290, 309, 703 N.E.2d 883, 892 (1998). The doctrine prevents a party from splitting theories of recovery that relate to one transaction. Peregrine Financial Group, Inc. v. Martinez, 305 Ill.App.3d 571, 579, 712 N.E.2d 861, 867 (Ill. App. 1st Dist. 1999); *citing* Restatement (Second) of Judgments §24(1), at 196 (1982).

The second suit filed by HP here in the United States District Court for the Central District of Illinois is based upon the same claims and transaction as the prior arbitration action alleging that MITG was using confusingly similar domain names, confusing the public as to the association of those domain names, that MITG had no rights or legitimate interests in the domain names and that MITG had registered and used the domain names in bad faith. MITG has

addressed the allegations and their similarities from both the arbitration complaint and the First Amended Complaint in the previous argument section of this Memorandum and again states that the allegations are the same. Both actions allege confusion, deception, mistake and bad faith against MITG in relation to use of domain names.

Both the arbitration and federal lawsuit involve the same parties and the same transaction. The first case was decided on the merits by the National Arbitration Forum which is a tribunal of competent jurisdiction. There can be no dispute that the arbitrator's decision was a final judgment on the merits. The former judgment bars not only the questions actually decided by the arbitrator but those which might properly have been litigated. The three (3) requirements outlined by the Spiller case have all been met to invoke res judicata to HP's claims herein.

## CONCLUSION

HP chose on its own accord to have this matter initially decided by the National Arbitration Forum. HP matter of factly asked the arbitration forum to proceed even in light of the fact HP had filed a federal lawsuit. In that action, HP raised the exact issues that are raised in its First Amended Complaint with this Court. HP has alleged in the subsequent filing that the domain name use by MITG was confusingly similar, that MITG had no rights or legitimate interests in the domain names and the registration and use of the domain names by MITG were in bad faith. All issues were previously raised by HP in the arbitration action which involved the same parties. The arbitrator's decision in that matter was a full and final decision on the merits. HP lost that case. The former judgment bars not only the questions that have been actually decided but those which might have been properly litigated in the arbitration case. The issues decided in the prior suit are barred under the doctrines of collateral estoppel and res judicata

from being relitigated in this current action. As MITG has stated, summary judgment should be granted in its favor on all counts of Plaintiff's First Amended Complaint based upon the doctrines of collateral estoppel and res judicata.

s/       James A. Hansen
Attorney for Defendant/Counterclaim Plaintiff,
Midwest Information Technology Group, Inc.
Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey Street, P. O. Box 1069
Telephone: (217) 223-3030
Facsimile: (217) 223-1005
E-mail: jhansen@srnm.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of March, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Molly Buck Richard
>The Richard Law Group
>8411 Preston Road, Suite 890
>Dallas, TX 75201-4693
>
>Elizann Carroll
>Juneau, Boll & Ward
>15301 Spectrum Drive, Suite 300
>Addison, TX 75001
>
>Scott Spooner
>Heyl, Royster, Voelker & Allen
>Suite 575, National City Center
>1 North Old State Capitol Plaza
>P.O. Box 1687
>Springfield, IL 62705-1687

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: None.

>s/          James A. Hansen
>Attorney for Defendant/Counterclaim Plaintiff,
>Midwest Information Technology Group, Inc.
>Schmiedeskamp, Robertson, Neu & Mitchell
>525 Jersey Street, P. O. Box 1069
>Telephone: (217) 223-3030
>Facsimile: (217) 223-1005
>E-mail: jhansen@srnm.com