## NATIONAL ARBITRATION FORUM

| | |
|---|---|
| Hewlett-Packard Company,<br>Hewlett-Packard Development<br>Company, L.P. and<br>Compaq Trademark B.V.<br><br>Complainants<br>v.<br>MITG and Michael Lauber<br><br>Respondents | **Domain Names in Dispute**<br>hpdirectonlineparts.com<br>hpdirectonline.com<br>hponlineparts.com<br>compaqdirectonline.com<br>compaqonlineparts.com |

### MIDWEST INFORMATION TECHNOLOGY GROUP, INC. AND MICHAEL LAUBER'S RESPONSE TO COMPLAINT FILED BY HEWLETT-PACKARD COMPANY, HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P. AND COMPAQ TRADEMARK B.V.

1. Midwest Information Technology Group, Inc. ("MITG") and Michael Lauber ("Lauber") (collectively "Respondents") submit this Response to the Complaint filed by Hewlett-Packard Company, Hewlett-Packard Development Company, L.P. and Compaq Trademark B.V. ("Complainants") in accordance with the Uniform Domain Name Dispute Resolution Policy, adopted by the Internet Corporation for assigned names and numbers (ICANN) on August 26, 1999 and approved by ICANN on October 24, 1999 (ICANN Policy), and the Rules for Uniform Domain Name Dispute Resolution Policy (ICANN Rules), adopted by ICANN on August 26, 1999 and approved by ICANN on October 24, 1999, and the National Arbitration Forum (NAF) Supplemental Rules (Supp. rules). ICANN Rule 3(b)(i).

2. **RESPONDENTS' CONTACT INFORMATION**

   a. Name:       Midwest Information Technology Group, Inc. and
                  Michael Lauber
   b. Contact:    Ron Haught, Jr.
   c. Address:    4220 Kochs Lane
                  P.O. Box 5208
                  Quincy, IL 62305
   d. Telephone:  (217) 214-7299
   e. Facsimile:  (217) 214-7204
   f. E-Mail:     rdhj@mitg.com

Respondents' authorized representatives in this administrative proceeding are their outside counsel, Delmer R. Mitchell and James A. Hansen, both of Schmiedeskamp, Robertson, Neu & Mitchell. Contact details are:

**EXHIBIT 4**

|   |   |   |
|---|---|---|
| a. | Names: | Delmer R. Mitchell and James A. Hansen |
| b. | Address: | Schmiedeskamp, Robertson, Neu & Mitchell, 525 Jersey, P.O. Box 1069, Quincy, Illinois 62306 |
| c. | Telephone: | (217) 223-3030 |
| d. | Facsimile: | (217) 223-1005 |
| e. | E-Mail: | dmitchell@srnm.com; jhansen@srnm.com |

The Respondents' preferred method for communications directed to the Respondents in the administrative proceeding are:

**Electronic-Only Material**
a.   Method:    e-mail
b.   Address:   jhansen@srnm.com
c.   Contact:   James A. Hansen

**Material Including Hard Copy**
a.   Method:    by facsimile transmission, with mailed confirmation of transmission
b.   Address:   Schmiedeskamp, Robertson, Neu & Mitchell
              525 Jersey
              P.O. Box 1069
              Quincy, IL 62301
c.   Facsimile: (217) 223-1005
d.   Contact:   James A. Hansen

The Respondents' consent to having this dispute heard before a single member administrative panel. ICANN Rule 3(b)(iv).

3. **OTHER LEGAL PROCEEDINGS**

Complainants have filed in the United States District Court Central District of Illinois a lawsuit in connection with and relating to the domain names that are the subject of their Complaint herein. Exhibit A.

4. **RESPONSE TRANSMISSION**

Respondents' state that a copy of this Response, together with all Exhibits, has been sent or transmitted to the Complainant in accordance with ICANN Rule 2(b).

5. **FACTUAL AND LEGAL GROUNDS**

The Response filed herein is based on the following factual and legal grounds. ICANN Rule 5(b)(i).

Contrary to Complainants' assertions, MITG registered the domain names: <Compaqonlineparts.com> and <Compaqdirectonline.com> with the implied consent of Compaq

as it was already providing services to Compaq as a third party parts supplier. MITG and Compaq Direct, Inc. ("CDI") entered into a Standard Support Agreement on February 7, 2002. (Exhibit B). On or about May 3, 2002 Hewlett-Packard merged with Compaq and assumed the rights and obligations of Compaq under the Standard Support Agreement. The Support Agreement contained an exclusivity clause whereby Hewlett-Packard gave MITG the exclusive right to provide parts and services to Hewlett-Packard's customers. In paragraph 14 of the Agreement, Complainants specifically acknowledged that MITG had exclusive ownership rights to certain proprietary software, websites, trademarks, logos, copyrights, domain names and other proprietary and intellectual property rights. Further, CDI specifically acknowledged that MITG had developed websites, logos, etc. for not only CDI, but also, for its customers and all rights thereto belong to MITG as part of its intellectual property rights.

