3:04-cv-03055-JES-CHE    # 78-15    Page 1 of 3
01/19/2005 14:14 FAX 918 785 9267    HEWLETT PACKARD    @002
3:04-cv-03055-JES-CHE    # 68    Page 1 of 3

E-FILED
Monday, 27 March, 2006 03:44:43 PM
Clerk, U.S. District Court, ILCD

E-FILED
Wednesday, 19 January, 2006 11:47:52 AM
Clerk, U.S. District Court, ILCD

## DECLARATION OF WILLIAM J. CROWLEY

1. My name is William J. Crowley. I am over the age of 18 years and am fully competent to make this Declaration and hereby make this Declaration under penalty of perjury. The matters stated herein are within my personal knowledge and are true and correct.

2. I have been employed by Hewlett-Packard Company ("HP") since June 1996. I am currently the Parts Business Development Manager in charge of selling spare parts and replacement parts to HP customers and have had that role since 2001. I was involved in the evaluation of MITG as a provider of services to HP and the decision to allow the contract to expire. As such, I have knowledge of HP's spare parts business before and after the merger with Compaq, and of MITG's role in spare parts sales and call center support. A true and correct copy of the Standard Support Agreement is attached hereto as Exhibit A-1.

3. Prior to the merger of HP and Compaq, HP operated calls centers for technical support and sales, had web-based customer service and sales, and sold spare parts for HP equipment through the Channel and Parts business of HP Customer Support. HP maintained call centers that provided customer support, including call centers that specialized in the sale of spare parts. HP also offered spare parts for sale on its website, www.partsdirect.hp.com.

4. Prior to HP's merger with Compaq, HP sold spare parts to customers primarily through HP Customer Support, and supplied spare parts when providing maintenance on HP equipment. In general, HP only sold spare parts for HP products; it did not sell parts for third party equipment that might be connected to an HP system or third-party options for HP products. Customers were referred to outside vendors to acquire such parts.

5. In May 2002, HP and Compaq merged. HP continued to offer spare parts for sale through the same channels described above in paragraphs 3 and 4. After the May 2002 merger of Compaq and HP, HP integrated the operations of the two corporations and continued to provide call center support, web-based customer service and sales, and continued to sell spare parts for HP and Compaq equipment.

6. Post-merger, HP identified redundancies created by the merger of the two companies. One of the areas targeted for integration was call center support and customer access points. Immediately post-merger, HP had six call centers that specialized in sales and support for spare parts, and approximately 80 other access points (phone numbers) for other customer support functions. Most of these access points were part of HP Services, with the exception of the parts sales call center operated by MITG as part of the CDI business (later HP Direct), which is in the Personal Systems Group ("PSG"). At the time of the integration, HP was aware of MITG's contract with CDI and the service it provided, and no changes were made to the Direct Parts call center structure or channels of access that would affect MITG. The two 800 numbers from which MITG could be reached were maintained, while HP Services support

DECLARATION OF WILLIAM CROWLEY    PAGE 1



EXHIBIT
11

3:04-cv-03055-JES-CHE  # 78-15  Page 2 of 3
01/19/2005 14:14 FAX 916 785 9267     HEWLETT PACKARD                    ☑003
3:04-cv-03055-JES-CHE  # 68  Page 2 of 3

activities and parts call centers (and the various channels to reach those call centers) were consolidated.

7. During 2003, HP Services consolidated various parts sales call centers into a single call center in Roseville, CA. The only call center not subject to the consolidation was the parts sales call center staffed by MITG.

8. Similarly, post-merger HP worked to consolidate like groups within the company. The pre-merge Compaq Services included organizations that served similar purposes and customer groups as the pre-merge HP Services. Compaq Customer Support was integrated into HP Customer Support ("HPCS"). Thereafter, HPCS provided customer support, including spare parts, to customers of HP Services.

9. Post-merger, HP was structured with four major business groups: Enterprise Systems Group, Personal Systems Group, Imaging and Printing Group, and HP Services. The following diagram (a simplified view of HP in the Americas) may assist in understanding the structure of the two relevant portions of post-merger HP:



10. Post-merger CDI, which was re-named HP Direct, continued to service the same customers as pre-merger CDI and was accessed through the same channels. There were two 800 numbers for CDI customers [800-848-4589 and 800-848-9771], and MITG operated websites using Plaintiffs' trademarks on behalf of Direct Parts. The HP Services support activities and parts sales call centers were accessed through different 800 numbers.

11. MITG was a subcontracted service provider to the Direct Parts business. Direct Parts was a unit of the HP Direct business, which was a division of the Personal Systems Group of HP. Direct Parts offered and sold "multi-vendor" or "third party" parts, which were non-Compaq or HP parts, and obsolete or legacy parts, which were Compaq or HP parts not in stock in Compaq/HP facilities. In support of the Direct Parts offerings, MITG obtained parts from companies other than Compaq/HP ("sourced" parts).

12. Post-merger HP Customer Support did not sell third-party parts or certain third-party options. HP Services customers seeking such parts were referred to other parties that might have such parts for sale. Direct Parts (MITG) was

**DECLARATION OF WILLIAM CROWLEY   PAGE 2**

3:04-cv-03055-JES-CHE   # 78-15   Page 3 of 3
01/19/2005 14:15 FAX 916 785 9267    HEWLETT PACKARD                              ☒004
3:04-cv-03055-JES-CHE   # 68    Page 3 of 3

one of the sources to which an HP Services customer could be referred. HP did not track what sales, if any, these other parties may have made.

13. Outside of the Agreement, MITG sourced and sold third-party parts to the HP Customer Support Service Delivery Group (YYY on the above chart) in support of specific customer accounts. These third-party parts were used by HP Customer Support in the maintenance of customer systems.

14. The Agreement remained in place until expiration. HP terminated it in compliance with the terms of the Agreement, on February 7, 2004 (there is no claim that the termination was wrongful).

15. Compaq/HP Direct customers were likely to also be customers of other parts of Compaq/HP (including Compaq/HP Services), and likely to have multiple accounts, access points, and customer numbers with Compaq/HP, depending on the subsidiary servicing and/or supplying product to them. Thus, throughout the term of the Standard Support Agreement these customers had multiple means of access to Compaq/HP and multiple interactions with different parts of Compaq/HP.

16. Much of MITG's contact was with CDI customer service representatives ("CSRs") who contacted MITG to acquire spare parts for Direct customers. These same CSRs continued to contact MITG to meet their customers' spare parts needs post-merger (in fact, several of them continue to contact MITG to acquire sourced parts for their customers, as shown by documents produced by MITG).

17. HP's annual revenue from U.S. spare parts sales, post merger, through all access points, exceeded $170 million.

18. I searched my records and worked with others in my group in their search for records. We did not locate any documents indicating the diversion of sales calls or other business that should have gone to Direct/MITG to other HP call centers or to third parties. We did locate and produce documents relating to the routing of calls post termination. We also located some documents discussing or mentioning pre-Agreement business and turned over such documents.

So sworn under penalty of perjury on this 18th of January, 2005 at Roseville, CA.

_William J Crowley_
William Crowley

DECLARATION OF WILLIAM CROWLEY   PAGE 3