E-FILED
Wednesday, 11 January, 2006  11:55:46 AM
Clerk, U.S. District Court, ILCD
E-FILED
Monday, 27 March, 2006  03:45:16 PM
Clerk, U.S. District Court, ILCD

*Middleware*

## AGREEMENT

This Agreement ("Agreement") is made and entered into as of this 06 day of 02, 20 05 by and between Midwest Information Technology Group, Incorporated, (MITG) a Missouri corporation, and Compaq Direct, Inc. ("Compaq"), a corporate subsidiary of Compaq Computer Company. WITNESSETH:

WHEREAS, MITG and Compaq are each engaged in the business, *inter alia*, of buying, selling, distributing and providing computer parts ("Service Parts") to computer users; and

WHEREAS, MITG and Compaq, through cooperative efforts, have created an environment that allows computer users to purchase Service Parts from them; and

WHEREAS, MITG and Compaq are currently using their own website ("Web Tools") to receive, accept, process and fill customer orders for Services Parts; and

WHEREAS, to streamline and to facilitate the acceptance, processing and filling of customer orders, the parties wish to integrate their Web Tools; and

WHEREAS, in order to do so, MITG has agreed, upon the terms herein provided, to develop software to link the parties' Web Tools for the parties mutual benefit.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter provided, the parties hereto agree as follows:

1. **Development of Middleware.** MITG shall develop software that will link together the parties Web Tools and, more specifically, will create an interface that (i) will send orders from MITG's Web Tool and load these orders directly into Compaq's VISTA-order entry system and (ii) after an order has been reviewed, released and credit approval obtained, will submit an order acknowledgment to the parties' Web Tools ((i) and (ii) together, the "Middleware"). The Middleware developed by MITG shall met the business requirements of the parties therefore as set out and agreed to by the parties (the "Business Requirements"). Those Business Requirements shall be set forth in the final form of a document referred to as Compaq's Business Requirements for OD2001-522 now in the process of being developed by the parties.

2. **Compensation; Termination Fee.** MITG shall develop the Middleware, at its cost, without compensation from Compaq for the mutual benefit of the parties. However, if during the term hereof, Compaq should terminate this Agreement, other than on the grounds set forth in Section 6(b), then Compaq shall pay to MITG, as a termination fee, within seven (7) days of such termination, a sum (the "Termination Fee") equal to ten percent (10%) of all gross receipts paid by Compaq to MITG during the preceding twelve (12) months for each one year period or part thereon remaining on the term hereof had Compaq not terminated this Agreement (the "Unexpired Term"). The Termination Fee due and owing from Compaq to MITG shall be prorated to take into account the length of the Unexpired Term if the same is either more or less

EXHIBIT 12

than twelve (12) months. If the Termination Fee is not paid when due, the same shall accrue interest at the rate of eight percent (8%) per annum from the due date until paid in full.

3. <u>Grant of License.</u> MITG hereby grants to Compaq and Compaq hereby accepts from MITG, a personal, non-transferrable, and non-exclusive right and license, to use the Middleware and all portions thereof solely for the purpose of doing business with MITG and for no other use (the "Middleware License"). The Middleware License herein granted to Compaq shall be effective as of the date of this Agreement. Compaq shall not modify, revise or sublicense the Middleware to others nor use the Middleware for the benefit of parties other than MITG without MITG's prior written consent, except that the Middleware may be sublicensed by Compaq for use by its affiliates and subsidiaries.

4. <u>Confidentiality.</u> The Middleware and all information and documentation relating thereto shall be held in confidence by Compaq and its subsidiaries and affiliates and may not be used by any of them (other than for the furtherance of the purposes of this Agreement and the Business Requirements) or disclosed to third parties except to the extent provided herein without MITG's prior written consent. Any and all information and documentation disclosed or made available to MITG by Compaq in connection with the development of the Middleware or the Business Requirements, shall be received and treated by MITG as confidential and restrictive and shall not be provided or furnished to a third party other than to MITG's own affiliates and subsidiaries and the employees and representatives thereof with a need to know in order to accomplish the purposes intended hereunder. The terms and conditions of this Agreement may not be disclosed or made available by either party hereto to third parties without the prior written consent of the other party; but nothing contained herein shall prevent either party from complying with applicable law, regulation or court order relative thereto.

5. <u>Ownership Rights in Middleware.</u> Compaq acknowledges that the Middleware shall be the sole and exclusive property of MITG and acknowledges that it shall have no right to ownership therein. The Middleware License authorizes Compaq to use the Middleware to link its VISTA-order entry system to MITG Web Tools and for other purposes set forth herein. Except as stated herein, the Middleware License gives Compaq no other rights or entitlements to the Middleware nor shall Compaq have any rights to use the Middleware in any other way. Compaq acknowledges that MITG owns the Middleware. Compaq shall never dispute the ownership or validity of the Middleware or take or cause to be taken any action that would invalidate the Middleware or otherwise demise MITG's proprietary rights to the Middleware. It is understood that Compaq shall not acquire or claim any right of title to the Middleware adverse to MITG's or any of its affiliates by virtue of this Agreement or the Middleware License it being the intention of the parties that, as between the parties, any rights resulting from the granting of the Middleware License, or use of the Middleware by Compaq pursuant thereto, shall at all times inure to the benefit of MITG and its affiliates.

6. <u>Term; Termination and Cancellation.</u>

(a) This Agreement shall commence on the date hereof and shall continue for a period of two (2) years. Thereafter, this Agreement shall automatically continue for a period of

2

one (1) year and from year to year thereafter unless one party gives notice to the other not less than ninety (90) days prior to the end of the then current year, that such party desires to terminate the Agreement at the end of such current year.

