Furthermore, the World Intellectual Property Organization ("WIPO") has published a *Guide to WIPO Domain Name Dispute Resolution* which states that "the UDRP does not preclude the domain name registrant or the trademark holder from submitting the dispute to a court for independent resolution; either party may commence a lawsuit in court before, during or after a UDRP proceeding." WIPO Arbitration and Mediation Center, GUIDE TO WIPO DOMAIN NAME RESOLUTION, http://arbiter.wipo.int.  Clearly, the UDRP was adopted with the principle that the availability of the administrative procedure would not preclude the availability of court litigation.

Court decisions support the literal interpretation of the UDRP's provision for independent resolution of disputes through court litigation. In 2003, the Court of Appeals for the Fourth Circuit stated, "Because the administrative process prescribed by the UDRP is "adjudication lite" as a result of its streamlined nature and its loose rules regarding applicable law, the UDRP itself contemplates judicial intervention, which can occur before, during, or after the UDRP's dispute resolution process is invoked. As ICANN recognized in designing the UDRP, allowing recourse to full-blown adjudication under a particular nation's law is necessary to prevent abuse of the UDRP process." *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento de Barcelona*, 330 F.3d 617, 624 (4th Cir. 2003) (citations omitted). The court further stated:

In sum, domain names are issued pursuant to contractual arrangements under which the registrant agrees to a dispute resolution process, the UDRP, which is designed to resolve a large number of disputes involving domain names, but this process is not intended to interfere with or modify any "independent resolution" by a court of competent jurisdiction. Moreover, the UDRP makes no effort at unifying the law of trademarks among the nations served by the Internet. Rather, it forms part of a contractual policy developed by ICANN for use by registrars in administering the issuance and transfer of domain names. Indeed, it explicitly anticipates that judicial proceedings will continue under various nations' laws applicable to the parties.

330 F.3d at 625. Furthermore, references to the availability of court litigation imply more than a review of the procedural soundness of the UDRP decision by a court; such references imply that court litigation is available for the resolution of the parties' overreaching trademark, contract, and other claims and defenses. *Parisi v. Netlearning, Inc.*, 139 F. Supp. 2d 745, 752 (E.D. Va. 2001).

Because the plain terms of the UDRP itself, as well as its history, analysis and interpretation of the Policy, provide for courts to undertake independent resolution of disputes relating to domain names, the theories of res judicata and collateral estoppel cannot apply in this case because the Forum does not fully and finally adjudicate the issues before it.

## UDRP Decisions are Not Given the Same Weight as Arbitration under the Federal Arbitration Act.

UDRP decisions are subject to de novo review in the courts; therefore, the theories of res judicata and collateral estoppel do not apply in this case. The history of the UDRP makes it clear that ICANN did not intend for the abbreviated UDRP procedure to have the effect of litigation or traditional arbitration. The ICANN Staff Report on Implementation Documents states that "[e]xcept in cases involving 'abusive registrations' made with bad-faith intent to profit commercially from others' trademarks, the adopted policy leaves the resolution of disputes to the courts (or arbitrators where agreed by the parties) and calls for registrars not to disturb a registration until those courts decide. The adopted policy establishes a streamlined, inexpensive administrative dispute-resolution procedure intended only for the relatively narrow class of cases of 'abusive registrations.' Thus, the fact that the policy's procedure does not extend to cases where a registered domain name is subject to a legitimate dispute (and may ultimately be found to violate the challenger's trademark) is a feature of the policy, not a flaw." Second Staff Report

on Implementation Documents for the Uniform Dispute Resolution Policy, ICANN October 25, 1999.

Furthermore, the UDRP's call for "independent resolution" of disputes relating to the domain name registration by courts "clearly implies that an ICANN panel decision does not have the weight of an arbitration award and will not be given the judicial deference accorded an arbitral tribunal." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:74.2 (4th ed. 2006); *see also* David E. Sorkin, *Judicial Review of ICANN Domain Name Dispute Decisions*, 18 SANTA CLARA COMPUTER & HIGHTECH L.J. 35, 51-52 (2001) ("Unlike conventional arbitration, the UDRP is not meant to replace litigation, but merely to provide an additional forum for dispute resolution, with an explicit right of appeal to the courts."). [Note: Sorkin was the panelist who decided the UDRP complaint for the Forum in this case.]

Courts have declined to give UDRP decisions the same weight afforded to other, more traditional forms of arbitration. In one of the early cases on the subject, the U.S. District Court for the Northern District of Illinois held that the court was not bound by the outcome of ICANN administrative proceedings, stating that the language of the UDRP suggests that the administrative panels' decisions are not intended to be binding on federal courts. *Weber-Stephen Products Co. v. Armitage Hardware and Building. Supply, Inc.*, 54 U.S.P.Q.2d 1766 (N.D. Ill. 2000); *see also Eurotech, Inc. v. Cosmos European Travels Aktiengesellschaft*, 213 F. Supp. 2d 612, 617 (E.D. Va. 2002) (judicial review of World Intellectual Property Organization [UDRP] decision is de novo); *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 20 (1st Cir. 2001) ("The UDRP explicitly contemplates independent review in national courts."); *Retail Services, Inc. v. Freebies Publishing*, 247 F. Supp. 2d 822, 827-828 (D. Va. 2003) ("Decisions made by arbitration panels under the UDRP are not afforded deference by the district court.").

