UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P., HEWLETT-PACKARD COMPANY, AND COMPAQ TRADEMARK B.V. <br><br> Plaintiffs/Counter-Defendants <br><br> vs. <br><br> MIDWEST INFORMATION TECHNOLOGY GROUP, INC. <br><br> Defendants/ Counter-Plaintiff | § § § § § § § § § § § § § § § | Civil Action No. 04-3055 |

## **PLAINTIFFS/COUNTER-DEFENDANTS' MOTION IN LIMINE**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COME NOW, Plaintiffs/Counter-Defendants Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark B.V. ("Plaintiffs" or "HP") and make this Motion to the Court to enter an Order against Defendant Midwest Information Technology Group, Inc. ("MITG") prior to the voir dire examination of the Jury Panel, stating that counsel for MITG and all witnesses called by or on behalf of MITG be instructed to refrain from any mention of, or interrogation on, directly or indirectly, in any manner whatsoever, upon voir dire, statement of the case, interrogation of the witnesses, offering of documentary evidence, evidence, objections before the Jury, or in any manner inform the Jury or bring to the Jury's attention any of the matters set forth herein, unless and until such matters have first been called to the Court's attention, outside the presence and hearing of all prospective jurors and jurors ultimately selected in this cause, and a favorable

ruling received as to the admissibility and relevance of such matters, In support if this Motion, Plaintiffs would show the Court the following:

**I.**

Matters set forth herein would not be admissible in evidence for any purpose and have no bearing on the issues or the rights of the party in this case.

**II.**

Permitting interrogation of witnesses, comments to jurors, of offers of evidence concerning any of the matters set forth herein would prejudice the Jury and sustaining objections to such questions, statements, or evidence introduced by counsel, or the witnesses, would not prevent prejudice, but would reinforce the development of questionable evidence.

**III.**

The matters upon which Plaintiffs respectfully request the Court enter such an Order are as follows:

1. Any request for Plaintiffs to produce documents or information during trial or any reference, suggestion, testimony, comment or statement that Plaintiffs and/or their counsel failed to produce documents or information, or that Plaintiffs objected to the production of any documents or to providing any information that may have been requested by MITG.

2. Any reference, suggestion, testimony, comment or statement that MITG cannot provide certain information, or does not know the answer to certain questions because Plaintiffs and/or their counsel have the documents and failed to produce same. In depositions, MITG's corporate representatives testified at various times that HP had not or had only recently produced documents so the witness could not answer the questions posed [see e.g.

Haught #1 7:23-8:10, relevant testimony from Mr. Haught is attached hereto as **Exhibit A**]. Such statements are extremely prejudicial, as they suggest that HP has acted improperly in the litigation and/or is concealing information that is harmful to its position in this case.

3. Any testimony or other evidence from Ronald Haught, Teresa Koch or any other witness called to testify by MITG as to any monetary damages MITG allegedly suffered due to the actions of Plaintiffs. MITG's designated expert, Scott Stringer, has been stricken [see Order April 11, 2006]. MITG has not disclosed the identity of any person who is qualified as an expert and/or is capable of calculating damages MITG alleges it suffered. In fact, Mr. Haught (MITG's corporate representative on damages) testified that such calculations were beyond the scope of his expertise [Haught Depo #1 7:23-8:10] and his counsel represented that Mr. Haught would not testify to a number different from Stringer's number [Haught Depo #2 5:17-7:25]. There has been no disclosure as to how Mr. Haught would do the calculation different from Mr. Stringer (so as to remedy Mr. Stringer's flawed methodology) or that he has the expertise to testify on this issue. Ms. Koch[1] also said she could not testify as to a calculation of lost business because she did not have "adequate information," and did she know what information would be needed [Koch Depo #1 69:11-21, relevant portion of Ms. Koch's deposition testimony is attached hereto as **Exhibit B**].

4. Any testimony or other evidence of damages suffered by MITG because MITG has failed to disclose a computation of any category of damages it claims in this lawsuit, and identify the documents upon which any damages are based, in violation of Federal Rule of Civil Procedure 26. MITG's only disclosure on damages is its Initial Rule 26(a) Disclosures. There have been no supplementations or amendments of this disclosure,

---

[1] Ms. Koch is the chief financial officer, but was not designated as the Corporate Representative as to damages [Koch #1 5:24-6:13 and Depo Exhibit 20].

unless the Court counts the two Stringer reports that have been found to be (1) replete with errors, and/or (2) unreliable, as setting forth opinions that are simply speculation based on assumptions [Order, April 11, p. 15]. Since the April 11, 2006 Order, MITG has not amended or supplemented its Disclosure to reveal the amount of damages it intends to seek, how it was calculated and the factual basis therefore. On June 12, counsel for the parties exchanged drafts of portions of the Joint Pretrial Order relating to their respective affirmative claims. In that document, MITG revealed for the first time a damage number of $10,283,859 (labeled as <u>gross</u> lost profits), with no explanation of how it was calculated.[2] Any such evidence on this, or any other, amount or how MITG calculated damages would be a surprise to HP and extremely prejudicial, as HP would be faced with a previously undisclosed theory on which it has not had the opportunity to take discovery. Such unfair surprise would be prejudicial to Plaintiffs and contrary to the Federal Rules of Civil Procedure. [See HP's Trial Brief on Damages, filed contemporaneously with this Motion].

