E-FILED
Thursday, 22 June, 2006  09:46:53 AM
Clerk, U.S. District Court, ILCD

Page 1

```
 1
 2
 3                UNITED STATES DISTRICT COURT
 4                CENTRAL DISTRICT OF ILLINOIS
 5                     SPRINGFIELD DIVISION
 6
 7  HEWLETT-PACKARD DEVELOPMENT        )
    COMPANY, L.P., HEWLETT-PACKARD     )
 8  COMPANY, and COMPAQ TRADEMARK B.V.,)
 9               Plaintiffs,           )
                                       )
10        - vs -                       ) No. 04-3055
                                       )
11  MIDWEST INFORMATION TECHNOLOGY     )
    GROUP, INC., and MICHAEL LAUBER,   )
12                                     )
13               Defendants.           )
14
15        DEPOSITION of RONALD HAUGHT, taken in the
16  above-entitled case before Gina Nottingham, a Notary
17  Public and Certified Shorthand Reporter of Adams
18  County, Illinois, at 9:00 o'clock A.M., on February
19  18, 2005, at 525 Jersey Street, Quincy, Adams County,
20  Illinois.
21
22
23
24
25
```

Page 2

```
 1  APPEARANCES:
 2      MS. ELIZANN CARROLL
        Attorney at Law
 3      15301 Spectrum Drive, Suite 300
        Addison, Texas  75001
 4
             appeared for the Plaintiffs.
 5
        MR. JAMES HANSEN
 6      Attorney at Law
        525 Jersey Street
 7      Quincy, Illinois  62301
 8           appeared for the Defendants.
 9  ALSO PRESENT:
10      Ms. Gaynelle Jones
        Litigation Counsel for Hewlett-Packard
11
12
13
14
15
16
17
18
19
20
    MRS. GINA L. NOTTINGHAM, CSR
21  License No. 084-002584
    924 Rim Road
22  Quincy, Illinois  62301
    (217) 224-7889
23
24
25
```

Page 3

```
 1
 2  DEPONENT
 3  RONALD HAUGHT
 4        Examination by Ms. Carroll          4
 5
 6
 7
 8
 9
10
11
12              E X H I B I T S
13  NUMBER                        MARKED   IDENTIFIED
    Deposition Exhibit Number 20    *         7
14  Deposition Exhibit Number 5     *        17
    Deposition Exhibit Number 4     *        37
15  Deposition Exhibit Number 2     *        42
    Deposition Exhibit Number 1     *        43
16  Deposition Exhibit Number 6     *        64
    Deposition Exhibit Number 22   72        72
17  Deposition Exhibit Number 19    *        76
    Deposition Exhibit GG           *        96
18  Deposition Exhibit Number 23   147       147
    Deposition Exhibit M            *        154
19  Deposition Exhibit KK           *        169
    Deposition Exhibit Number 24   169       172
20  Deposition Exhibit Number 25   169       171
    Deposition Exhibit B            *        184
21  Deposition Exhibit C            *        194
    Deposition Exhibit Number 21    *        206
22  Deposition Exhibit Number 26   209       209
    Deposition Exhibit Number 27   222       222
23  Deposition Exhibit Number 28   263       263
24
25
```

Page 4

```
 1
 2            (Whereupon the Deponent was
 3            sworn by the Notary Public.)
 4        R O N A L D   H A U G H T
 5  having been first duly sworn by the Notary Public,
 6  deposeth and saith as follows:
 7            EXAMINATION BY
 8            MS. CARROLL:
 9      Q.  Can you state your name for the record,
10  please, sir?
11      A.  Ronald Dean Haught, Jr.
12      Q.  And what is your address, Mr. Haught?
13      A.  4304 Deer Ridge Road, Quincy, Illinois,
14  62305.
15      Q.  Thank you.  Have you had your deposition
16  taken before?
17      A.  Yes.
18      Q.  How many times?
19      A.  Several over the years.  I was former law
20  enforcement, so I have been through this process a
21  few times over the years.
22      Q.  Okay.  Any of the depositions relating to
23  MITG?
24      A.  One.
25      Q.  Okay.  And what kind of case was that?
```

