E-FILED
Thursday, 22 June, 2006  09:59:51 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P., HEWLETT-PACKARD COMPANY, AND COMPAQ TRADEMARK B.V.<br><br>　　　　Plaintiffs<br><br>VS.<br><br>MIDWEST INFORMATION TECHNOLOGY GROUP, INC.<br><br>　　　　Defendant. | §<br>§<br>§<br>§<br>§　Civil Action No. 04-3055<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**PLAINTIFFS/COUNTER-DEFENDANTS' TRIAL BRIEF ON DAMAGES**

　　　　Plaintiffs, Hewlett-Packard Development Company, LP, Hewlett-Packard Company and Compaq Trademark B.V. ("HP") file this Trial Brief on Damages and would show this Court as follows:

**MITG IS NOT ENTITLED TO PUT ON EVIDENCE OF DAMAGES DUE TO ITS FAILURE TO COMPLY WITH FEDERAL RULE OF CIVIL PROCEDURE 26**

　　　　Federal Rule of Civil Procedure 26(a) sets forth the initial disclosures required by each party to the lawsuit.  Rule 26(a)(1)(C) requires a party to provide:

> "a computation of any category of damages claimed by the disclosing party, making available for inspection and copying … the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of the injuries suffered."

　　　　MITG provided its Initial Disclosures on June 30, 2004.  A true and correct copy of the Disclosures is attached hereto as EXHIBIT A.  As the Court will see from a review of the Disclosure of damages (p.3), MITG (1) does not state a specific dollar figure; (2)

**PLAINTIFFS' TRIAL BRIEF ON DAMAGES**　　　　　　　　　　　　　　　　　　　　PAGE 1

commits to amend the response as discovery progresses; and (3) espouses a theory contrary to the theory relied upon in its now-stricken damages expert disclosure and report (which is the only document ever presenting setting out a damage number and factual basis therefore).

MITG had a duty to supplement its Disclosure relating to damages pursuant to Federal Rule of Civil Procedure 26(e)(1). The Rule requires a party to supplement its Rule 26(a) disclosures if the party learns that in some material respect the information disclosed is incomplete or incorrect and if additional or corrective information has not otherwise been made known to the other party during the discovery process or in writing. As discussed below, MITG failed to provide any such information, other than two expert reports, both of which have been stricken and do not serve as the basis for MITG's alleged damages.

MITG's theory for damages set forth in its June 2004 disclosure was consistent with its March 5, 2004 demand letter to HP's Chief Executive Officer, Carly Fiorina (a true and correct copy is attached hereto as EXHIBIT B). In a nutshell, MITG's 2004 theory was that, post-merger of HP and Compaq, the existence of HP's Roseville, CA sales center, which sold in-stock HP spare parts, violated the exclusivity provision of the Standard Support Agreement between MITG and Compaq Direct[1]. Relying upon Parts Business Center Operations matrices in its possession prior in March 2004 to get an "average number of calls diverted" away from MITG to HP, MITG calculated "average

---

[1] See Exhibit C: MITG's discovery responses of August 27, 2004 in which MITG denied that the SSA applied only to customers of Compaq/HP Direct (Answer to Request for Admission No. 6) because the exclusivity provision applied to all spare parts (Answer to Interrogatory No 17, requesting an explanation of the denial of Request for Admission No. 6).

**PLAINTIFFS' TRIAL BRIEF ON DAMAGES**　　　　　　　　　　　　　　　　　　　　　　　　　　　**PAGE 2**

daily sales revenue of $500,000" and a year 2003 sales total of $120,000,000. MITG then claimed damages of 75% of the gross profits on that $120,000,000.

For reasons made apparent to this Court in Plaintiffs' Motion for Summary Judgment on MITG's affirmative claims, the evidence does not support this theory of damages. Two obvious flaws, which may have led MITG to abandon this theory, are (1) the SSA gave MITG the exclusive right to service customers of Compaq/HP Direct, not all of HP's customers in North America (as serviced by Roseville); (2) MITG got 75% of the profit on the sale of non-stocked parts, not on every sale, thus to the extent the calculated $120,000,000 was revenue from sale of in-stock parts, MITG would not have received the 75% profit. Thus, MITG abandoned this theory and for much of the case could not, or did not, articulate another theory.[2]

Under the Court's Scheduling Order, MITG was required to disclose its expert and provide Rule 26 reports by July 1, 2005. MITG timely designated and provided the expert report of Scott Stringer. That report was the first indication of MITG's new theory of damages – that HP wrongfully diverted calls from MITG when HP closed its call center at Andover and transferred those calls to HP's Roseville call center rather than to MITG. Prior to taking Mr. Stringer's deposition and by the agreement of counsel (as fact discovery closed on May 15, 2005), HP continued Mr. Haught's deposition, following up on previously unanswered questions (namely MITG's damage amount) and a new claim. Mr. Haught again could not provide a number or explanation of MITG's alleged damages. The only information provided was by MITG's counsel, stating that Mr.

