UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

HEWLETT-PACKARD
DEVELOPMENT COMPANY, L.P.,
HEWLETT-PACKARD COMPANY,
AND COMPAQ TRADEMARK B.V.

    Plaintiffs

v.

MIDWEST INFORMATION
TECHNOLOGY GROUP, INC.
AND MICHAEL LAUBER,

    Defendants.

§§§§§§§§§§§§§§

Civil Action No. 04-3055

## MIDWEST INFORMATION TECHNOLOGY GROUP, INC.'S ANSWERS TO HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P.'S REQUEST FOR ADMISSIONS

### DEFINITIONS

1. "HP" shall mean and refer to Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and their employees, consultants, representatives and any other individual or entity within its control or supervision, and all other persons acting in concert with them or at their direction.

2. "Plaintiffs" shall refer to Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark B.V. and all their employees, consultants, representatives or other individuals acting on behalf of or purporting to act on behalf of Plaintiffs.

1



Defendant denies Paragraph 3.

**REQUEST FOR ADMISSION NO.4:**

At the February 4, 2004 training, Richard Rice informed HP representatives at the Littleton, Massachusetts call center that HP customers would need to contact MITG to set up an account with MITG so that the customers could order spare parts after Monday, February 9, 2004.

**RESPONSE:**

Defendant denies Paragraph 4.

**REQUEST FOR ADMISSION NO.5:**

Richard Rice made false statements to representatives of HP during the February 4, 2004 virtual training session.

**RESPONSE:**

Defendant denies Paragraph 5.

**REQUEST FOR ADMISSION NO.6:**

The exclusivity provision of the Standard Support Agreement was limited to customers of Compaq Direct and, after the merger, HP Direct.

**RESPONSE:**

Defendant denies Paragraph 6.

**REQUEST FOR ADMISSION NO.7:**

The Middleware Agreement authorized MITG to develop software to interface with the HP web tool and access HP's order entry system.

**RESPONSE:**

                                MIDWEST INFORMATION TECHNOLOGY
                                GROUP, INC.
                                      Defendant/Counterclaim Plaintiff

By: _____
                              One of their Attorneys

Delmer R. Mitchell
James A. Hansen
Schmiedeskamp, Robertson, Neu & Mitchell
Attorneys for Defendant/Counterclaim Plaintiff
525 Jersey
P.O. Box 1069
Quincy, Illinois   62306
Telephone:  217-223-3030
Facsimile:  217-223-1005

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

HEWLETT-PACKARD
DEVELOPMENT COMPANY, L.P.,
HEWLETT-PACKARD COMPANY,
AND COMPAQ TRADEMARK B.V.

　　　　Plaintiffs

v.

MIDWEST INFORMATION
TECHNOLOGY GROUP, INC.
AND MICHAEL LAUBER,

　　　　Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 04-3055

## MIDWEST INFORMATION TECHNOLOGY GROUP, INC.'S ANSWERS TO HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P.'S FIRST SET OF INTERROGATORIES

COMES NOW Defendant Midwest Information Technology Group, Inc., by and through its attorneys, Schmiedeskamp, Robertson, Neu & Mitchell, and for its answers to Hewlett-Packard Development Company, L.P.'s first set of interrogatories states as follows:

### DEFINITIONS

1. "And" and "or" as used herein are inclusive, and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request matters that might otherwise be construed to be outside its scope.

2. "Any" means one or more.

3. "Communication" means any exchange, transmission or receipt (whether as

1

"Admit," state all facts that support your answer.

ANSWER:

In an e-mail dated Wednesday February 4, 2004, Nancy Beaton of Hewlett-Packard, sent an e-mail to various Hewlett-Packard employees on notifying customers of information regarding the ordering of spare parts. In that e-mail, Ms. Beaton indicates that the information was sent out under an Informer, "But as most of us don't read it, it may have slipped through." That e-mail was then referred to by Diane Woodard of Hewlett-Packard that was sent to inside sales specialists at Hewlett-Packard again on Wednesday February 4, 2004. The e-mail was forwarded to Ms. Woodard by Kelly Harter who was informing her sales team on information regarding spare parts ordering changes. In a further e-mail dated Friday February 6, 2004, Richard Rice of MITG clarified the situation to Ms. Beaton. He reviewed her e-mail and specifically stated that the statements were an incorrect depiction of what he had communicated.

INTERROGATORY NO. 16:

If you answered Request for Admission No. 5 with anything other than an unqualified "Admit," state all facts that support your answer.

