```
 1
 2                  U.S. DISTRICT COURT
 3              CENTRAL DISTRICT OF ILLINOIS
 4                  SPRINGFIELD DIVISION
 5
 6   HEWLETT-PACKARD DEVELOPMENT    )
     COMPANY, L.P., HEWLETT-PACKARD )
 7   COMPANY, AND COMPAQ TRADEMARK, )
     B.V.,                          )
 8                                  )
              PLAINTIFFS,           )
 9                                  )
              vs.                   )  No. 04-3055
10                                  )
     MIDWEST INFORMATION            )
11   TECHNOLOGY GROUP, INC., AND    )
     MICHAEL LAUBER,                )
12                                  )
              DEFENDANTS.           )
13
```

14        DISCOVERY DEPOSITION of RONALD HAUGHT, taken in

15   the above-entitled case before Tracy L. Grott, a Notary

16   Public and Certified Shorthand Reporter of Adams County,

17   Illinois, at 2:30 p.m., on July 25, 2005, at 525 Jersey, in

18   the City of Quincy, County of Adams, State of Illinois,

19   pursuant to stipulation hereto annexed.

20

21

22              Tracy L. Grott, CSR
                2901 Sonata Drive
23              Quincy, IL  62301
                217-223-3624
24

25

EXHIBIT E

```
 1                    RONALD HAUGHT,
 2  having been first duly sworn by the Notary Public, deposeth
 3  and saith as follows:
 4                    EXAMINATION BY:
 5                    MS. CARROLL
 6       Q.    State your name for the record, please.
 7       A.    Ronald Dean Haught, H-A-U-G-H-T, Junior.
 8       Q.    Thank you, Mr. Haught.  We did your
 9  deposition in February and the same process applies.
10  Obviously, I'll be a lot quicker this time than I
11  was last time.  I don't think I have it in me to go
12  that long again.  I want to follow up on some areas
13  based on some documents that you all produced to
14  me --
15       A.    Okay.
16       Q.    -- since that last deposition, but let me
17  start with a place where we started last time, which
18  is during your last deposition I asked you about
19  dollar amounts of damages of each of the three
20  claims you have against HP and you deferred to an
21  expert at that time.
22       A.    Correct.
23       Q.    And Mr. Stringer of UHY Advisors has now
24  provided a report on damages for the breech of the
25  Standard Support Agreement and the tortious
```

1 interference claim, you're familiar with that
2 report?
3   A.   No, I haven't seen it yet.
4   Q.   Okay. Let me ask you this, are you aware
5 of the numbers that he came up with in terms of
6 round numbers for what the damage claim is for the
7 breech of the Standard Support Agreement and the
8 tortious interference claim?
9   A.   No.
10   Q.   Mr. Stringer's report, I'll just ask you
11 if you've heard of any of these numbers as to Count
12 1 on the breech of the Standard Support Agreement,
13 they have a rounded damage number of $6,422,000, do
14 you have -- are you going to rely on Mr. Stringer to
15 testify as to the dollar amount of the Standard
16 Support Agreement claim or do you have a number
17 different from what's been provided in your expert's
18 report?
19     MR. HANSEN: I'll object to the form only
20   that we don't have a different number. Mr.
21   Haught may testify to something in support of
22   that.
23   Q   (By Ms. Carroll) Fair enough. What I'm
24 looking for is, I understood before that you were
25 deferring to an expert, that expert indicates in his

1  report that he got documents from MITG and had some
2  discussions with people at MITG and based on that he
3  has come up with an actual figure, do you have a
4  figure, I know that your information is going to be
5  necessary for information about the business, but do
6  you have a dollar number different from your expert?
7      A.   Well, one, I don't know what the expert's
8  number was, I haven't seen the report and that's
9  been based on the fact that I've been traveling for
10 the last four weeks, so I don't have any assemblance
11 of what this should be yet because I haven't had a
12 chance to review any of those documents.
13     Q.   Do you have a number in your mind as to
14 what your damages are for the breech of the Standard
15 Support Agreement?
16         MR. HANSEN:  I mean if you're asking --
17     Mr. Haught is not going to come in and testify
18     to another number I guess, if that's what
19     you're asking.
20     Q.   That's all I want to know.  I understood
21 you before that the expert's going to come up with
22 the actual dollar amount.  I just want to confirm
23 you're going to rely on Mr. Stringer and his
24 expertise for that number.
25     A.   I believe so.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P., HEWLETT-PACKARD COMPANY, and COMPAQ TRADEMARK B.V., <br><br> Plaintiffs, <br><br> vs. <br><br> MIDWEST INFORMATION TECHNOLOGY GROUP, INC. and MICHAEL LAUBER, <br><br> Defendants. | Civil Action No. 04-3055 |

## NOTICE OF INTENT TO TAKE THE DEPOSITION OF THE CORPORATE REPRESENTATIVE OF MIDWEST INFORMATION TECHNOLOGY GROUP, INC.

TO: Defendants, Midwest Information Technology Group, Inc. and Michael Lauber, by and through their attorneys of record, James A. Hansen, Schmiedeskamp, Robertson, Neu & Mitchell, 525 Jersey, P.O. Box 1069, Quincy, Illinois 62306.