Hewlett-Packard as the successor in interest to Compaq had actual and constructive notification of the proprietary rights of MITG as of the date in which the Agreement was entered into and could have and should have performed any and all necessary investigation as to any intellectual property rights it was disputing prior to assuming any obligations of Compaq and specifically prior to assuming the obligations contained within the Agreement. The Agreement also states that neither party shall ever dispute the ownership or validity of the other parties intellectual property rights or take or cause to be taken any action that would invalidate such parties intellectual property rights. Hewlett-Packard is in direct violation of this Agreement by taking such action herein.

During the course of the contractual relationship between CDI and MITG and Hewlett-Packard and MITG, Hewlett-Packard granted express and/or implied consent to MITG to use the domain names that MITG had developed prior to the agreement amongst the parties. Hewlett-Packard expressly and impliedly consented to the use of the domain names by MITG to facilitate sales of Complainants' parts to thus benefit the bottom line profit of Complainants.

MITG performed all of its obligations under the Standard Support Agreement. On or about October 13, 2003, Hewlett-Packard terminated the Agreement with MITG effective February 7, 2004. However, Hewlett-Packard failed to terminate the Middleware Agreement entered into between the parties which was and still is in full effect. (Exhibit C). Under the terms of the Middleware Agreement, MITG developed software that linked together the parties' web tools and created an interface that sent orders from MITG's web tool directly into Compaq's VISTA-Order Entry System. By means of this "Middleware", after an order was reviewed, released and credit approval obtained, the system would submit an order acknowledgment to the parties' web tools. The Middleware Agreement was entered into for a period of two years beginning on February 8, 2002. Thereafter, the Agreement automatically continued for a period of one year and from year to year thereafter. To date, Hewlett-Packard has failed to give any termination notice pursuant to the terms of the Agreement and the Middleware Agreement continues in full force and effect until at least February 8, 2005.

As such, even though MITG has been terminated by Hewlett-Packard under the Standard Support Agreement, the parties still have in full force and effect an agreement whereby an order can be obtained by MITG and reviewed, released and credit approval obtained through the VISTA-Order Entry System thus submitting an order acknowledgment to the parties' web tools.

As such, the domain names previously used by MITG with the express and/or implied consent of Hewlett-Packard under the Standard Support Agreement can still be used by MITG under the Middleware Agreement.

Complainants' must prove each of the following elements in order to obtain a favorable decision: (A) The domain name must be identical or confusingly similar to a trademark or service mark in which the Complainant has rights; (B) The Complainant must show that the Respondent has no rights or legitimate interest in respect to the domain name that is the subject of the dispute; and (C) The Complainant must show that the domain name was registered and used in bad faith. *Frank James Pearson v. Byers Choice*, F.A. 92015 (Nat.Arb.For. March 9, 2000). The burden is on the Complainant. If he fails to prove all three elements the decision must be for the Respondent. *Frank James Pearson v. Byers Choice*, F.A. 92015 (Nat.Arb.For. March 9, 2000).

### A.   CONFUSINGLY SIMILAR DOMAIN NAME

Respondents concede that Hewlett-Packard registered "HP" as a trademark throughout the world before Respondent had registered the domain names which are in dispute in this action. Further, Respondents concede that COMPAQ was a registered trademark before Respondent registered the domain names which are at dispute in this action. Respondents also concede that the domain names contain the letters HP and/or Compaq along with descriptive words and the most common URL suffix. However, as stated below, the domain names are being used with the express and/or implied consent of Complainants and not in bad faith.

### B.   NO RIGHTS OR LEGITIMATE INTERESTS IN DOMAIN NAMES

Contrary to Claimants' assertions, Respondents do have legitimate interests in the domain names because Respondents are using the domain names in connection with a bona fide offering of goods and services for legitimate fair use. Although Complainants' state to this panel that the Agreement between the two parties has terminated, Complainants' failed to advise this panel of all Agreements between the parties.