(b) Notwithstanding the foregoing, this Agreement may be terminated/cancelled upon the occurrence of one or more of the following events, and the terminating/cancelling party shall not be liable to the other party solely for the rightful exercise of such right: (i) by either party if the other party seeks protection under the bankruptcy laws (other than as a creditor), any assignment is made for the benefit of creditors or a trustee is appointed for all or any portion of such party's assets; or (ii) by either party if the other party is in default of any material provision of this Agreement and such default is not cured within thirty (30) days after receipt of written notice thereof by such other party.

(c) If this Agreement is terminated/cancelled by either party the Middleware License granted to Compaq pursuant hereto shall immediately terminate and Compaq's use of the Middleware must cease immediately.

(d) The rights and remedies set forth above are not intended to be exclusive and each party hereto, upon the other party's default, shall have all rights and remedies available at law or in equity and all such rights and remedies shall be cumulative. In this regard, Compaq recognizes and acknowledges that Compaq's breach of the covenants set forth in paragraph 4 or 5 or Compaq's use of the Middleware License other than for the purposes specifically set forth herein shall render irreparable harm to MITG. As such, if Compaq violates any of said covenants, MITG shall be entitled to any and all available equitable relief including, but not limited to, injunctive relief. In any such equitable proceeding Compaq agrees that an order may be entered in such suit enjoining Compaq from violating any such covenants. Compaq further agrees that an order to that effect may be made while the litigation is pending, as well as upon a final determination thereof without the requirement that MITG post a bond. In addition, any such application for an injunction by MITG shall be without prejudice to any other rights of action which may accrue to MITG by reason of the breach of the aforesaid covenants. Moreover, in the event either party breaches this Agreement, the non-breaching party shall have the right to recover from the breaching party its reasonable attorneys' fees and costs incurred pursuing its remedies for such breach.

7. <u>INDEMNITIES</u>. THE MIDDLEWARE IS PROVIDED FOR USE TO COMPAQ ON A "AS IS" BASIS, WITHOUT ANY WARRANTY OR REPRESENTATIONS AGAINST INFRINGEMENT, EXPRESSED OR IMPLIED, AND THERE ARE NO INDEMNIFICATIONS AGAINST INFRINGEMENT OF ANY PATENTS, TRADEMARKS, TRADE SECRETS OR OTHER PROPRIETARY RIGHTS. IN ADDITION, MITG MAKES NO REPRESENTATIONS OR WARRANTIES WITH RESPECT TO THE MIDDLEWARE AND MITG EXPRESSLY DISCLAIMS ANY SUCH REPRESENTATIONS AND WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. IN NO EVENT WILL MITG BE LIABLE TO COMPAQ FOR ANY SPECIAL, DIRECT OR INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR FOR ANY LOST PROFIT OR

3

REVENUE OR OTHER LOSS OR DAMAGE CAUSED BY LOSS OF PROFITS OF REVENUE, WHETHER FOR NONPERFORMANCE, BREACH HEREUNDER, OR OTHERWISE.

8. <u>Independent Parties.</u> Nothing herein shall be construed as creating a partnership, joint venture or other relationship between the parties and neither party has the authority, by virtue hereof, to act for or on behalf of the other or to obligate the other vis-a-vis third parties. Neither party is acting as an agent or a representative of the other hereunder but each is acting independently of any such right or claim.

9. <u>Assignment.</u> This Agreement and any rights or licenses granted to Compaq hereunder may not be assigned or transferred by Compaq, without MITG's prior written consent.

10. <u>Notices.</u> All notices required to be given pursuant to this Agreement shall be deemed given when actually delivered if delivered in person or three (3) days after being deposited in the United States mail, postage prepaid, where sent by certified mail, return receipt requested, addressed to the receiving party as follows:

To MITG:    Midwest Information Technology Group, Incorporated
            #17 Northport Plaza
            Hannibal, MO 63401

To Compaq:  Compaq Direct, Inc.
            10810 Farnam Drive
            Omaha, Nebraska 68154

11. <u>Entire Agreement.</u> This Agreement is the entire agreement between the parties relating to the subject matter hereof and supercedes all prior agreements, proposals, representations and commitments. This Agreement may be amended only by an instrument executed by the authorized representation of both parties.

12. <u>Governing Law.</u> This Agreement shall be interpreted in its entirety in accordance with the laws of the State of Illinois.

13. <u>Headings.</u> The headings in this Agreement are for convenience only and shall not be used to construe or interpret this Agreement.

14. <u>Counterparts.</u> This Agreement may be executed in counterparts, including a photocopy or facsimile thereof, each of which shall be deemed an original, including a signature thereon, but all of which together will constitute one and the same instrument. A facsimile signature by any party to this Agreement shall have the same force and effect as an original signature hereto and may be relied upon as such by the other party to this Agreement.

4

15. <u>Severability.</u> Any terms or provisions of this Agreement that is invalid or unenforceable in any situation or any jurisdiction shall not effect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

16. <u>Survival of Obligations.</u> The covenants, obligations, rights and remedies of the parties hereunder which contemplate or require action by them or either of them after the termination hereof shall survive any such termination.

IN WITNESS WHEREOF, the parties have signed this Agreement or have caused it to be signed by their duly authorized officers or representatives as of the day and year first above written.

Midwest Information Technology Group, Inc.

By: _____

Its _President/CEO_

Compaq Direct, Inc.

By: _____

Its _Service Program manager_