Moreover, some courts have said that results reached in WIPO decisions are not entitled to *any* deference and may not even be admissible. Specifically, in one case in which trademark infringement claims were at issue, the appeals court for the Eastern District of Virginia found that "the result reached in the WIPO proceeding is neither admissible, nor entitled to any deference, with respect to the merits presented in this suit. Review here must be de novo and independent of any WIPO panel conclusion." *Eurotech v. Cosmos*, 213 F. Supp. 2d 612, 618 (E.D. Va. 2002).

Thus, the doctrines of collateral estoppel and res judicata are inapplicable and MITG's Motion should be denied. This Court should review HP's claims de novo and without reference (or deference) to the Forum panel decision.

## THE ISSUES RAISED IN A TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CASE ARE NOT IDENTICAL TO THE ISSUES THAT WERE ADDRESSED IN THE UDRP PROCEEDING.

The scope of a UDRP proceeding is extremely narrow and does not resolve the same issues presented in a trademark infringement suit, nor is this case based on the same claim, demand, or cause of action as the UDRP proceeding. Specifically, UDRP proceedings are limited in terms of the issues presented and the remedy available to the Complainant. Under the UDRP, a Complainant must prove (1) that a domain name is confusingly similar; (2) registrant has no rights or legitimate interests in the domain name; and (3) the domain name was registered and used in bad faith. The only available remedy is the transfer of the domain name to the Complainant if all three elements are proven. *See* UDRP Policy, ¶4.

A claim under the federal Lanham Act, which encompasses both trademark infringement and unfair competition, hinges on the issue of whether or not the defendant has adopted and used a mark, word or phrase that is confusingly similar to the plaintiff's trademark. *Microsoft Corporation v. Software Wholesale Club, Inc.*, 129 F. Supp. 995, 1003 (S.D. Tex. 2000). Under

the Lanham Act, a plaintiff must show ownership in a trademark and that the defendant's mark is likely to cause confusion. *Id.* Moreover, *McCarthy on Trademarks and Unfair Competition* states that:

> Likelihood of confusion is the basic test of both common-law trademark infringement and federal statutory trade-mark infringement. Infringement of federally registered marks is governed by the test of whether the defendant's use is "likely to cause confusion, or to cause mistake, or to deceive." Similarly, the statutes of many states provide that the likelihood of confusion standard is to be applied to measure the infringement of state-registered marks. While issues of priority, secondary meaning, assignment, and the like, may be present in some cases, the test of likelihood of confusion is the touchstone of trademark infringement as well as unfair competition. As one court stated, "Unfair competition is the child of confusion." And as the U.S. Supreme Court has observed: "The law of unfair competition has its roots in the common-law tort of deceit; its general concern is with protecting consumers from confusion as to source.

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:1 (4th ed. 2006). Defendant is clearly mistaken in its attempt to apply *res judicata* in a case that has an entirely different basis than the UDRP proceeding and includes issues that UDRP panelists do not, and cannot, consider.

Of particular relevance here is the fact that the Forum panel that decided HP's UDRP claim expressly declined to enter a finding on the issue of whether or not the domain name was confusingly similar to HP's trademark. "In light of the facts that litigation is pending between the parties and the aforementioned finding [that the registrant had not registered the domain name in bad faith] is sufficient to dispose of the matter before the Panel, the Panel declines to enter findings on the remaining issues." *Hewlett-Packard Company, Hewlett-Packard Development company, L.P. and Compaq Trademark B.V. v. MITG and Michael Lauber*, FA241982 (Nat'l Arb. Forum April 8, 2004). [Attached as Exhibit 6 to Defendant's Motion]. Since a finding of confusing similarity is the core issue in trademark infringement and unfair competition cases, and bad faith registration of the domain name (the only element on which the Forum panel made

any finding) is *not* an element of a trademark infringement claim or an unfair competition claim, MITG's attempt to apply *res judicata* and collateral estoppel in this case is clearly off-base.

Furthermore, case law supports the fact that trademark and unfair competition cases brought under federal law may proceed in court completely separate from UDRP proceedings involving the same parties. "Unlike traditional binding arbitration proceedings, UDRP proceedings are structured specifically to permit the domain-name registrant two bites at the apple." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 380 (2d Cir. 2003). In *Storey*, the Second Circuit has held that the Anti-Cybersquatting Protection Act – a part of the Lanham Act – provides trademark owners with a cause of action similar to, but distinct from, the elements of a claim under the UDRP. UDRP proceedings, then, are not the exclusive remedy: an administrative proceeding does not preclude the trademark owner or the domain name registrant from vindicating his rights under the ACPA or trademark law in court. *Id.*; *see also Barcelona*, 330 F.3d 617 (4th Cir. 2003) (finding that the Lanham Act requires a U.S. court to decide the issues de novo and give the decision of the UDRP panel "no deference" in deciding an action under the Lanham Act.); J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:74.2 (4th ed. 2006) ("There appears to be nothing in the ICANN policy or in the registrant-registrar contract that would prevent a court after the panel decision from determining the dispute de novo and adjudging it according to the substantive rules of trademark law invoked in court by the party displeased with the panel decision.").