5.    Any mention of, reference to or attempt to offer evidence of gross lost profits because that is not the proper measure of damages, thus is irrelevant. Under Missouri law, which is the law governing the SSA, lost profits "refers to the amount of <u>net</u> profits that the plaintiff would have realized in the usual course of business if its clients had not been lost to the competitor as a result of the defendant's actions." *Refrigeration Ind., Inc. v. Nemmers,* 880 S.W.2d 912, 920 (Mo.Ct.App.1994)(emphasis added). MITG's submission for the joint pretrial order indicates a damage amount based on gross profits, which is not the appropriate measure of damages. As stated above, MITG has not provided any documentation at all on

---

[2] In fact, this number is approximately $4 million higher than the damage amount as calculated by the stricken expert.

the calculation, and has not produced documentation from which net profits could be ascertained.

6.   Any reference to or mention of the expert opinion of a persons not timely identified by MITG as expert in accordance with the Court's Scheduling Order, or any attempt to elicit expert testimony, or testimony based on the knowledge and experience of the witness, without first establishing that the person has personal knowledge or otherwise may be qualified to offer opinions under Federal Rule of Evidence 701.

7.   Any reference to or mention of the Middleware Agreement and MITG's allegation that Plaintiffs breached same because judgment has been granted to HP and against MITG on this claim. Testimony regarding this Middleware Agreement will be confusing to the jury, and allowing MITG to mention, reference and/or imply that HP engaged in wrongdoing, when the Court has rejected such allegation, could prejudice the jury against HP. Further, the middleware is irrelevant to the claims to be tried in this case, as it is unrelated to MITG's allegation that HP violated the exclusivity provision of the Standard Support Agreement and to HP's claims arising out of MITG's unauthorized use of domain names after the termination of the SSA. Thus, reference to it would simply serve to confuse the jury and prolong the trial.

8.   Any reference to, mention of or attempt to present evidence that HP tortiously interfered with prospective or existing contractual or business relations of MITG because judgment has been granted to HP and against MITG on this claim. Such evidence or suggestion of wrongdoing by HP is likely to confuse the jury and could prejudice the jury against HP. Further, such claims are irrelevant to the claims to be tried in this case and therefore such evidence would only serve to confuse the jury and prolong the trial.

9. Any testimony or other evidence relating to the logistics of HP's transition process of the HP Direct call center operations to Roseville, including issues relating to the creation of customer numbers, transitioning of accounts, how certain customer requirements would be met, and similar subjects that are unrelated to MITG's claim that HP violated the SSA by taking calls from Compaq/HP Direct customers at call centers other than through the Compaq/HP Direct call center manned by MITG. There is no allegation that the termination of the contract was improper and the internal issues within HP about how to handle the transition are irrelevant. The only purpose of such evidence would be to confuse the issues, waste the jury's and Court's time, and try to prejudice the jury against HP. Because the process itself is not the basis for the claim of breach, such evidence is inadmissible as irrelevant.

10. Any reference to, mention of, or attempt to offer into evidence any customer issues, problems or complaints relating to the transition of the customer calls from HP Direct/MITG call center to Roseville because such information is irrelevant to MITG's claims that during the period of the SSA calls were diverted away from MITG to HP or other outlets, and would simply serve to possibly prejudice the jury against HP.

11. Any reference to, mention of or attempt to offer evidence of any financial wherewithal of MITG, any debts incurred due to the termination of the SSA, MITG's ability or inability to pay any judgment and/or the comparative resources of MITG and Plaintiffs, for the reason that the same is not relevant to the subject matters of this litigation, and would only work toward gaining sympathy for MITG.

12. Any reference to, mention of, or attempt to offer evidence of the financial impact or the effects the termination of the SSA was expected to have, had or may have had

on MITG. Such evidence is irrelevant to the claims asserted by MITG and would simply work to inflame the jury, engender sympathy for MITG and/or prejudice the jury against HP, as the larger company.