EXHIBIT A
Cubbies*

Page 5

1    A. Over a construction case.

2    Q. All right. And was MITG a party to the
3 lawsuit, I take it?

4    A. Yes.

5    Q. Plaintiff or defendant?

6    A. Plaintiff.

7    Q. And what was the issue?

8    A. Improper assembly of some beams. I had a
9 bent beam in a construction process.

10    Q. Was it for the construction of the new
11 facility here in Quincy?

12    A. That's correct.

13    Q. All right. And is that case completed now?

14    A. No, it is not.

15    Q. All right. And is that pending here in
16 Quincy?

17    A. I don't know the answer to that actually.
18 I don't know where it was filed.

19    Q. Okay. But MITG is the plaintiff against
20 the construction company in a current lawsuit, is
21 that correct?

22    MR. HANSEN: No. No. MITG is not the
23 plaintiff. It relates to MITG's building. MITG is
24 not the plaintiff.

25    THE WITNESS: That's correct.

Page 6

1    MS. CARROLL: MITG is a party to the
2 lawsuit?

3    MR. HANSEN: No. He can answer. If you
4 know. Go ahead. If you want, I can tell you. MITG
5 is not a party to the lawsuit.

6    MS. CARROLL: Q. There is a dispute
7 involving the construction of MITG's facility here in
8 Quincy, and you had your deposition taken in that
9 context?

10    A. That's correct.

11    Q. All right. Have you had to testify in
12 court for any matters relating to MITG?

13    A. No.

14    Q. All right. You understand that you are
15 here today for your deposition both individually and
16 as the corporate representative of MITG?

17    A. I understand I'm here as a corporate
18 representative, that's correct.

19    Q. Well, you are also here just to the extent
20 that there are matters that aren't included in this
21 deposition notice that you know from your capacity as
22 an employee and the owner of MITG, those questions
23 will be asked today also?

24    A. That's correct.

25    Q. Okay. Let me show you the deposition

Page 7

1 notice. Have you seen that document before? It's
2 Exhibit 20.

3    MR. HANSEN: I can tell you he may not have
4 seen the notice. He has seen the exhibit.

5    MS. CARROLL: Q. That's fine. And I
6 understand from your lawyer, if you can confirm with
7 me, that it's also your understanding that you are
8 the representative on all of the, all 22 topics
9 except 8 and 9 on which your CFO, Miss Koch, was
10 designated. Is that your understanding?

11    MR. HANSEN: And, just so the record is
12 clear, 12.

13    MS. CARROLL: Q. 12 you all were jointly
14 designated on that topic?

15    A. That's correct.

16    Q. What did you do, if anything, to prepare
17 for your deposition today?

18    A. Read over a few -- well, I read over the
19 original contract. That's really about it.

20    Q. The Standard Support Agreement?

21    A. That's correct, yes, and the Middleware
22 document, yes.

23    Q. And have you or has MITG calculated the
24 actual damages that you claim it suffered due to the
25 plaintiff's alleged breach of contract of the

Page 8

1 Standard Support Agreement?

2    A. No. I have been unable to totally
3 calculate those damages.

4    Q. Why is that?

5    A. Well, for one you, I believe, just recently
6 turned over the documents necessary for us to be able
7 to fully evaluate that on one case. Secondly, the
8 damages will more than likely be calculated by an
9 expert, because I don't feel that's my level of
10 expertise.

11    Q. And what documents are you referring to in
12 terms of the documents necessary to fully evaluate
13 the claim?

14    A. Well, if I'm not incorrect, part of our
15 claim for damages is based on misdirected or
16 redirected calls away from my facility, and those
17 records I would not have any, you know, any per se
18 knowledge of. So we have asked that those records be
19 produced by your client.

20    Q. And I'll get into the diversion issue in a
21 little while. Have you calculated the damages that
22 you claim that MITG has suffered due to
23 Hewlett-Packard's alleged misuse of the Middleware,
24 or breach of the Middleware Agreement?

25    MR. HANSEN: Has he or the company?

1

2                    U.S. DISTRICT COURT

3                CENTRAL DISTRICT OF ILLINOIS

4                   SPRINGFIELD DIVISION

5

6    HEWLETT-PACKARD DEVELOPMENT    )
     COMPANY, L.P., HEWLETT-PACKARD)
7    COMPANY, AND COMPAQ TRADEMARK,)
     B.V.,                         )
8                                  )
              PLAINTIFFS,          )
9                                  )
              vs.                  )  No. 04-3055
10                                 )
     MIDWEST INFORMATION           )
11   TECHNOLOGY GROUP, INC., AND    )
     MICHAEL LAUBER,               )
12                                 )
              DEFENDANTS.          )
13

14            DISCOVERY DEPOSITION of RONALD HAUGHT, taken in

15    the above-entitled case before Tracy L. Grott, a Notary

16    Public and Certified Shorthand Reporter of Adams County,

17    Illinois, at 2:30 p.m., on July 25, 2005, at 525 Jersey, in

18    the City of Quincy, County of Adams, State of Illinois,

19    pursuant to stipulation hereto annexed.