---

[2] In February 2005, HP took the deposition of MITG's owner Ron Haught as the corporate representative of MITG. Mr. Haught could not provide an amount or method of damages [Haught Depo 7:23-8:10, attached hereto as EXHIBIT D].

**PLAINTIFFS' TRIAL BRIEF ON DAMAGES**                                                                 **PAGE** 3

Haught did not have a different number from Mr. Stringer and Mr. Haught acknowledgement that MITG would rely on Mr. Stringer for its damage amount.[3]

As the Court may recall, after being deposed, Mr. Stringer issued a "supplemental" report to correct the many obvious errors in his initial report. The supplemental report still sought to calculate damages based on the "diversion" of calls previously answered by Andover to Roseville, rather than sending them to MITG. The new report used new methodologies, cited some different documents and resulted in a change in the amount set forth as damages. After an objection by HP, the court permitted HP to re-take Mr. Stringer's deposition, and as a sanction for MITG's failure to comply with Rule 26(a)(2), this Court awarded HP attorneys' fees and costs associated with the filing of the Motion and re-taking Mr. Stringer's deposition.

Mr. Stringer's second try also failed. This Court struck Mr. Stringer as an expert, finding that his opinions were speculation based on assumptions and thus these opinions failed to provide competent evidence of damages. [Order of April 11, 2006].

Since Mr. Stringer was stricken as an expert, MITG has not provided a computation of its damages or information as to how it proposes to establish such damages[4], until it provided a new, never before disclosed dollar amount of $10,283,859 in its portion of the Joint Final Pretrial Order. The methodology relied upon to calculate this "gross lost profits" amount remains undisclosed. This is a clear violation of the duty to supplement set forth in Rule 26(e)(1). Assuming that MITG's provision of information for its portion of the Joint Final Pretrial Order complies with Rule 26(e)(1)'s requirement

---

[3]  See Mr. Haught's July 2005 deposition, pp. 5:17-7:25, attached hereto as EXHIBIT E.
[4]  Under Rule 26(a)(1)(C) requires a "computation" of damages. It is well accepted that this means the disclosure of a specific dollar figure and some analysis to show the fact or methodology upon which the number was derived. *See In re Oakwood Homes Corporation* 340 B.R. 510, 540-541 (Del. 2006) (lengthy discussion of the meaning of computation under Rule 26(a)).

**PLAINTIFFS' TRIAL BRIEF ON DAMAGES**                                          PAGE 4

to provide the information in discovery or in writing, it certainly cannot be in compliance with the requirement that the supplementation be done "at appropriate intervals," as the Rule requires. Waiting until less than three weeks from the trial setting, when MITG has known since at least April 11, 2006 that its prior methodology was inadmissible, and thus of its need to supplement, should not be consider "appropriate."

Pursuant to Rule 37(c)(1), a party that "without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), is not, unless the error is harmless, permitted to use as evidence at trial…any information not so disclosed." MITG's failure to timely disclose its damage claim, both the dollar amount and the basis for such calculation is certainly not harmless. This case is almost two and a half years old. The purpose of Rule 26 is to eliminate the element of surprise in litigation. HP has been seriously disadvantaged by MITG's unexplained failure to comply with the Rules and provide HP with the required damage information. MITG is intending to ask a jury to award it $10,283,859 in gross profits, and HP will not have had any opportunity to undertake any discovery on the issue. Certainly prior discovery by HP in this case has revealed major flaws in MITG's reasoning. Perhaps MITG is trying to avoid the risk of that happening again by simply not disclosing the information in a timely manner. As discussed below, MITG's failure provides ample grounds for this Court to impose the sanctions set forth in Rule 37, including prohibiting MITG from putting on evidence of actual damages.

The Seventh Circuit has stated that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado v. Gen. Motors Corp.,* 150 F.3d 735, 742 (7th Cir.1998).

Further, "[t]he determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.,* 100 F.3d 1353, 1363 (7th Cir.1996); *see also Salgado,* 150 F.3d at 739 (stating that a district court's ruling on a motion to exclude testimony for noncompliance with Rule 26(a) is reviewed for an abuse of discretion and "[u]nder this standard, we shall affirm the judgment of the district court whenever we believe that the district court chose an option that was among those from which we might expect a district court reasonably to choose").

A comparable issue to the situation before this court may be found in an unreported case from the Northern District of Illinois. In *Graves v. Theil,* 2002 WL 31455973 (N.D. Ill. 2002), the Court granted defendant's motion in limine to exclude evidence of lost profits based on the plaintiff's failure to disclose the information pursuant to Rule 26(a) and 26(e). The plaintiff stated in interrogatory answers that she missed work due to the injuries allegedly inflicted by the defendants, but did not state how many days of work or how much income she lost. The plaintiff never supplemented her discovery responses, or disclosures, or provided such information in her deposition. The court precluded the testimony, "see[ing] no good reason to permit the plaintiff to pursue damages at trial for which she did not provide the requested discovery."