ANSWER:

See answer to Interrogatory No. 15.

INTERROGATORY NO. 17:

If you answered Request for Admission No. 6 with anything other than an unqualified "Admit", state all facts that support your answer.

ANSWER:

The exclusivity clause is for all spare parts orders.

14

## ANSWER:

Objection. This request is vague, ambiguous, overly broad and unduly burdensome. Defendant cannot answer this Interrogatory as phrased because Plaintiffs have failed to define "worked". If that refers to anyone that had any communication whatsoever with any order that was placed at MITG, the answer would be any and potentially all of Defendant's employees for the time period requested.

MIDWEST INFORMATION TECHNOLOGY GROUP, INC., Defendant/Counterclaim Plaintiff

By: _____
One of their Attorneys

Delmer R. Mitchell
James A. Hansen
Schmiedeskamp, Robertson, Neu & Mitchell
Attorneys for Defendant/Counterclaim Plaintiff
525 Jersey
P.O. Box 1069
Quincy, Illinois   62306
Telephone:  217-223-3030
Facsimile:   217-223-1005

## ATTESTATION

STATE OF ILLINOIS ) 
                  ) SS. 
COUNTY OF ADAMS   )

Ronald D. Haught, Jr., as President of Midwest Information Technology Group, Inc., being first duly sworn on oath, deposes and states that he has read the foregoing Answers to Interrogatories, and the answers made herein are true, correct and complete to the best of his knowledge and belief.

Midwest Information Technology Group, Inc.

By: _____
Ronald D. Haught, Jr., President

Subscribed and Sworn to before me this _____ day of _____, 2004.

Page 1

```
                UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF ILLINOIS
                    SPRINGFIELD DIVISION


HEWLETT-PACKARD DEVELOPMENT       )
COMPANY, L.P., HEWLETT-PACKARD    )
COMPANY, and COMPAQ TRADEMARK B.V.,)
                                  )
            Plaintiffs,           )
                                  )
      - vs -                      ) No. 04-3055
                                  )
MIDWEST INFORMATION TECHNOLOGY    )
GROUP, INC., and MICHAEL LAUBER,  )
                                  )
            Defendants.           )
```

    DEPOSITION of RONALD HAUGHT, taken in the above-entitled case before Gina Nottingham, a Notary Public and Certified Shorthand Reporter of Adams County, Illinois, at 9:00 o'clock A.M., on February 18, 2005, at 525 Jersey Street, Quincy, Adams County, Illinois.

Page 2

APPEARANCES:

MS. ELIZANN CARROLL
Attorney at Law
15301 Spectrum Drive, Suite 300
Addison, Texas 75001

    appeared for the Plaintiffs.

MR. JAMES HANSEN
Attorney at Law
525 Jersey Street
Quincy, Illinois 62301

    appeared for the Defendants.

ALSO PRESENT:

Ms. Gaynelle Jones
Litigation Counsel for Hewlett-Packard


MRS. GINA L. NOTTINGHAM, CSR
License No. 084-002584
924 Rim Road
Quincy, Illinois 62301
(217) 224-7009

Gina L. Nottingham, C.S.R.

Page 3

                    I N D E X

DEPONENT                              PAGE NUMBER
RONALD HAUGHT
    Examination by Ms. Carroll            4


                    E X H I B I T S

NUMBER                              MARKED   IDENTIFIED
Deposition Exhibit Number 20          *          7
Deposition Exhibit Number 5           *         17
Deposition Exhibit Number 4           *         37
Deposition Exhibit Number 2           *         42
Deposition Exhibit Number 1           *         43
Deposition Exhibit Number 6           *         64
Deposition Exhibit Number 22         72         72
Deposition Exhibit Number 19          *         76
Deposition Exhibit GG                 *         96
Deposition Exhibit Number 23        147        147
Deposition Exhibit M                  *        154
Deposition Exhibit KK                 *        169
Deposition Exhibit Number 24        169        172
Deposition Exhibit Number 25        169        171
Deposition Exhibit B                  *        184
Deposition Exhibit C                  *        194
Deposition Exhibit Number 21          *        206
Deposition Exhibit Number 26        209        209
Deposition Exhibit Number 27        222        222
Deposition Exhibit Number 28        263        263

Page 4

            (Whereupon the Deponent was
            sworn by the Notary Public.)
            R O N A L D   H A U G H T
having been first duly sworn by the Notary Public,
deposeth and saith as follows:
            EXAMINATION BY
            MS. CARROLL:
    Q.   Can you state your name for the record, please, sir?
    A.   Ronald Dean Haught, Jr.
    Q.   And what is your address, Mr. Haught?
    A.   4304 Deer Ridge Road, Quincy, Illinois, 62305.
    Q.   Thank you. Have you had your deposition taken before?
    A.   Yes.
    Q.   How many times?
    A.   Several over the years. I was former law enforcement, so I have been through this process a few times over the years.
    Q.   Okay. Any of the depositions relating to MITG?
    A.   One.
    Q.   Okay. And what kind of case was that?