PLEASE TAKE NOTICE that Plaintiffs will take the oral deposition of the Corporate Representative of Midwest Information Technology Group, Inc. ("MITG") pursuant to Federal Rule of Civil Procedure 30(b)(6) in the above-entitled and numbered cause, commencing at 9:00 a.m. on February 18, 2005, and continuing day to day until completed at the offices of Schmiedeskamp, Robertson, Neu & Mitchell, 525 Jersey, P.O. Box 1069, Quincy, Illinois 62306. MITG is requested to designate and produce the person(s) to testify as to matters known or reasonably available to the corporation about the issues set forth in attached Exhibit A. The deposition will be stenographically recorded.

NOTICE OF INTENT TO TAKE THE DEPOSITION OF THE CORPORATE
REPRESENTATIVE OF MIDWEST INFORMATION TECHNOLOGY GROUP, INC. - Page 1

EXHIBIT F

All counsel are invited to attend.

                           Respectfully submitted,

                           _____
                           ELIZANN CARROLL
                           State Bar No. 00787209
                           JUNEAU, BOLL & WARD, P.L.L.C.
                           15301 Spectrum Dr., Suite 300
                           Addison Texas 75001
                           (972) 866-8333
                           (972) 866-8378 *fax*

                           MOLLY BUCK RICHARD
                           State Bar No. 16842800
                           THOMPSON & KNIGHT, LLP
                           1700 Pacific Ave., Suite 3300
                           Dallas, Texas 75201
                           (214) 969-1700
                           (214) 969-1750 *fax*

                           and

                           SCOTT D. SPOONER
                           Heyl, Royster, Voelker & Allen
                           Suite 575 National City Center
                           1 North Old State Capital Plaza
                           P. O. Box 1687
                           Springfield, IL 62705
                           (217) 522-8822
                           (217) 523-3902 *fax*

                           ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of this document was served upon Defendants by and through their counsel of record listed below, pursuant to the Federal Rules of Civil Procedure, on this the _____ day of January, 2005.

*ELIZANN CARROLL*

James A. Hansen
Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey
P.O. Box 1069
Quincy, Illinois 62306

## EXHIBIT A

1. The work done, goods sold, and/or services provided by MITG to or for Compaq's customers or customers referred to MITG by Compaq prior to the execution of the Standard Support Agreement.

2. The negotiations of and discussions surrounding the terms and operation of the Standard Support Agreement prior to its execution on or around February 7, 2002.

3. The operation of the Standard Support Agreement (i.e. how it worked) and MITG's contentions as to how it was to operate, the parties' obligations under the Agreement and any alteration of the terms by consent of the parties.

4. The negotiations and discussions surrounding the terms of the Middleware Agreement.

5. The development and use of the Middleware (as referenced in the Middleware Agreement attached as Exhibit 2 to MITG's Counterclaim).

6. Hewlett-Packard's alleged use of the Middleware after February 7, 2004.

7. Part Fees (as that term is defined in paragraph 9 of the Standard Support Agreement) charged by MITG and paid by Compaq/HP under the Standard Support Agreement.

8. Total profits generated by MITG's sale of parts under the Standard Support Agreement during the life of the Agreement and on a monthly basis.

9. The amount of MITG's 75% share of profits as calculated in accordance with paragraph 10 of the Standard Support Agreement earned in total and by month during the life of the Agreement.

10. The operation of MITG's call center during the term of Standard Support Agreement, including the volume to MITG's call center(s) on a monthly basis, staffing and amounts paid by Compaq/HP under the Agreement.

11. The development of the MITG websites that are at issue in this lawsuit, including the selection of the domain names and any consent (express or implied) MITG contends was given for use of the Domain Names after the termination of the Standard Support Agreement.

12. The use of the Domain Names (as defined in paragraph 4 of the Complaint) after February 7, 2004, including tracking of "hits" on the websites, the message shown in Exhibit G of the Complaint and any business generated from the websites containing the Domain Names after February 7, 2004.

13. All discussions between MITG and Hewlett-Packard regarding the termination of the Standard Support Agreement, including any proposals made by either party for an alternative arrangement for MITG to provide other services for or to Hewlett-Packard or its customers.

14. All facts supporting MITG's contention that Hewlett-Packard referred, routed, processed or diverted customer telephone calls away from MITG.

15. MITG's notification to Hewlett-Packard of its alleged violation of the Standard Support Agreement, as stated in paragraph 18 of the Counterclaim.

16. Hewlett-Packard personnel's, including customer service representatives, referral of business, inquiries or contacts with MITG after February 7, 2004, including but not limited to sales generated from such contacts, and types of parts inquired about and/or sold.

17. The damages claimed by MITG in this lawsuit, including the amount of actual damages MITG alleges it suffered due to Hewlett-Packard's breach of the Standard Support Agreement and breach of the Middleware Agreement, and factual basis for the amounts.