After the Standard Support Agreement was terminated by Complainant, Respondent placed a customer notice indicating that "HP will no longer offer HPDirectOnline through MITG, Inc. as a multi-vendor parts solution to its customers." However, Respondents provided a link directly to the Hewlett-Packard website should the consumer wish to purchase parts from Hewlett-Packard or a link to MITG should the customer choose to purchase computer parts and accessories from MITG. Respondents' use of the active domain name to redirect customers to the MITG website also allows the customer to solicit orders for Complainant as well as Complainants' competitors' products. Under the Middleware Agreement in full force and effect between the parties, such a use is a bona fide offering of goods or services and for a legitimate fair use. Even though the Standard Support Agreement between Complainant and MITG ended, the Middleware Agreement remains in full force and effect and thus Complainant has expressly and/or impliedly conferred rights upon MITG to continue to use the Compaq and HP marks that were used previously under the Support Agreement.

Complainants' are misguided in their assertion that the Agreement between Complainants' and MITG ended thus any implied rights conferred upon MITG to use the Compaq and/or HP marks no longer exists. As is evident by the ongoing and current Middleware Agreement between the parties, any implied or expressed rights conferred upon MITG are still ongoing.

Therefore, based on the ongoing and continued relationship amongst the parties under the Middleware Agreement, Respondents have a legitimate right and interest in the domain names in dispute.

C.   REGISTRATION AND USE IN BAD FAITH

Respondents did not register and are not using the domain names in bad faith. As all agreements amongst Complainants and Respondents have not ended, Respondents have a legitimate right to use the Compaq and HP marks and have received the express and/or implied rights conferred upon it to use the Compaq or HP marks from Complainants. Complainants cannot argue that "Compaq then Hewlett-Packard impliedly consented to this use of the domain names by MITG to facilitate MITG's performance under the Agreement" (paragraph 5 of Complainant's submission) and now turn around and argue that even though all agreements have not been terminated that Respondents have no legitimate right to continue to use the marks.

MITG has not maintained registration of the domain names to prevent use by Complainants or to disrupt Complainants' business. Respondents have not used the domain names to promote the products of Complainants' competitors or to confuse Complainants' customers. As evidenced by the site (Exhibit J of Complainants' submission) consumers are given a clear choice as to where they want to go to purchase their online parts.

Complainants argue that Respondents have intentionally created a situation where the domain names will direct any reasonable internet user to assume that the websites are affiliated with Complainants when, in fact, Complainants' authorization throughout the terms of the Standard Support Agreement led to any assumption now argued by Complainants'. Complainants impliedly consented to the use of the domain names by MITG during the Standard Support Agreement to facilitate the agreements of the parties and now they attempt to benefit from terminating the Agreement. Further, the Middleware Agreement between the parties remains in full force and effect and therefore suggests that the domain names are endorsed and affiliated by and for Complainants.

Complainants have failed to produce proof that Respondents have registered or are using the domain names in bad faith. *Sandy Frank Entertainment, Inc. v. Wallstreet, Inc.*, F.A. 93669 (Nat.Arb.For. April 1, 2000). There is no claim that the Respondents are unfairly dealing in domain names or registering domain names to prevent the owners of trade or service marks from using them. There is no evidence that the Respondents are confusing the name of the domain site to the detriment of the Complainants. Respondents have registered and used the domain name in good faith and without the intent to interfere with Complainants right to conduct business. *Unitil Resources, Inc. v. Robert Ampe*, F.A. 93559 (Nat.Arb.For. March 13, 2000). Further, Respondents have not provided incomplete or false contact information and did not list the domain names for sale in the WHOIS Directory.

Based on the foregoing, Complainants have failed to prove the third essential element necessary for their claim.

If anything, it can be shown that Complainants' actions constitute bad faith. Specifically, Complainants' attempted an underhanded change of the domain names by contacting the WHOIS Directory to have the names changed without the consent of Respondents. Respondent Lauber received an e-mail from WHOIS asking to accept the terms of the proposed transfer that was conducted without the express permission or consent of the domain names registered owner (Exhibit D). Complainants' attempted to go into the All Domains Directory and change the listing of the registered owner. Said actions on behalf of Complainants are underhanded and in bad faith.

6.  **CERTIFICATION**

Respondents' certify that the information contained in this Response is to the best of Respondents' knowledge complete and accurate, that this Response is not being presented for any improper purpose, such as to harass, and that the assertions in this Response are warranted under these Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument.

Respectfully Submitted,

Dated: March 18, 2004

Delmer R. Mitchell
James A. Hansen

Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey
P.O. Box 1069
Quincy, IL 62306

ATTORNEYS FOR MIDWEST
INFORMATION TECHNOLOGY GROUP,
INC. and MICHAEL LAUBER