The Anti-Cybersquatting provisions of the Lanham Act indicate that, when a party challenges a UDRP panel decision in a U.S. court, the court will apply U.S. trademark law, not the ICANN UDRP policy. In that sense, U.S. law trumps the ICANN dispute resolution policy. Thus, court challenge under U.S. law is in no sense an "appeal" or a "review" of the ICANN

UDRP panel decision. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:74.2 (4th ed. 2006). Because this is true regarding the Anti-Cybersquatting portion of the Lanham Act, it necessarily follows that the same would be true under the trademark infringement and unfair competition provisions of the Lanham Act, as the elements of the cause of action differ even more from the elements of a UDRP claim. Thus, UDRP proceedings need not be the exclusive remedy; the administrative proceeding does not preclude the registrant from vindicating its rights under the Anti-Cybersquatting Protection Act or the Lanham Act in court. *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 381-382 (2d Cir. 2003).Accordingly, HP's claim brought under the trademark infringement and unfair competition provisions of the Lanham Act, is a distinct cause of action that should be reviewed *de novo*, with no deference to or review of the Forum panel's decision.

### THE DAMAGES AVAILABLE UNDER THE UDRP ARE NOT IDENTICAL TO THE DAMAGES AVAILABLE UNDER FEDERAL AND COMMON LAW, AND WHICH ARE SOUGHT BY HP.

In addition, the remedy available under the UDRP is insufficient to claim that a trademark infringement claim has been fairly and completely adjudicated in an ICANN arbitration. The WIPO Guide to Domain Name Resolution further states that, "the remedies available to a complainant in a UDRP proceeding are limited to the transfer of the disputed domain name registration to the complainant or the – rarely requested – option of cancellation of the domain name registration. Neither monetary nor injunctive relief is available." *See* WIPO Guide to Domain Name Resolution, p. 14; *see also Dluhos v. Strasberg*, 321 F.3d 365, 371-2 (3rd Cir. 2003) (the UDRP contemplates a truncated proceeding that "does not permit ... any remedy other than the transfer or cancellation of the domain name in question.").

In deciding whether the Federal Arbitration Act applies to UDRP decisions, one court held that it did not apply, saying, "because the remedies available through the UDRP are so

narrow and specific, we find no basis for confirming and enforcing a UDRP panel decision through Section 9 [of the Federal Arbitration Act]." *Parisi v. Netlearning, Inc.*, 139 F. Supp. 2d 745, 752 (E.D. Va. 2001). Clearly, a decision by a Forum panel cannot be viewed as complete litigation of the merits when the process is so truncated and the remedies are so limited.

For the above reasons, it is clear that the issues, claims, demands and causes of action pled in HP's First Amended Complaint, which alleges trademark infringement and unfair competition, have not been fairly and completely adjudicated in a forum of competent jurisdiction. Therefore, there is no basis for the court to grant summary judgment to MITG based on the defenses of collateral estoppel and *res judicata.*

For the reasons set forth above, Plaintiffs respectfully request that this Court deny Defendant's motion for summary judgment. In the alternative, if this Court does not deny Defendant's motion in its entirety, Plaintiffs request that, pursuant to Federal Rule 56(d), the Court, if practicable, ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted and issue an order specifying the facts that appear without controversy, and directing further proceedings in the action as are just.

Respectfully submitted,

/s Elizann Carroll
ELIZANN CARROLL
Texas State Bar No. 00787209
JUNEAU, BOLL & WARD, P.L.L.C.
15301 Spectrum Dr., Suite 300
Addison Texas 75001
(972) 866-8333
(972) 866-8378 *fax*

MOLLY BUCK RICHARD
Texas State Bar No. 16842800
RICHARD LAW GROUP
8411 Preston Road, Suite 890
Dallas, TX  75225
(214) 206-4300
(214) 206-4330 (fax)

SCOTT D. SPOONER
Heyl, Royster, Voelker & Allen
Suite 575 National City Center
1 North Old State Capital Plaza
P. O. Box 1687
Springfield, IL 62705
(217) 522-8822
(217) 523-3902 *fax*

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this the 13th day of April, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to James Hansen, counsel for Defendants, and Molly Buck Richard and Scott Spooner, counsel for Plaintiffs.

/s Elizann Carroll
ELIZANN CARROLL
State Bar No. 00787209
JUNEAU, BOLL & WARD
15301 Spectrum Dr., Suite 300
Addison Texas 75001
(972) 866-8333
(972) 866-8378 *fax*
ecarroll@juneauboll.com