13. Any testimony or other evidence of the products and services offered by, the call mix or call volume of the Andover call center, or that the Andover spare parts business matched or was similar to MITG's business without first establishing a foundation that the person offering such evidence has personal knowledge of the issue about which he/she seeks to offer evidence. Speculation as to the content or number of calls, or who the callers were, is not admissible. MITG's now stricken expert attempted to testify as to the Andover call volume and call mix by assuming Andover's calls matched MITG's calls. The Court rejected that methodology. MITG should not be permitted to try to offer that speculative evidence to support its damages by having a fact witness, or undisclosed "expert" testify in a similar fashion without first laying the proper foundation for such evidence.

14. Any reference to, mention of, or attempt to offer evidence relating to payment issues between HP Direct and MITG for parts sold that were outside the SSA because such evidence is irrelevant and would serve only to confuse and possibly prejudice the jury against HP. The sale of "service parts" to HP (used to perform service on customers' systems) was not governed by the SSA and thus issues with the timing and/or delays in paying invoices submitted by MITG are not relevant to MITG's claim that HP violated the exclusivity provision of the SSA.

15. Any reference to, mention of, or attempt to offer evidence of HP's handling of customers calls after the termination of the SSA because such evidence regarding post-

contract actions is irrelevant to the matters before this Court and will simply waste the Court's and jury's time, as MITG tries to prejudice the jury against HP.

16. Any suggestion that withholding or redacting portions of documents based on attorney client privilege is wrongful or that the jury can imply or infer that such redactions or withholding is evidence that HP is hiding information that is harmful to Plaintiffs' case. Such an inference is improper and contrary to the Federal Rules of Evidence. Further, MITG should not be permitted to ask that witnesses who were or continue to be employed by HP reveal matters subject to and protected by the attorney client privilege. The employees do not have the right to waive Plaintiffs' claim of privilege and allowing MITG to make such demands in the presence of the jury is unfair and highly prejudicial to Plaintiffs. An objection by counsel prior to the witness responding will not cure the unfairness and prejudice because the jury will be left with the impression that Plaintiffs are trying to hide evidence harmful to Plaintiffs' case.

17. Any reference to, mention of, or attempt to offer into evidence information regarding a large influx of calls into the Andover call center in October/November 2002 without first establishing that the witness a proper foundation to discuss the content of the telephone calls or the identity of the callers. The fact that telephone calls were received or that people were attempting to call the Andover call center is not evidence of a breach of the SSA or of a diversion of calls away from MITG's call center or that the callers were HP/Direct Customers. Without a foundation to establish the identity of the callers the information is irrelevant and highly confusing to the jury, who may be improperly led to believe that all of these callers were Customers as defined by the SSA.

18.     Any reference to, mention of, or attempt to offer into evidence the decision of the arbitrator with the National Arbitration Forum (the "Forum") in the arbitration brought under the Uniform Domain Name Dispute Policy ("UDRP") of the Internet Corporation for Assigned Names and Numbers ("ICANN").  The Forum arbitrator did not make a finding on a key issue of trademark infringement – whether the domain names registered by MITG were identical or confusingly similar to Plaintiffs' trademarks.  Further, the arbitrator declined to enter a finding as to whether MITG had any legitimate rights in the domain names.  Thus, any reference to the arbitrator's decision is not relevant to the matters before this Court because the standards and elements to be decided between the Forum and the jury are so different, as to make the decision irrelevant.  Further, references to the Forum, which has only limited jurisdiction, may confuse the jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs/Counter-Defendants respectfully request that this Court grant this Motion and grant to them such other and further relief to which they may show themselves justly entitled.

Respectfully submitted,

/s Elizann Carroll
ELIZANN CARROLL
Texas State Bar No. 00787209
JUNEAU, BOLL & WARD, P.L.L.C.
15301 Spectrum Dr., Suite 300
Addison Texas 75001
(972) 866-8333
(972) 866-8378 *fax*

MOLLY BUCK RICHARD
Texas State Bar No. 16842800
RICHARD LAW GROUP
8411 Preston Road, Suite 890
Dallas, TX  75225

        (214) 206 4300
        (214) 206 4330 *fax*

        SCOTT D. SPOONER
        Heyl, Royster, Voelker & Allen
        Suite 575 National City Center
        1 North Old State Capital Plaza
        P. O. Box 1687
        Springfield, IL 62705
        (217) 522-8822
        (217) 523-3902 *fax*

        ATTORNEYS FOR PLAINTIFFS/
        COUNTER-DEFENDANTS

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 22nd day of June, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to Delmer Mitchell and James Hansen, counsel for Defendants, and Molly Buck Richard and Scott Spooner, counsel for Plaintiffs.

        /s Elizann Carroll
        ELIZANN CARROLL
        State Bar No. 00787209
        JUNEAU, BOLL & WARD
        15301 Spectrum Dr., Suite 300
        Addison Texas 75001
        (972) 866-8333
        (972) 866-8378 *fax*
        ecarroll@juneauboll.com