20

21

22                   Tracy L. Grott, CSR
                     2901 Sonata Drive
23                   Quincy, IL  62301
                      217-223-3624
24

25

```
 1                    RONALD HAUGHT,
 2     having been first duly sworn by the Notary Public, deposeth
 3     and saith as follows:
 4                    EXAMINATION BY:
 5                    MS. CARROLL
 6          Q.   State your name for the record, please.
 7          A.   Ronald Dean Haught, H-A-U-G-H-T, Junior.
 8          Q.   Thank you, Mr. Haught.  We did your
 9     deposition in February and the same process applies.
10     Obviously, I'll be a lot quicker this time than I
11     was last time.  I don't think I have it in me to go
12     that long again.  I want to follow up on some areas
13     based on some documents that you all produced to
14     me --
15          A.   Okay.
16          Q.   -- since that last deposition, but let me
17     start with a place where we started last time, which
18     is during your last deposition I asked you about
19     dollar amounts of damages of each of the three
20     claims you have against HP and you deferred to an
21     expert at that time.
22          A.   Correct.
23          Q.   And Mr. Stringer of UHY Advisors has now
24     provided a report on damages for the breech of the
25     Standard Support Agreement and the tortious
```

interference claim, you're familiar with that

report?

A.    No, I haven't seen it yet.

Q.    Okay.  Let me ask you this, are you aware

of the numbers that he came up with in terms of

round numbers for what the damage claim is for the

breech of the Standard Support Agreement and the

tortious interference claim?

A.    No.

Q.    Mr. Stringer's report, I'll just ask you

if you've heard of any of these numbers as to Count

1 on the breech of the Standard Support Agreement,

they have a rounded damage number of $6,422,000, do

you have -- are you going to rely on Mr. Stringer to

testify as to the dollar amount of the Standard

Support Agreement claim or do you have a number

different from what's been provided in your expert's

report?

MR. HANSEN:  I'll object to the form only

    that we don't have a different number.  Mr.

    Haught may testify to something in support of

    that.

Q    (By Ms. Carroll) Fair enough.  What I'm

looking for is, I understood before that you were

deferring to an expert, that expert indicates in his

1    report that he got documents from MITG and had some

2    discussions with people at MITG and based on that he

3    has come up with an actual figure, do you have a

4    figure, I know that your information is going to be

5    necessary for information about the business, but do

6    you have a dollar number different from your expert?

7        A.    Well, one, I don't know what the expert's

8    number was, I haven't seen the report and that's

9    been based on the fact that I've been traveling for

10   the last four weeks, so I don't have any assemblance

11   of what this should be yet because I haven't had a

12   chance to review any of those documents.

13       Q.    Do you have a number in your mind as to

14   what your damages are for the breech of the Standard

15   Support Agreement?

16       MR. HANSEN:   I mean if you're asking --

17       Mr. Haught is not going to come in and testify

18       to another number I guess, if that's what

19       you're asking.

20       Q.    That's all I want to know.  I understood

21   you before that the expert's going to come up with

22   the actual dollar amount.  I just want to confirm

23   you're going to rely on Mr. Stringer and his

24   expertise for that number.

25       A.    I believe so.

**Page 1**

```
                UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF ILLINOIS
                      SPRINGFIELD DIVISION



HEWLETT-PACKARD DEVELOPMENT        )
COMPANY, L.P., HEWLETT-PACKARD     )
COMPANY, and COMPAQ TRADEMARK B.V., )
                                   )
           PLAINTIFFS,             )
                                   )   Civil Action
      vs.                          )   No. 04-3055
                                   )
MIDWEST INFORMATION TECHNOLOGY     )
GROUP, INC. and MICHAEL LAUBER,    )
                                   )
           DEFENDANTS.             )




        DISCOVERY DEPOSITION of TERESA KOCH, taken in the
above-entitled case before Tracy L. Grott, a Notary Public
and Certified Shorthand Reporter of Adams County, Illinois,
at 3:30 p.m., on February 17, 2005, at 525 Jersey, Adams
County, Quincy, Illinois, pursuant to stipulation hereto
annexed.


                Tracy L. Grott, CSR
                2901 Sonata Drive
                Quincy, IL  62301
                217-223-3624
```