In this case, MITG has never supplemented it Rule 26(a) disclosures. Instead, it relied on its expert designation and report to provide the required information. Once that information was no longer applicable, MITG had the duty to supplement with its new computation. Further, on two occasions HP took the deposition of Ron Haught, the owner of MITG, as the corporate representative on various topics, including MITG's

**PLAINTIFFS' TRIAL BRIEF ON DAMAGES**                                                           **PAGE 6**

damages (a true and correct copy of the Notice of Deposition of the Corporate Representative is attached hereto as EXHIBIT F). In two depositions, Mr. Haught could not articulate his damages – either provide a dollar figure or a methodology. MITG chose to rely upon its expert, Scott Stringer, to provide that information and now that his report and testimony is not admissible, it is unfair and inappropriate to now allow Mr. Haught to now testify on a matter he twice said he could not testify on.

Again, Mr. Stringer's second attempt provided a dollar figure and methodology (namely assuming the Andover business exactly matched the MITG business) for calculating MITG's claimed damages for HP's alleged breach of the SSA. Once that methodology was rejected, MITG had an obligation to supplement its disclosure to provide the new methodology upon which it now relies. Its failure to do so cannot be said to be substantially justified, but it most certainly is harmful and highly prejudicial to HP.

Based on the above, HP respectfully requests that this Court grant HP's motion in limine nos. 3 and 4, and preclude MITG from putting on any evidence of actual damages as the proper sanction for its failure to comply with Rule 26.

## MITG IS ONLY ENTITLED TO A JURY INSTRUCTION ALLOWING AN AWARD OF NOMINAL DAMAGES

By its terms, the SSA is governed by Missouri law. If a plaintiff establishes a breach of contract, but does not suffer or prove any damages, Missouri law allows for an award of nominal damages merely as recognition of some breach of duty, but not as a measure of compensation for loss or detriment suffered. *Shirley's Realty, Inc. v. Hunt*, 160 S.W.3d 804, 808 (Mo. App. 2005); *Simpkins v. Ryder Freight Systems, Inc.*, 855, S.W. 2d 416, 422 (Mo. App. 1993). Thus, nominal damages are set at a "trifling sum, usually no more than $1.00, sometimes less." *Simpkins,* 855

S.W.2d at 423, *citing Seelig v. Missouri, K&T Ry., Co.*, 230 S.W. 94, 102 (Mo. 1921)(instructing the jury that if it found a breach but no damages were proven, only a nominal sum could be awarded, and that amount was one cent).

Under Missouri law, this Court should provide an instruction to the jury directing that if the jury finds that HP is liable to MITG for a breach of the SSA that the jury was to award nominal damages of $1.00. HP has submitted a proposed instruction in conjunction with the Pre-trial Order.

WHEREFORE, Plaintiffs/Counter-Defendants respectfully request that this Court bar MITG from presenting evidence of or requesting an award of actual damages to the jury in the trial of this case, and assess such other sanctions as permitted by Federal Rule of Civil Procedure 37(c), as the appropriate sanction for failing to timely supplement its Disclosures in accordance with Rule 26(e) of the Federal Rules and grant to Plaintiffs/Counter-Defendants such other and further relief to which they may show themselves justly entitled.

Respectfully submitted,

/s Elizann Carroll
ELIZANN CARROLL
Texas State Bar No. 00787209
JUNEAU, BOLL & WARD, P.L.L.C.
15301 Spectrum Dr., Suite 300
Addison Texas 75001
(972) 866-8333
(972) 866-8378 *fax*

MOLLY BUCK RICHARD
Texas State Bar No. 16842800
RICHARD LAW GROUP
8411 Preston Road, Suite 890
Dallas, TX 75225
(214) 206 4300
(214) 206 4330 *fax*

SCOTT D. SPOONER
Heyl, Royster, Voelker & Allen
Suite 575 National City Center
1 North Old State Capital Plaza
P. O. Box 1687
Springfield, IL 62705
(217) 522-8822
(217) 523-3902 *fax*

ATTORNEYS FOR PLAINTIFFS/
COUNTER-DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this the 22nd day of June, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to Delmer Mitchell and James Hansen, counsel for Defendants, and Molly Buck Richard and Scott Spooner, counsel for Plaintiffs.

/s Elizann Carroll
ELIZANN CARROLL
State Bar No. 00787209
JUNEAU, BOLL & WARD
15301 Spectrum Dr., Suite 300
Addison Texas 75001
(972) 866-8333
(972) 866-8378 *fax*
ecarroll@juneauboll.com