EXHIBIT D

Page 5

1   A. Over a construction case.
2   Q. All right. And was MITG a party to the
3 lawsuit, I take it?
4   A. Yes.
5   Q. Plaintiff or defendant?
6   A. Plaintiff.
7   Q. And what was the issue?
8   A. Improper assembly of some beams. I had a
9 bent beam in a construction process.
10   Q. Was it for the construction of the new
11 facility here in Quincy?
12   A. That's correct.
13   Q. All right. And is that case completed now?
14   A. No, it is not.
15   Q. All right. And is that pending here in
16 Quincy?
17   A. I don't know the answer to that actually.
18 I don't know where it was filed.
19   Q. Okay. But MITG is the plaintiff against
20 the construction company in a current lawsuit, is
21 that correct?
22       MR. HANSEN: No. No. MITG is not the
23 plaintiff. It relates to MITG's building. MITG is
24 not the plaintiff.
25       THE WITNESS: That's correct.

Page 6

1       MS. CARROLL: MITG is a party to the
2 lawsuit?
3       MR. HANSEN: No. He can answer. If you
4 know. Go ahead. If you want, I can tell you. MITG
5 is not a party to the lawsuit.
6       MS. CARROLL: Q. There is a dispute
7 involving the construction of MITG's facility here in
8 Quincy, and you had your deposition taken in that
9 context?
10   A. That's correct.
11   Q. All right. Have you had to testify in
12 court for any matters relating to MITG?
13   A. No.
14   Q. All right. You understand that you are
15 here today for your deposition both individually and
16 as the corporate representative of MITG?
17   A. I understand I'm here as a corporate
18 representative, that's correct.
19   Q. Well, you are also here just to the extent
20 that there are matters that aren't included in this
21 deposition notice that you know from your capacity as
22 an employee and the owner of MITG, those questions
23 will be asked today also?
24   A. That's correct.
25   Q. Okay. Let me show you the deposition

Page 7

1 notice. Have you seen that document before? It's
2 Exhibit 20.
3       MR. HANSEN: I can tell you he may not have
4 seen the notice. He has seen the exhibit.
5       MS. CARROLL: Q. That's fine. And I
6 understand from your lawyer, if you can confirm with
7 me, that it's also your understanding that you are
8 the representative on all of the, all 22 topics
9 except 8 and 9 on which your CFO, Miss Koch, was
10 designated. Is that your understanding?
11       MR. HANSEN: And, just so the record is
12 clear, 12.
13       MS. CARROLL: Q. 12 you all were jointly
14 designated on that topic?
15   A. That's correct.
16   Q. What did you do, if anything, to prepare
17 for your deposition today?
18   A. Read over a few -- well, I read over the
19 original contract. That's really about it.
20   Q. The Standard Support Agreement?
21   A. That's correct, yes, and the Middleware
22 document, yes.
23   Q. And have you or has MITG calculated the
24 actual damages that you claim it suffered due to the
25 plaintiff's alleged breach of contract of the

Page 8

1 Standard Support Agreement?
2   A. No. I have been unable to totally
3 calculate those damages.
4   Q. Why is that?
5   A. Well, for one you, I believe, just recently
6 turned over the documents necessary for us to be able
7 to fully evaluate that on one case. Secondly, the
8 damages will more than likely be calculated by an
9 expert, because I don't feel that's my level of
10 expertise.
11   Q. And what documents are you referring to in
12 terms of the documents necessary to fully evaluate
13 the claim?
14   A. Well, if I'm not incorrect, part of our
15 claim for damages is based on misdirected or
16 redirected calls away from my facility, and those
17 records I would not have any, you know, any per se
18 knowledge of. So we have asked that those records be
19 produced by your client.
20   Q. And I'll get into the diversion issue in a
21 little while. Have you calculated the damages that
22 you claim that MITG has suffered due to
23 Hewlett-Packard's alleged misuse of the Middleware,
24 or breach of the Middleware Agreement?
25       MR. HANSEN: Has he or the company?