**Page 2**

```
APPEARANCES

MS. ELIZANN CARROLL
Attorney at Law
Juneau, Boll & Ward
15301 Spectrum Drive, Suite 300
Addison, Texas  75001
        appeared for the Plaintiffs.


MR. JAMES HANSEN
Attorney at Law
Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey
Quincy, IL  62306
        appeared for the Defendants.
```

**Page 3**

```
                    INDEX

DEPONENT                        PAGE NUMBER

TERESA KOCH


Examination by Ms. Carroll          5






                E X H I B I T S

NUMBER              MARKED FOR IDENTIFICATION

TK No. 20                6
Exhibit A               14
Exhibit 4 & 5           38
TK No. 21               50
```

EXHIBIT B

**Page 4**

```
              S T I P U L A T I O N
        It is stipulated and agreed by and between the
parties hereto, through their attorneys that the deposition
of TERESA KOCH may be taken for discovery purposes before
Tracy L. Grott, a Notary Public and Certified Shorthand
Reporter, upon oral interrogatories, on the 17th day of
February A.D., 2005, at the instance of the Plaintiffs, at
the hour of 3:30 p.m. at 525 Jersey, in the City of Quincy,
County of Adams, State of Illinois;
        That all requirements of the Code of Civil
Procedure and the Rules of the Supreme Court and the reading
over and signing of the deposition by the Deponent are
expressly waived;
        That any objections as to competency, materiality
or relevancy are herby reserved, but any objection as to the
form of question and answer is waived unless specifically
noted;
        That the deposition, or any parts thereof, may be
used for any purpose for which discovery depositions are
competent, by any of the parties hereto, without foundation
proof;
        That any party hereto may be furnished copies of
the transcript at his or her own expense.
              (Whereupon the Deponent
              was sworn by the Notary Public.)
```

5

TERESA KOCH,
having been first duly sworn, testified as follows:
EXAMINATION BY:
MS. CARROLL

1
2
3
4
5     Q    Can you state your name for the record,
6 please.
7     A    Teresa Koch.
8     Q    And Ms. Koch, what is your address?
9     A    3420 South 46th Street, Quincy, Illinois.
10     Q    All right. You currently work for MITG,
11 is that correct?
12     A    Correct.
13     Q    And what do you do for MITG?
14     A    I'm the chief financial officer.
15     Q    How long have you been the CFO for MITG?
16     A    Since July of 2000.
17     Q    And what did you do before you went to
18 MITG?
19     A    I worked for a local ISP data stream
20 network.
21     Q    And how did you end up at MITG?
22     A    The owners of those two corporations had
23 business acquaintances and I met them through that.
24     Q    All right. And you understand that your
25 deposition today is in both your individual capacity

6

1 and as a corporate representative of MITG on certain
2 subject matters?
3     A    I guess.
4        MR. HANSEN: Yes.
5           *(Exhibit No. 20 was marked for*
6           *identification.)*
7     Q    Let me hand you what's been marked as
8 Deposition Exhibit 20, which is a document, Amended
9 Notice of Deposition of the Corporate Midwest
10 Information Technology Group, Inc, and I understand
11 from Mr. Hansen that you have been designated to
12 provide responses on behalf of MITG on 8 and 9?
13     A    That's my understanding too.
14     Q    Okay. All right. And what, if anything,
15 did you do to prepare for your deposition today?
16     A    I met with Mr. Hansen.
17     Q    Okay.
18     A    Here and reviewed documents as presented.
19     Q    What documents did you review?
20     A    Financial statement documents that were
21 prepared for you.
22        MR. HANSEN: Just let me know which ones
23     you're pulling. I have them here and we can
24     just do it that way. That will probably be
25     easier.

7

1 BY MS. CARROLL:
2     Q    Okay. If you -- well, let me just show
3 you -- was it revenue and expense reports?
4     A    Correct.
5     Q    For '02, '03 and '04?
6     A    Yes, that's correct.
7     Q    And what did you do to prepare, what
8 documents or information did you use to prepare the
9 revenue and expense reports that you have prepared
10 for me?
11     A    Sales and revenue records of the company.
12     Q    All right. And do these numbers -- well,
13 let me strike that. Sales and revenue, is that one
14 in the same or something different from sales?
15     A    Well, revenue you could look at as maybe
16 more could possibly be defined as services versus
17 sale of product, so it's just a standard accounting
18 term.
19     Q    All right. That's what I'm wondering, is
20 there something other than sales that was generating
21 revenue that's reflected in these charts?
22     A    There may be some service or fees included
23 in there.
24     Q    All right. Fair enough. And is this the
25 revenue and expenses of MITG as a total company as

8

1 opposed to any particular portion of MITG?
2     A    I guess I don't fully understand that
3 question.
4     Q    All right. You are aware that MITG for a
5 period of time was doing business under a contract
6 with HP Direct?
7     A    Oh, yes. I understand, I guess the answer
8 to that is that all of those revenues are included
9 in these numbers.
10     Q    All right. And for any other business
11 that MITG was doing, that's also included in these
12 numbers?
13     A    That's right.
14     Q    Do you have any documents that break out
15 the revenue and expenses of just the Compaq
16 Direct/HP Direct portion of the business?
17     A    Not in a concise form.
18     Q    Okay. Do you have any capabilities to
19 create such a report or is the information not
20 stored in that?
21     A    I presented an invoice register that would
22 have had all the billings to HP and Compaq, and
23 those numbers would be included in the numbers
24 presented.
25     Q    Okay.

1  customers, do you know how that group can be defined
2  versus anybody else who was buying spare parts from
3  Compaq or HP?
4      A   No, I do not.
5      Q   Okay. And so is it fair to say that you
6  can't say one way or the other whether those
7  companies that were sent to companies other than
8  MITG to buy spare parts, whether or not they should
9  have gone to MITG?
10     A   No. Mr. Haught would have to answer that.
11     Q   All right. And have you tried, in
12  discussions with him, have you all discussed any way
13  that you might calculate lost business from these
14  referrals that Mr. Haught believes or indicated to
15  you he thought --
16     A   No, there's not adequate information to do
17  that.
18     Q   Have you had any discussions with
19  Mr. Haught about what kind of information would be
20  needed in order to do that calculation?
21     A   No.
22     Q   Okay. All right. I have no further
23  questions.
24         MR. HANSEN:  Thank you. We'll read.
25             (Whereupon, the deposition was

1              concluded at 5:10 p.m.
2
3
4
5
6
7
8
9              ?
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1  STATE OF ILLINOIS   )
                       )  SS.
2  COUNTY OF ADAMS     )
3
4
5
6          C E R T I F I C A T E
7
8          I, Tracy L. Grott, CSR, a Notary Public in and for
9  the County of Adams, State of Illinois, do hereby certify
10 that heretofore, to-wit, on the 17th day of February, A.D.,
11 2005 at the hour of 3:30 p.m., personally appeared before me
12 at 525 Jersey, in the City of Quincy, County of Adams, State
13 of Illinois, the Deponent herein, TERESA KOCH.
14         I further certify that the said witness was by me
15 first duly sworn to testify to the truth, the whole truth,
16 and nothing but the truth in the cause aforesaid, that the
17 testimony then given by the said witness was reported
18 stenographically by me in the presence of the said witness
19 and afterwards reduced to typewritten form, and the
20 foregoing is a true and correct transcript of the testimony
21 so given by the said witness as aforesaid.
22         I further certify that the signature of the
23 witness to the deposition was not waived by agreement of
24 counsel.
25         I further certify that I am not counsel for nor in

1  any way related to any of the parties to this action, nor am
2  I in any way interested in the outcome thereof.
3          In testimony thereof, I have hereunto set my hand
4  and affixed my notarial seal the 3rd day of March, A.D.,
5  2005.
6
7
8
9
10
11
12
13
14                      _____
                        Notary Public
15                      Certified Shorthand Reporter
16
17
18
19                 Official Seal
20                 Tracy L Grott
21          Notary Public State of Illinois
22          My Commission Expires 05/26/08
23
24
25

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P., HEWLETT-PACKARD COMPANY, and COMPAQ TRADEMARK B.V., | §<br>§<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| vs. | §<br>§<br>§ | Civil Action No. 04-3055 |
| MIDWEST INFORMATION TECHNOLOGY GROUP, INC. and MICHAEL LAUBER, | §<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

## NOTICE OF INTENT TO TAKE THE DEPOSITION OF THE CORPORATE REPRESENTATIVE OF MIDWEST INFORMATION TECHNOLOGY GROUP, INC.

TO:  Defendants, Midwest Information Technology Group, Inc. and Michael Lauber, by and through their attorneys of record, James A. Hansen, Schmiedeskamp, Robertson, Neu & Mitchell, 525 Jersey, P.O. Box 1069, Quincy, Illinois 62306.

PLEASE TAKE NOTICE that Plaintiffs will take the oral deposition of the Corporate Representative of Midwest Information Technology Group, Inc. ("MITG") pursuant to Federal Rule of Civil Procedure 30(b)(6) in the above-entitled and numbered cause, commencing at 9:00 a.m. on February 18, 2005, and continuing day to day until completed at the offices of Schmiedeskamp, Robertson, Neu & Mitchell, 525 Jersey, P.O. Box 1069, Quincy, Illinois 62306. MITG is requested to designate and produce the person(s) to testify as to matters known or reasonably available to the corporation about the issues set forth in attached Exhibit A. The deposition will be stenographically recorded.

All counsel are invited to attend.

Respectfully submitted,

ELIZANN CARROLL
State Bar No. 00787209
JUNEAU, BOLL & WARD, P.L.L.C.
15301 Spectrum Dr., Suite 300
Addison Texas 75001
(972) 866-8333
(972) 866-8378 *fax*

MOLLY BUCK RICHARD
State Bar No. 16842800
THOMPSON & KNIGHT, LLP
1700 Pacific Ave., Suite 3300
Dallas, Texas 75201
(214) 969-1700
(214) 969-1750 *fax*

and

SCOTT D. SPOONER
Heyl, Royster, Voelker & Allen
Suite 575 National City Center
1 North Old State Capital Plaza
P. O. Box 1687
Springfield, IL 62705
(217) 522-8822
(217) 523-3902 *fax*

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document was served upon Defendants by and through their counsel of record listed below, pursuant to the Federal Rules of Civil Procedure, on this the _____ day of January, 2005.

ELIZANN CARROLL

James A. Hansen
Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey
P.O. Box 1069
Quincy, Illinois 62306

## EXHIBIT A

1. The work done, goods sold, and/or services provided by MITG to or for Compaq's customers or customers referred to MITG by Compaq prior to the execution of the Standard Support Agreement.

2. The negotiations of and discussions surrounding the terms and operation of the Standard Support Agreement prior to its execution on or around February 7, 2002.

3. The operation of the Standard Support Agreement (i.e. how it worked) and MITG's contentions as to how it was to operate, the parties' obligations under the Agreement and any alteration of the terms by consent of the parties.

4. The negotiations and discussions surrounding the terms of the Middleware Agreement.

5. The development and use of the Middleware (as referenced in the Middleware Agreement attached as Exhibit 2 to MITG's Counterclaim).

6. Hewlett-Packard's alleged use of the Middleware after February 7, 2004.

7. Part Fees (as that term is defined in paragraph 9 of the Standard Support Agreement) charged by MITG and paid by Compaq/HP under the Standard Support Agreement.

8. Total profits generated by MITG's sale of parts under the Standard Support Agreement during the life of the Agreement and on a monthly basis.

9. The amount of MITG's 75% share of profits as calculated in accordance with paragraph 10 of the Standard Support Agreement earned in total and by month during the life of the Agreement.

10. The operation of MITG's call center during the term of Standard Support Agreement, including the volume to MITG's call center(s) on a monthly basis, staffing and amounts paid by Compaq/HP under the Agreement.

11. The development of the MITG websites that are at issue in this lawsuit, including the selection of the domain names and any consent (express or implied) MITG contends was given for use of the Domain Names after the termination of the Standard Support Agreement.

12. The use of the Domain Names (as defined in paragraph 4 of the Complaint) after February 7, 2004, including tracking of "hits" on the websites, the message shown in Exhibit G of the Complaint and any business generated from the websites containing the Domain Names after February 7, 2004.

13.    All discussions between MITG and Hewlett-Packard regarding the termination of the Standard Support Agreement, including any proposals made by either party for an alternative arrangement for MITG to provide other services for or to Hewlett-Packard or its customers.

14.    All facts supporting MITG's contention that Hewlett-Packard referred, routed, processed or diverted customer telephone calls away from MITG.

15.    MITG's notification to Hewlett-Packard of its alleged violation of the Standard Support Agreement, as stated in paragraph 18 of the Counterclaim.

16.    Hewlett-Packard personnel's, including customer service representatives, referral of business, inquiries or contacts with MITG after February 7, 2004, including but not limited to sales generated from such contacts, and types of parts inquired about and/or sold.

17.    The damages claimed by MITG in this lawsuit, including the amount of actual damages MITG alleges it suffered due to Hewlett-Packard's breach of the Standard Support Agreement and breach of the Middleware Agreement, and factual basis for the amounts.