**E-FILED**
Friday, 23 June, 2006  03:05:28 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HEWLETT-PACKARD | § | |
| DEVELOPMENT COMPANY, L.P., | § | |
| HEWLETT-PACKARD COMPANY, | § | |
| AND COMPAQ TRADEMARK B.V. | § | |
| | § | |
| Plaintiffs/Counter-Defendants | § | |
| | § | |
| vs. | § | Civil Action No. 04-3055 |
| | § | |
| MIDWEST INFORMATION | § | |
| TECHNOLOGY GROUP, INC. | § | |
| | § | |
| | § | |
| Defendant/ Counter-Plaintiff | § | |
| | § | |

## PRE-TRIAL ORDER

This matter having come before the Court at a pre-trial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16.1; and

Elizann Carroll having appeared as counsel for the plaintiffs/counter-defendants, Plaintiffs Hewlett-Packard Development Company, L.P., Hewlett-Packard Company and Compaq Trademark B.V. and Delmer Mitchell and James Hansen having appeared as counsel for the defendant/counter-plaintiff, Midwest Information Technology Group, Inc.

the following action was taken:

## I. NATURE OF ACTION AND JURISDICTION

This is an action by Plaintiffs for federal trademark infringement, violations of the Lanham Act and common law trademark infringement and unfair competition and the jurisdiction of the Court is invoked under 15 U.S.C. §1121, 28 U.S.C. §1331, and 28 U.S.C.

§1338(a), and pendent jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. §1367(a), because those claims arise from the same common nucleus of operative facts as the federal Lanham Act claims.   In summary, Plaintiffs' claims are that MITG's use of domain names incorporating the HP and Compaq trademarks was done without consent and to the detriment of HP and Compaq.

There is also a counter-claim by counter-plaintiff for breach of contract.  MITG claims that HP violated the provisions of the Standard Support Agreement entered into between the parties.  Jurisdiction of the Court is invoked under 15 U.S.C. §1121, 28 U.S.C. §1331 and 28 U.S.C. §1338 (a).

## II. JOINT STATEMENT

A.  JURISDICTION

Jurisdiction is not disputed.

B.  UNCONTESTED ISSUES OF FACT AND LAW

FACTS:

1. Hewlett-Packard Development Company, L.P. is a Texas limited partnership with its principal place of business in Houston, Texas.

2. Hewlett-Packard Company is a Delaware corporation with its principal place of business in Palo Alto, California.

3. Compaq Trademark B.V. is a Netherlands company with its principal place of business at Startbaan 16, 1187 Xr Amstelveen, The Netherlands.

4. Midwest Information Technology Group, Inc. ("MITG") is a Missouri corporation with its principal place of business in Quincy, Illinois.



5. Beginning at least as early as 1941, HP has used the trademark "HP" in connection with its business.

6. HP owns 48 federal trademark and service mark registrations on the Principal Register of the United States Patent and Trademark Office for the mark "HP" and marks containing "HP."

7. HP owns federal trademark registrations for "HP" marks that have been registered and used for more than five years, including the following:

| Registration No. | Mark | Date of Registration |
|---|---|---|
| 1116835 | HP | April 24, 1979 |
| 1733457 | HP | November 17, 1992 |
| 1840215 | HP | June 21, 1994 |
| 2404023 | HP | November 14, 2000 |
| 862308 | HP & Design | December 24, 1968 |
| 1842724 | HP & Design | July 5, 1994 |
| 1683247 | HP & Design | April 14, 1992 |
| 1735159 | HP & Design | November 24, 1992 |
| 2404024 | HP & Design | November 14, 2000 |

8. Beginning at least as early as 1982, Compaq (including its predecessor in interest Compaq Computer Corporation) has used the trademark "COMPAQ" in connection with the manufacture and sale of computer hardware and software and related products.

9. Compaq owns federal trademark registrations for "COMPAQ" marks that have been registered and used for more than five years, including the following:

| Registration No. | Mark | Date of Registration |
|---|---|---|
| 1264107 | COMPAQ & DESIGN | January 17, 1984 |
| 1467066 | COMPAQ | December 1, 1987 |
| 1993755 | COMPAQ (stylized) | August 13, 1996 |
| 1993756 | COMPAQ (stylized) | August 13, 1996 |
| 2183367 | COMPAQ | August 25, 1998 |
| 2127189 | COMPAQ | January 6, 1998 |

10. Plaintiffs use the "HP" marks and "COMPAQ" marks in domain names associated with their online business, including the sale of parts for computers, printers, and related products.

11. MITG and Compaq Direct, Inc., a subsidiary of Compaq Computer Corp. ("CDI"), entered into the Standard Support Agreement ("SSA") on February 7, 2002.

12. On or about May 3, 2002, Compaq merged with HP; therefore, HP is a successor in interest to Compaq Computer Corporation with regard to the SSA. Compaq Direct became known as HP Direct. The SSA remained in place, with MITG servicing the Customers of HP Direct.

13. In Section 14 of the SSA, each party acknowledged the other party's "Intellectual Property Rights," including trademarks. The parties further agreed that each party would not use the other party's intellectual property without prior written permission of the other party unless such use was reasonably necessary for efficient performance under the SSA.

14. In Section 14 of the SSA, each party agreed that one party would not acquire any rights or entitlement to the other party's Intellectual Property Rights based on use of that intellectual property during the course of the SSA.

15. In 2001, before MITG entered into the SSA with Compaq, MITG registered the internet domain names compaqonlineparts.com, compaqdirectonline.com, compadirectspareparts.com, compaqdirectservices.com, compaqdirectparts.com, and compaqdirectparts.net (collectively, the "Compaq Domain Names"). Michael Lauber, an employee of MITG at that time, was listed as the administrative contact on the domain name registrations.

16. Each of the Compaq Domain Names registered by MITG incorporates Plaintiffs' "COMPAQ" trademark in its entirety.

17. Each of the Compaq Domain Names consists of the mark "COMPAQ" combined with generic or descriptive wording.

18. In January 2002, also before MITG entered into the SSA with Compaq, MITG's employee Michael Lauber registered the internet domain names hponlineparts.com, hpdirectonline.com, hpdirectonlineparts.com, hpdirectspareparts.com, hpdirectservices.com, hpdirectparts.com, hpdirectprinterparts.com, hpdirectprinters.com, hponlineservices.com, hponlinespares.com, hpoptionparts.com (the "HP Domain Names").

19. Each of the HP Domain Names incorporates HP's "HP" trademark in its entirety.

20. Each of the HP Domain Names consists of the mark "HP" combined with generic or descriptive wording.

21. Beginning February 7, 2002, MITG provided certain customer services to customers of Compaq Direct, and then to HP Direct, in compliance with the SSA.

22. During the term of the SSA, Compaq and HP consented to MITG's use of the Domain Names.

23. On or around October 13, 2003, HP informed MITG that it did not intend to renew the services agreement at the expiration of the two-year term; therefore, the effective date of termination of the SSA would be February 7, 2004.

24. On February 7, 2004, the SSA terminated pursuant to the express provisions of the SSA.



25. On or about January 28, 2004, HP contacted MITG via e-mail to Mr. Lauber and requested that MITG transfer the Compaq Domain Names and the HP Domain Names to HP.

26. In a January 29, 2004 response, Mr. Lauber stated that he had no intention of transferring the domain names and provided contact information for MITG's counsel.

27. On or about February 2, 2004, counsel for HP contacted counsel for MITG and requested that MITG immediately transfer the Compaq Domain Names and the HP Domain Names to HP.

28. In response to the February 2, 2004, communication from HP, MITG refused to transfer the domain names to HP.

29. Under the terms of the SSA, MITG was to provide CDI with computer related support services which included, but were not limited to, computer hardware maintenance and repair.  These services were offered to CDI's end users, customers, companies or commercial entities (collectively "Customers") directed or referred by CDI to MITG.

30. The "Customers" that MITG had an exclusive right to provide service to under the exclusivity provision of paragraph 22 of the SSA were CDI's customers, as defined by the SSA.

31. The Standard Support Agreement further provided that CDI would refer all applicable parts and service orders to MITG.

32. Customers contacting CDI to buy spare parts would be connected to MITG.

33. The Standard Support Agreement also incorporated the MITG "Bible", which was MITG's written policies and procedures.

34. According to the MITG "Bible", if the part requested by a Customer was in stock (CSN parts), but MITG could locate the part elsewhere (outsourcing) for a price at least $175.00 lower than the price of the in stock part ($100.00 lower for memory and hard drives), MITG could obtain the part for the Customer from an outside vendor.

35. Under the SSA, MITG sold "sourced parts" to Customers. These sourced parts were parts not found in Compaq's inventory for various reasons, including that the parts were manufactured by a third party, which Compaq did not stock, or that the parts were "legacy" or older Compaq parts no longer carried in inventory.

36. Under the SSA, MITG received 75% of the profit for the sale of a  sourced part  to the Customer and Compaq received the remaining 25%.

37. Around July of 2002, Compaq launched its eSpares store ---- a website customers could use to order Compaq spare parts.

38. In October 2002, HP planned to integrate the Andover call center into its own in-house call center in Roseville, California.

39. 39.    Troy Bloomquist informed HP personnel that HP had a Standard Support Agreement with MITG.

40. The Standard Support Agreement ended effective February 7, 2004.

41. The MITG call center numbers for Compaq/HP Direct calls was 800-848-4589 and 800-848-9771.

42. The Andover call center number was 800-225-5385.

43. The Roseville Call Center phone number was 800-227-8164.

LAW

1. Due to long-term use and registration, the HP trademark is famous and distinctive and has become incontestable.

2. Due to long-term use and registration, the COMPAQ trademark is famous and distinctive and has become incontestable.

3. The SSA is governed by Missouri law.

C. CONTESTED ISSUES OF FACT

1. Whether MITG needed, but did not have, consent to use the HP and Compaq trademarks in domain names after February 7, 2004.

2. Whether MITG's use of the HP and Compaq trademarks harmed HP and Compaq.

3. Whether the Plaintiffs breached their contract with MITG by failing to comply with the terms of the Agreement.

4. Whether as a proximate result and natural consequence of Plaintiffs' breach of the contract, MITG suffered damages.

5. The amount of damages suffered by MITG.

D. CONTESTED ISSUES OF LAW

1. What is the proper measure of damages for HP's claims for federal trademark infringement, violations of the Lanham Act and common law trademark infringement and unfair competition?

2. What is the proper measure of damages for MITG's claim for breach of contract?

E. JURY DEMAND

Both Plaintiffs and Defendant requested a jury upon filing of their initial pleading.

## III. PLAINTIFFS' AND COUNTER-PLAINTIFF'S STATEMENT

A. ITEMIZED STATEMENT OF PLAINTIFFS' DAMAGES

Pursuant to the Lanham Act, 15 USC 1117(a), Plaintiffs are entitled to recover Defendants' profits earned from their infringement of Plaintiffs' federally registered trademarks.   Based on the documents produced by Defendants (including but not limited to MITG 0612), Defendants revenues for the period of infringement (February 7, 2004- March 5, 2004) are approximately $173,354.04 [3/4 of sales and revenue for February and ¼ of sales and revenue for March].

B. ITEMIZED STATEMENT OF COUNTER-PLAINTIFF'S DAMAGES

1.    Lost profits (gross) of $10,283,859.00 based on HP 11046-11047, Andover call data, MITG percentages on outsourcing of CSN backordered product (HP 2056, 2057) and sourced parts x 24% profit margin based on MITG historical financial data (MITG 612-614) from the term of the SSA = $2,468,126.10 net lost profits.

2.    Attorney's fees and costs pursuant to contract.

## IV. WAIVER OF CLAIMS OR DEFENSES

None.



## V. EXHIBITS ATTACHED

The following are attached as exhibits to this order and are made a part hereof:

A. Stipulation of Uncontested facts and issues of law -- see above

B. Plaintiffs' Witness List

C. Defendant's Witness List

D. Plaintiffs' Exhibit List

E. Defendant's Exhibit List

F. Joint Exhibit List -- none

G. Proposed Jury Instructions (Joint).

H. Plaintiffs' Proposed Instructions (only if objections by defendant).

I. Defendant's Proposed Instructions (only if objections by plaintiff).

## VI. GENERAL ADDITIONAL

The following additional action was taken:

J.  Submission of the parties joint voir dire questions

IT IS UNDERSTOOD BY THE PARTIES THAT:

Any Trial Briefs or Motions in limine shall be submitted no later than fourteen (14) days prior to the commencement of trial.

A party may supplement a list of witnesses or exhibits only upon good cause shown in a motion filed and served upon the other parties prior to trial; except that, upon the development of testimony fairly shown to be unexpected, any party may, with leave of court, call such contrary witnesses or use such exhibits as may be necessary to counter the unexpected evidence, although not previously listed, and without prior notice of any other party.

It is mutually estimated that the length of trial will not exceed 6 full days.  The case will be listed on the trial calendar to be tried when reached.

This pre-trial order may be modified at the trial of the action, or prior thereto, to prevent manifest injustice.  Such modification may be made either on motion of counsel for any party or on the Court's own motion.

Any additional proposed jury instructions shall be submitted to the Court within five days before the commencement of the trial, but there is reserved to counsel for the respective parties the right to submit supplemental proposals for instructions during the course of the trial or at the conclusion of the evidence on matters that could not reasonably have been anticipated.

IT IS SO ORDERED.

s/Jeanne E. Scott
JUDGE JEANNE E. SCOTT

ENTERED: June 23, 2006

APPROVED AS TO FORM AND SUBSTANCE:

s/Elizann Carroll

Elizann Carroll
Juneau Boll & Ward
15301 Spectrum Drive, Suite 300
Addison, TX 75001
Telephone: 972-866-8333
Facsimile: 972-866-8378
E-mail: ecarroll@juneauboll.com
ATTORNEY FOR PLAINTIFFS/COUNTER-DEFENDANTS

s/James A. Hansen

James A. Hansen IL Bar #6244534
Attorney for Defendant/Counterclaim Plaintiff,
Midwest Information Technology Group, Inc.
Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey Street, P. O. Box 1069
Quincy, IL 62306-1069
Telephone: (217) 223-3030
Facsimile: (217) 223-1005
E-mail: jhansen@srnm.com

ATTORNEY FOR DEFENDANT/COUNTER-PLAINTIFF

**DUE TO PRIVACY ISSUES THE WITNESS**

**LISTS HAVE BEEN REMOVED FROM THE**

**FINAL PRETRIAL ORDER.**

**THE WITNESS LISTS WILL BE MAILED**

**CONVENTIONALLY TO ATTORNEYS OF**

**RECORD AND/OR PRO SE PARTIES.**

# EXHIBIT LIST FOR PLAINTIFFS/COUNTER-DEFENDANTS

| Case Name: Hewlett Packard, et al v. MITG | Case No: 04-3055 | 5 Pages |
|---|---|---|

| No: | Description | Admit Without Objection | Authentication Waived | Objection |
|---|---|---|---|---|
| 1 | HP & Compaq trademark registrations | | | |
| 2 | Domain Documents From Whois.Net Regarding hpdirectonlineparts.com, hpdirectonline.com, hponlineparts.com, hpdirectspareparts.com, hpdirectservices.com | | | |
| 3 | Domain Documents From Whois.Net Regarding compaqonlineparts.com, compaqdirectonline.com, | | | |
| 4 | Domain Documents From Whois.Net Regarding compaqdirectspareparts.com, compaqdirectservices.com, compaqdirectparts.com | | | |
| 5 | E-mails bates-stamped HP000009 and HP000010 (HP Direct Updates, 1/22/04) | | | |
| 6 | E-mails bates-stamped HP000005-HP000008 regarding Transfer of 4 Domains to HP | | | |
| 7 | Letter from Molly Richard to William McCleery, Jr. dated February 2, 2004 | | | |
| 8 | Letter from McCleery to Molly Richard dated February 6, 2004 | | | |
| 9 | MITG Parts Direct - Customer Notice; MITG Parts Direct (Depo Ex. 22) | | | |
| 10 | MITG 0249-MITG 0254 E-mail String Regarding Reminder: HP Direct Online Quote CEQQTO552839892 | | | |
| 11 | Declaration of Ronald Haught (April 27, 2005) | | | |
| 12 | Declaration of Michael Lauber (April 25, 2005) | | | |
| 13 | MITG 2004 Monthly Revenue/Profit Summary (MITG 612) | | | |
| 14 | Standard Support Agreement | | | |

| No: | Description | Admit Without Objection | Authentication Waived | Objection |
|---|---|---|---|---|
| 15 | MITG 0527-MITG 0531 (the MITG "Bible") | | | |
| 16 | HP 1494 S. Ellis to T. Bloomquist "Revenue Change" | | | |
| 17 | E-mail "Customer Information for the e Store testing" (Depo Ex CCCC) | | | |
| 18 | MITG0607 "Sourced vs. CSN Orders" | | | |
| 19 | MITG 0479-MITG 0481 E-mail String "Proposed Script for Phone Greeting" | | | |
| 20 | HP 1921-22 R. Rice to Troy Bloomquist "Rich's Call" | | | |
| 21 | HP002988 - HP002989 - E-mail string Regarding CPM Conference Call / Mission | | | |
| 22 | E-mail String "try this one…" (Depo Ex. 21) | | | |
| 23 | HP 00235 E-mail String "Percentage of HP and Sourced Business" | | | |
| 24 | HP001389 - E-mail from Rich@hpdirectonline to Troy Bloomquist "A lot of Questions" | | | |
| 25 | HP001333 - E-mail string "HP Direct Online" | | | |
| 26 | HP001285-HP001286 E-mail String "Sun Parts Provider" | | | |
| 27 | HP001244 E-mail From Rich Rice to Troy Bloomquist "Letter Requested" | | | |
| 28 | MITG 0101-0102 "Interesting information we wanted to pass on" | | | |
| 29 | E-mails between Troy Bloomquist and Richard Chizek "Spares Stores Calls" (Chizek LL) | | | |
| 30 | MITG 0430-0435 "Feedback from GlobalOnlineParts.com" | | | |
| 31 | Sept. 8, 2003 T. Bloomquist to C. Bloomquist "I'm not trying to be a …" | | | |
| 32 | Sept. 9, 2003 T. Bloomquist to R. Haught "Mrs." | | | |
| 33 | Sept. 16, 2003 T. Koch to R. Haught "ML Letter4.doc" | | | |
| 34 | HP000042-HP000043, Troy Bloomquist to ML Krakauer | | | |

| No: | Description | Admit Without Objection | Authentication Waived | Objection |
|---|---|---|---|---|
| | "Concerns of an HP business partner" | | | |
| 35 | HP 000064-69 "Concerns of an HP Business Partner" | | | |
| 36 | HP 1358-59 Ronald Haught to Troy Bloomquist, "I Need to Know" | | | |
| 37 | MITG 152-164 E-mail to M.L. Krakauer | | | |
| 38 | HP 001260-62 "FW: Update: MITG (HP Direct partner) | | | |
| 39 | HP 001108 October 30, 2003 Letter Re: Termination of SSA | | | |
| 40 | HP 1276 Ronald Haught to Troy Bloomquist, "Just FYI" | | | |
| 41 | HP 1269 Ronald Haught to Troy Bloomquist, "FYI" | | | |
| 42 | HP 1268 Ronald Haught to Troy Bloomquist "Well …" | | | |
| 43 | HP 1267 Ronald Haught to Troy Bloomquist "Well the Story Is" | | | |
| 44 | HP 1264-1265 Ronald Haught to Troy Bloomquist "I Spoke With Crowley" | | | |
| 45 | MITG 448-450 Ronald Haught to Troy Bloomquist  no subject | | | |
| 46 | MITG 0443 R. Huaght to T. Bloomquist "Just and Update" | | | |
| 47 | MITG 0121-22 Ronald Haught to Troy Bloomquist "How Did Your Call Go…?" | | | |
| 48 | MITG 0123-27 Troy Bloomquist to Ronald Haught "Xerox Spares Account Setup" | | | |
| 49 | MITG 0141-150 S. Brisco to R. Haught "FW: MITG" | | | |
| 50 | MITG 0129-140 S. Brisco to Teresa Koch "Fw: MITG" | | | |
| 51 | MITG 031-32 S. Brisco to A. Livermore, C. Fiorina, M.L. Krakauer | | | |
| 52 | HP 2189-90 "Draft Letter to MITG" (Troy Bloomquist to ML Krakauer) | | | |
| 53 | HP 2187-88 "Draft Letter to MITG" (Troy Bloomquist to Bill Crowley and R. Wagner) | | | |

| No: | Description | Admit Without Objection | Authentication Waived | Objection |
|---|---|---|---|---|
| 54 | MITG 1222-23 M.L. Krakauer to R. Haught "HP Direct Online Issues" | | | |
| 55 | March 5, 2004 Letter from Del Mitchell to Carleton Fiorina | | | |
| 56 | MITG's Initial Disclosures | | | |
| 57 | Dec. 1, 2003 T. Bloomquist to S. Brisco "RDHJ/BillCrowley call" | | | |
| 58 | HP 1288 D. Thompson to Troy Bloomquist, "Please Check This" | | | |
| 59 | Jan. 7, 2004 T. Bloomquist to C. Bloomquist "Here are some of the pics…" | | | |
| 60 | HP 1245-1246 Ronald Haught to Troy Bloomquist "Hey" | | | |
| 61 | April 29, 2003 T. Bloomquist to S. Brisco "Friday" | | | |
| 62 | May 1, 2003 T. Bloomquist to S. Brisco "Your stay in Quincy" | | | |
| 63 | May 5, 2003 T. Bloomquist to S. Brisco "Your hotel info" | | | |
| 64 | HP 1923 D. Robertson to Troy Bloomquist "Reservations" | | | |
| 65 | HP 1919 Ronald Haught to Troy Bloomquist "Golf Outing Invoice" | | | |
| 66 | HP 1873 S. Brisco to Troy Bloomquist "Travel Plans" | | | |
| 67 | MITG 036-66 Troy Bloomquist to Ronald Haught "Fw:PBCO Metrics" | | | |
| 68 | HP 2176 Troy Bloomquist to Ronald Haught "Fw: Deloitte Ariba Spare Parts" | | | |
| 69 | HP 2173 Troy Bloomquist to Ronald Haught "Fw: MITG Transition Meeting Notes" | | | |
| 70 | MITG 439-442 Troy Bloomquist to Ronald Haught, "Fw: Daily Metrics" | | | |
| 71 | HP 1390 Ronald Haught to Troy Bloomquist, "Are You Still in NE" | | | |
| 72 | HP 1382-85 Ronald Haught to Troy Bloomquist, "CIA Alert" | | | |
| | HP 1294-1300 Ronald Haught to Troy | | | |

| No: | Description | Admit Without Objection | Authentication Waived | Objection |
|-----|-------------|-------------------------|------------------------|-----------|
| 73 | Bloomquist "Fw: FREIGHTS2.xli" | | | |
| 74 | HP 1292-93 Ronald Haught to Troy Bloomquist "Appreciation Mugs" | | | |
| 75 | HP 1287 Ronald Haught to Troy Bloomquist, "Hey, Where In The World Are You Today" | | | |
| 76 | HP 1275 Ronald Haught to Troy Bloomquist, "I Can't Believe It" | | | |
| 77 | HP 1255-1256 R. Rice to Troy Bloomquist "Fw: CEAN604294192" | | | |
| 78 | HP 1250-1251 Ronald Haught to Troy Bloomquist, "IBM" | | | |
| 79 | MITG 0119-120 T. Bloomquist to R. Haught no subject | | | |
| 80 | HP004665-HP005063 - HPD Parts Accounts List Combined | | | |
| 81 | E-mail L. Meyerfeld to T. Bloomquist "Updates: HP Direct Integration –troy" | | | |
| 82 | E-mail L. Meyerfeld to T. Bloomquist "HP Direct account access question" | | | |
| 83 | E-mail L. Meyerfeld to T. Bloomquist "Call center integration" | | | |
| 84 | E-mail L. Meyerfeld to S. Williams "HP Direct HP/CPQ trade parts…" | | | |
| 85 | E-mail L. Meyerfeld to T. Bloomquist "contract for multi-vendor parts business" | | | |
| 86 | HP 000625-656 spreadsheet "cpqdirect-callstats2002" | | | |
| 87 | MITG 0615-618 "Call Specifics 2002" | | | |
| 88 | MITG 0619-625 "Daily Totals 2002" | | | |
| 89 | MITG 0634-642 "All Employees 2002" | | | |
| 90 | HP 005143-5177 spreadsheet "cpqdirect-callstats2003" | | | |
| 91 | MITG 0673-678 "Daily Totals 2003" | | | |
| 92 | MITG 0679-684 "Call Specifics 2003" | | | |
| 93 | MITG 0703-705 "All Employees 2003" | | | |

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

HEWLETT-PACKARD ........................ )
DEVELOPMENT COMPANY, L.P., ........ )
HEWLETT-PACKARD COMPANY, ......... )
and COMPAQ TRADEMARK B.V., ......... )
.............................................................. )
.......................................... Plaintiffs, ........ )
.............................................................. )
vs. ........................................................... )     Civil Action No. 04-3055
.............................................................. )
MIDWEST INFORMATION ................. )
TECHNOLOGY GROUP, INC., ............. )
.............................................................. )
.......................................... Defendant. ........ )

## DEFENDANT'S LIST OF EXHIBITS

The Defendant, **Midwest Information Technology Group, Inc.,** by its attorneys, SCHMIEDESKAMP,

ROBERTSON, NEU & MITCHELL, pursuant to the Court's scheduling order, submits the following list of

exhibits:

| Exhibit | Description | Admitted | Admitted Over Objection | Not Admitted |
|---------|-------------|----------|--------------------------|--------------|
| A | Standard Support Agreement | | | |
| B | MITG 08: Termination Notice | | | |
| C | E-mail string HP 11252-11255 re: HP Direct referring calls to MITG (Deposition Exhibit HHH) | | | |
| D | HP 1129-1131: US Parts Sales in Dollars (Deposition Exhibit Crowley F) | | | |
| E | HP 1132-1135: US Parts Call Volumes February 02 – July 04 (Deposition Exhibit Crowley G) | | | |
| F | MITG 532-535: Domain Name Consent from Troy Bloomquist | | | |

1

| Exhibit | Description | Admitted | Admitted Over Objection | Not Admitted |
|---------|-------------|----------|-------------------------|--------------|
| G | E-mails from Ron Haught to Troy Bloomquist regarding lack of call volume (Deposition Exhibit Z) | | | |
| H | HP 1097: $41k payments to MITG | | | |
| I | E-mails from Troy Bloomquist to Richard Chizek re: call volumes (Deposition Exhibit Chizek LL) | | | |
| J | HP 10826-10837: Digital Classic Call Volume Report CY03 Andover (Deposition Exhibit III) | | | |
| K | HP 108380-10849: Option 2-2 Compaq Options Call Volume Report CY03 Andover (Deposition Exhibit TTT) | | | |
| L | HP 11184-11195: DPS "800" Call Volume Report CY02 Andover (Deposition Exhibit UUU) | | | |
| M | HP 11196-11207: Spare "800" Call Volume Report CY02 Andover (Deposition Exhibit VVV) | | | |
| N | HP 11232-11241: Year 2002 Call Activity Andover (Deposition Exhibit ZZZ) | | | |
| O | HP 11007-11009: Gross Totals on orders handled at Roseville beginning 11/09/02 (Deposition Exhibit Chizek GGGG) | | | |
| P | HP 11046-11047: Roseville Order/Invoice Report 11/02/02 through 10/25/03 with Grand Totals (Deposition Exhibit Chizek LLLL) | | | |
| Q | HP 11051-11061: Daily breakdown of order totals at Roseville 11/09/02 through 10/25/03 (Deposition Exhibit Chizek NNNN) | | | |
| R | Computer disc labeled HP Info by Customer 2002-2004 | | | |
| S | HP 235: Percentage breakdown of MITG business | | | |

| Exhibit | Description | Admitted | Admitted Over Objection | Not Admitted |
|---|---|---|---|---|
| T | HP 10893: Spares Business Summary (Deposition Exhibit RRRR) | | | |
| U | HP 3313-3320: HP Selected for Nortel WW Sun Support | | | |
| V | HP 2534-2535: CSN Backorders | | | |
| W | HP 2616-2617: CSN Backorders | | | |
| X | HP 2734: CSN Issues | | | |
| Y | HP 6132-6134: Chizek e-mail dated 01/16/04 (Deposition Exhibit Chizek NN) | | | |
| Z | HP 3682: Daily Sales CSN v. Sourced e-mail 9/17/02 | | | |
| AA | HP 3683: Customer Upset with CSN Pricing e-mail 9/17/02 | | | |
| BB | HP 3710-3716: Customer Upset with CSN Pricing | | | |
| CC | HP 3752: Customer Upset about CSN Pricing e-mail 8/26/02 | | | |
| DD | HP 5683: Compaq Phone List (Deposition Exhibit Chizek ZZ) | | | |
| EE | HP 1270: New Acct. Set-Up 12/17/03 (Deposition Exhibit HH) | | | |
| FF | Deposition Exhibit Chizek MM | | | |
| GG | HP 5084-5087 Deposition Exhibit Chizek OO | | | |
| HH | HP 10874-10885: Year 2003 Call Activity (Deposition Exhibit LLL) | | | |
| II | MITG 082-085 Deposition Exhibit KK | | | |
| JJ | HP 001417: e-mail RE: American Memory 9/8/03 | | | |

3

| Exhibit | Description | Admitted | Admitted Over Objection | Not Admitted |
|---------|-------------|----------|-------------------------|--------------|
| KK | HP 002504-002505 e-mail RE: try this one... 9/19/03 | | | |
| LL | MITG 604: e-mail 2/7/02 | | | |
| MM | MITG 612-614:  MITG Financials 2002-2004 | | | |
| NN | MITG 1023-1024:  January 2004 Totals | | | |
| OO | MITG 1025-1026:  Spreadsheet Year 2004 | | | |
| PP | MITG 615-618: Call Specifics 2002 | | | |
| QQ | MITG 619-625: Daily Totals 2002 | | | |
| RR | MITG 633: Trends 2002 | | | |
| SS | MITG 673-678: Daily Totals 2003 | | | |
| TT | MITG 679-684: Call Specifics 2003 | | | |
| UU | MITG 711-717: Trends 2003 | | | |
| VV | MITG 718: Daily Totals 2004 | | | |
| XX | MITG 719: Call Specifics 2004 | | | |
| YY | MITG 724: Trends 2004 | | | |
| ZZ | MITG 01-07: Arbitration Decision | | | |
| AAA | MITG 034-066: PBCO Metrices | | | |
| BBB | MITG 079-085: | | | |
| CCC | MITG 493-494: Product Announcement 11/12/02 | | | |
| DDD | MITG 101-102: Deposition Exhibit Crowley B | | | |
| EEE | MITG 430-435: Deposition Exhibit Crowley C | | | |
| FFF | HP 1228-1230:  Deposition Exhibit Crowley J | | | |

4

| Exhibit | Description | Admitted | Admitted Over Objection | Not Admitted |
|---------|-------------|----------|-------------------------|--------------|
| GGG | HP Disc Document Production 06A: Spreadsheet/Inv 02-04.xls | | | |
| HHH | Declaration of Richard Chizek | | | |
| III | HP 10131-10139 | | | |
| JJJ | HP 11095-11163: eSpares Worksheet | | | |
| KKK | HP 10896-10935: CSN List | | | |

MIDWEST INFORMATION TECHNOLOGY GROUP, INC., Defendant/Counterclaim Plaintiff

s/_____James A. Hansen_____
James A. Hansen IL Bar #6244534
Attorney for Defendant/Counterclaim Plaintiff,
Midwest Information Technology Group, Inc.
Schmiedeskamp, Robertson, Neu & Mitchell
525 Jersey Street, P. O. Box 1069
Quincy, IL 62306-1069
Telephone: (217) 223-3030
Facsimile: (217) 223-1005
E-mail: jhansen@srnm.com

5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P., HEWLETT-PACKARD COMPANY, AND COMPAQ TRADEMARK B.V. | § § § § § | |
| Plaintiffs/Counter-Defendants | § § | |
| vs. | § § | Civil Action No. 04-3055 |
| MIDWEST INFORMATION TECHNOLOGY GROUP, INC. | § § § | |
| Defendant/ Counter-Plaintiff | § § § § | |

## JURY CHARGE (JOINT)

## INSTRUCTION NO 1.01 -- FUNCTIONS OF THE COURT AND THE JURY

Members of the jury, you have seen and heard all the evidence and arguments of the attorneys. Now I will instruct you on the law.

You have two duties as a jury. Your first duty is to decide the facts from the evidence in the case. This is your job, and yours alone.

Your second duty is to apply the law that I give you to the facts. You must follow these instructions, even if you disagree with them. Each of the instructions is important, and you must follow all of them.

Perform these duties fairly and impartially.

Nothing I say now, and nothing I said or did during the trial, is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.01

## INSTRUCTION NO. 1.02 --NO INFERENCE FROM JUDGE'S QUESTIONS (only if necessary)

During this trial, I have asked a witness a question myself. Do not assume that because I asked questions I hold any opinion on the matters I asked about, or on what the outcome of the case should be.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.02

## INSTRUCTION NO. 1.03 -- ALL LITIGANTS EQUAL BEFORE THE LAW

In this case the parties are corporations. All parties are equal before the law. A corporation is entitled to the same fair consideration that you would give any individual person.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.03

## INSTRUCTION NO. 1.04 – EVIDENCE

The evidence consists of the testimony of the witnesses, the exhibits admitted in evidence and stipulations.

A stipulation is an agreement between both sides that certain facts are true.

I have taken judicial notice of certain facts. You must accept those facts as proved.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.04

## INSTRUCTION NO. 1.05 -- DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by the reading or showing of video depositions.  You should give this testimony the same consideration you would give it had the witnesses appeared and testified here in court.


*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.05

## INSTRUCTION NO. 1.06 -- WHAT IS NOT EVIDENCE

Certain things are not to be considered as evidence. I will list them for you:

First, if I told you to disregard any testimony or exhibits or struck any testimony or exhibits from the record, such testimony or exhibits are not evidence and must not be considered.

Second, anything that you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded.

Third, questions and objections or comments by the lawyers are not evidence. Lawyers have a duty to object when they believe a question is improper. You should not be influenced by any objection, and you should not infer from my rulings that I have any view as to how you should decide the case.

Fourth, the lawyers' opening statements and closing arguments to you are not evidence. Their purpose is to discuss the issues and the evidence. If the evidence as you remember it differs from what the lawyers said, your memory is what counts.

*Source*: Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.06

## INSTRUCTION NO. 1.07 -- NOTE-TAKING

Any notes you have taken during this trial are only aids to your memory. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollections or impressions of each juror about the testimony.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.07

## <u>INSTRUCTION NO. 1.08 -- CONSIDERATION OF ALL EVIDENCE REGARDLESS OF WHO PRODUCED</u>

In determining whether any fact has been proven, you should consider all of the evidence bearing on the question regardless of who introduced it.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.08

## INSTRUCTION NO. 1.09 -- LIMITED PURPOSE OF EVIDENCE (only if needed)

You will recall that during the course of this trial I instructed you that I admitted certain evidence for a limited purpose. You must consider this evidence only for the limited purpose for which it was admitted.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.09

## INSTRUCTION NO. 1.11 -- WEIGHING THE EVIDENCE

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life.

In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inference you make must be reasonable and must be based on the evidence in the case.

*Source*: Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.11

## INSTRUCTION NO. 1.12 -- DEFINITION OF "DIRECT" AND "CIRCUMSTANTIAL" EVIDENCE

You may have heard the phrases "direct evidence" and "circumstantial evidence." Direct evidence is proof that does not require an inference, such as the testimony of someone who claims to have personal knowledge of a fact. Circumstantial evidence is proof of a fact, or a series of facts, that tends to show that some other fact is true.

As an example, direct evidence that it is raining is testimony from a the witness who says, "I was outside a minute ago and I saw it raining." Circumstantial evidence that it is raining is the observation of someone entering a room carrying a wet umbrella.

The law makes no distinction between the weight to be given to either direct or circumstantial evidence. You should decide how much weight to give to any evidence. In reaching your verdict, you should consider all the evidence in the case, including the circumstantial evidence.

*Source*: Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.12

## INSTRUCTION NO. 1.13 -- TESTIMONY OF WITNESSES (DECIDING WHAT TO BELIEVE)

You must decide whether the testimony of each of the witnesses is truthful and accurate, in part, in whole, or not at all. You also must decide what weight, if any, you give to the testimony of each witness.

In evaluating the testimony of any witness, you may consider, among other things:

- the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

- the witness's memory;

- any interest, bias, or prejudice the witness may have;

- the witness's intelligence;

- the manner of the witness while testifying;

- and the reasonableness of the witness's testimony in light of all the evidence in the case.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.13

## INSTRUCTION NO. 1.18 – ABSENCE OF EVIDENCE

The law does not require any party to call as a witness every person who might have knowledge of the facts related to this trial. Similarly, the law does not require any party to present as exhibits all papers and things mentioned during this trial.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.18

## INSTRUCTION NO. 1.23 -- SUMMARIES

Certain spreadsheets relating to revenue and profit of MITG and HP are in evidence. It is up to you to decide if the summaries are accurate.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.23

## INSTRUCTION NO. 1.16 -- LAWYER INTERVIEWING WITNESS

It is proper for a lawyer to meet with any witness in preparation for trial.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.16

## INSTRUCTION NO. 1.27 -- BURDEN OF PROOF

When I say a particular party must prove something by "a preponderance of the evidence," or when I use the expression "if you find," or "if you decide," this is what I mean: When you have considered all the evidence in the case, you must be persuaded that it is more probably true than not true.

*Source*: Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.27

## INSTRUCTION NO. 1.30 -- PROXIMATE CAUSE

When I say "proximate cause" I mean that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred, and in order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.30

## INSTRUCTION NO. 1.31 -- NO NEED TO CONSIDER DAMAGES INSTRUCTION

If you decide for the Defendant on the question of liability, then you should not consider the question of damages.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.31

## INSTRUCTION NO. 1.32 -- SELECTION OF PRESIDING JUROR; GENERAL VERDICT

Upon retiring to the jury room, you must select a presiding juror. The presiding juror will preside over your deliberations and will be your representative here in court.

Forms of verdict have been prepared for you.

Take these forms to the jury room, and when you have reached unanimous agreement on the verdict, your presiding juror will fill in and date the appropriate form, and all of you will sign it.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.32

## INSTRUCTION NO. 1.33 -- COMMUNICATION WITH COURT

I do not anticipate that you will need to communicate with me. If you do need to communicate with me, the only proper way is in writing. The writing must be signed by the presiding juror, or, if he or she is unwilling to do so, by some other juror. The writing should be given to the marshal, who will give it to me. I will respond either in writing or by having you return to the courtroom so that I can respond orally.

If you do communicate with me, you should not indicate in your note what your numerical division is, if any.

*Source*: Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.33

## INSTRUCTION NO. 1.34 -- DISAGREEMENT AMONG JURORS

The verdicts must represent the considered judgment of each juror. Your verdicts, whether for or against the parties, must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to reexamine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of other jurors or for the purpose of returning a unanimous verdict.

All of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement that is consistent with the individual judgment of each juror. You are impartial judges of the facts.

*Source*:  Federal Civil Jury Instruction of the Seventh Circuit, General Instructions § 1.34

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HEWLETT-PACKARD | § | |
| DEVELOPMENT COMPANY, L.P., | § | |
| HEWLETT-PACKARD COMPANY, | § | |
| AND COMPAQ TRADEMARK B.V. | § | |
| | § | |
| Plaintiffs/Counter-Defendants | § | |
| | § | |
| vs. | § | Civil Action No. 04-3055 |
| | § | |
| MIDWEST INFORMATION | § | |
| TECHNOLOGY GROUP, INC. | § | |
| | § | |
| | § | |
| Defendant/ Counter-Plaintiff | § | |
| | § | |

## PLAINTIFFS/COUNTER-DEFENDANTS' PROPOSED JURY INSTRUCTIONS

COME NOW, Plaintiffs/Counter-Defendants, Hewlett-Packard Development Company,

L.P., Hewlett-Packard Company and Compaq Trademark, B.V. and submits these proposed

instructions as to their affirmative claims and in opposition to Defendant/Counter-Plaintiff's

claims.

PLAINTIFFS'/COUNTER-DEFENDANTS' PROPOSED JURY INSTRUCTIONS

The following instructions relate to Plaintiffs' claims against MITG.

## INSTRUCTION NO. 1 -- DEFINITION OF INCONTESTABLE

A trademark registration on the Principal Register of the United States Patent and Trademark Office is evidence of the validity of the registered mark and the registrant's exclusive right to use the mark in connection with the goods or services named in the registration. A mark that has been registered and used for more than five years is "incontestable" meaning that the registration is *conclusive* evidence of the validity of the trademark and the owner's exclusive right to use that mark for the registered goods and services.

## INSTRUCTION NO. 2 – GENERAL INSTRUCTION ON FEDERAL TRADEMARK REGISTRATION

Plaintiffs claim exclusive rights in the trademark "HP" as registered for computer hardware and software, as well as computer parts and accessories and other related products and services. Plaintiffs also claim exclusive rights in the trademark "COMPAQ" as registered for computer hardware and software and related products and accessories. The HP and COMPAQ trademarks have been registered with the United States Patent and Trademark Office for more than five years and have become incontestable.

Plaintiffs claim that MITG registered and used certain internet domain names that include Plaintiffs' trademarks in a manner that creates a "likelihood of confusion" between Plaintiffs' and MITG's businesses and, as a result, use of the domain names infringes plaintiffs' trademark rights.

Given: _____

Given as Modified: _____

Denied: _____

Withdrawn: _____

By the Court: _____    Dated: _____

*Source*: 15 U.S.C. § 1065, 1115(a);

## INSTRUCTION NO. 3 -- FEDERAL TRADEMARK INFRINGEMENT

In order to succeed on its claim of trademark infringement, the plaintiff must have established (1) that its trademark is protectable and (2) that the defendant has used a mark that is likely to cause confusion among consumers. Under federal law, Plaintiffs' marks HP and COMPAQ are incontestable based on registration and use for more than five consecutive years, so there is no issue as to whether or not the trademarks are protectable. The issue, then, is whether there is a likelihood of consumer confusion. A "likelihood of confusion" may be found if the defendant has used a mark or name in connection with its business that is likely to cause confusion, cause mistake, or deceive consumers. The factors to consider in determining if there is a likelihood of consumer confusion are:

- Similarity between the marks in appearance and suggestion;

- Similarity of the products [or services];

- Area and manner of concurrent use of the products [or services];

- The degree of care likely to be exercised by consumers;

- The strength of the complainant's mark;

- Any evidence of actual confusion; and

- The defendant's intent (or lack thereof) to palm off its product [or services] as that of another.

These factors are not a mechanical checklist; the proper weight given to each factor will vary depending on the facts of the case. Evidence of actual confusion is not necessary to find that there is a likelihood of confusion.

In light of these considerations and your common experience, you must determine if the relevant consumers would be confused as to the origin of MITG's web sites upon encountering

PLAINTIFFS'/COUNTER-DEFENDANTS' PROPOSED JURY INSTRUCTIONS

the web sites in the marketplace, or would erroneously assume that there was an association or affiliation between Plaintiffs and MITG based on MITG's use of the "HP" and/or "COMPAQ" trademarks in its domain names, or that there was an endorsement, approval, or sponsorship by Plaintiffs of MITG's web site(s).

Given: _____

Given as Modified: _____

Denied: _____

Withdrawn: _____

By the Court: _____     Dated: _____

*Sources*: 15 U.S.C. § 1114(1); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

**PLAINTIFFS'/COUNTER-DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

## INSTRUCTION NO. 4 -- FEDERAL UNFAIR COMPETITION UNDER SECTION 43(A) OF THE LANHAM ACT

In order to succeed on its claim of unfair competition against the defendant, plaintiffs must prove that defendant used a false or misleading description or representation in connection with its business that would misrepresent the nature, qualities, or origin of the defendant's goods and services. To succeed on a claim under §43(a) of the Lanham Act, plaintiffs must show (1) that they have rights in a valid mark and (2) that Defendant's use creates a likelihood of confusion, deception, or mistake as to the origin of the defendant's products or services. The following factors should be reviewed to determine likelihood of confusion: (a) similarity between the marks; (b) similarity of the products (or services); (c) the area and manner of concurrent use; (d) degree of care likely to be exercised by consumers; (e) strength of plaintiff's mark; (f) actual confusion, if any; and (g) the defendant's intent to "palm off" its product (or services) as originating from or being affiliated with plaintiff. No single factor is dispositive.

Given: _____

Given as Modified: _____

Denied: _____

Withdrawn: _____

By the Court: _____ Dated: _____

*Sources:* 15 USC § 1125(a); *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001); *Central Mfg. Co., v. Brett*, 2005 U.S. Dist. Lexis 23379 (N.D. Ill. 2005); *Dunn v. Gull*, 990 F.2d 348 (7th Cir. 1993).

**PLAINTIFFS'/COUNTER-DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

## INSTRUCTION 5 – TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER ILLINOIS LAW

In order to prevail on a trademark infringement claim, a plaintiff must demonstrate: (1) that its mark is a valid mark entitled to legal protection; (2) that defendant has used a similar mark; and (3) that defendant's use of the similar mark creates a "likelihood of confusion" by the consuming public.  In determining whether likelihood of confusion exists, you may consider such factors as: (a) the similarity of the marks in appearance and suggestion; (b) similarity of the products or services; (c) the area and manner of current use; (d) the degree of care likely to be exercised by customers; (e) the strength of the complainant's mark; (f) actual confusion; and (g) an intent on the part of the infringer to palm off his products as those of the complainant.   It is not necessary to resolve all factors in favor of plaintiffs to sustain their claim of infringement.

The same set of facts and circumstances may be used to support a claim for both trademark infringement and unfair competition.

Given: _____

Given as Modified: _____

Denied: _____

Withdrawn: _____


By the Court: _____ Dated: _____

Source:  *Thompson v. Spring-Green Lawn Care Corp.*, 126 Ill. App. 3d 99, 105 (Ill. App. Ct. 1984); *Bingham v. Inter-Track Partners*, 234 Ill. App. 3d 615, 619 (Ill. App. Ct. 1992); *James Burrough Ltd. v. Sign of The Beefeater, Inc.*, 540 F.2d 266 (7th Cir. 1976).

PLAINTIFFS'/COUNTER-DEFENDANTS' PROPOSED JURY INSTRUCTIONS

## INSTRUCTION NO. 6 -- TRADEMARK DAMAGES

If you found that MITG infringed Plaintiffs' marks under federal or state trademark law

or unfair competition law you must determine what damages Plaintiffs are entitled to. If you

have found such infringement or unfair competition, plaintiffs are entitled to recover the

following:

1. Plaintiff's actual damages, which is the amount of actual monetary harm to Plaintiff.

2. MITG's profits for the period of infringement or unfair competition. These profits
   are often awarded to avoid unjust enrichment of the defendant, to act as a deterrent
   for future conduct, or to compensate the plaintiff where there is an inability to show
   actual damages but plaintiff has suffered some harm.

Given:            _____

Given as Modified:    _____

Denied:            _____

Withdrawn:        _____

By the Court: _____    Dated: _____

Source: *Web Printing Controls Co. Inc. v. Oxy-Dry Corp.*, 906 F.2d 1202 (7th Cir. 1990); *Roulo
v. Russ Berrie & Co.*, 886 F.2d 931, 941 (7th Cir. 1989); *R.J. Reynolds Tobacco Company v.
Premium Tobacco Stores, Inc.*, 2004 U.S. Dist. LEXIS 13443 (N.D. Ill. 2004)

## INSTRUCTION NO. 7 -- WILLFUL TRADEMARK INFRINGEMENT/UNFAIR COMPETITION AND ENTITLEMENT TO ATTORNEYS' FEES

If you find that MITG has infringed Plaintiffs' trademark rights or engaged in unfair competition, then you must next determine by a preponderance of the evidence whether its acts were deliberate and willful or if the MITG acted in bad faith, vexatiously, wantonly or for oppressive reasons.

Given: _____

Given as Modified: _____

Denied: _____

Withdrawn: _____

By the Court: _____    Dated: _____

*Sources*: 15 U.S.C. § 1117; *BASF Corporation v. Old World Trading Company, Inc.* 41 F.3d 1081 (7th Cir. 1994); *Thompson v. Spring-Green Lawn Care Corp.* 126 Ill. App. 3d 99, 105 (Ill. App. Ct. 1984)

**PLAINTIFFS'/COUNTER-DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

# VERDICT FORM

ANSWER ALL QUESTIONS BY A PREPONDERANCE OF THE EVIDENCE

**Question No. 1**

Do you find, from a preponderance of the evidence that MITG infringed on Plaintiffs' "HP"

and/or "COMPAQ" marks through use of the domain names?

Answer "Yes" or "No":

Yes: _____

No: _____

Sources: 15 U.S.C. § 1114; *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000).

**Question Number 2:**

Do you find from a preponderance of the evidence that MITG's use of the domain names

constituted unfair competition?

Answer "Yes" or "No":

Yes: _____

No: _____

**Question No. 3**

Do you find from a preponderance of the evidence that MITG engaged in trademark

infringement or unfair competition under Illinois state law?

Answer "Yes" or "No":

Yes: _____

No: _____

**PLAINTIFFS'/COUNTER-DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

If your answer to Questions 1, 2 and 3 are NO, then your deliberations are complete. You should disregard the remaining numbered questions in this section and go to Verdict B at the end of this Verdict From and sign it. If you answered Questions 1, 2 or 3 YES, you should answer questions 4 and 5.

**Question No. 4**

If you answered "Yes" to either Question No. 1, 2, or 3, what amount of money do you find

should be awarded to Plaintiffs?

Answer in dollars and cents:

$ _____

**Question No. 5**

Do you find from a preponderance of the evidence that MITG's actions were deliberate

and willful or in bad faith, vexatiously, wantonly or for oppressive reasons?

Answer "yes" or "no":

Yes: ____

No: ____

Continue on with your verdict and sign Verdict A at the end of this Verdict Form.

Having answered the preceding questions, and signed either Verdict Form A or B, you have

completed your verdict as to HP's claims against MITG.

**PLAINTIFFS'/COUNTER-DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

## VERDICT A

We the jury find for HP and against MITG on HP's claims:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

## VERDICT B

We the jury find for MITG, and against HP on HP's claims.

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

_____            _____

*Sources:* IPI 718V

The following instructions relate to MITG's claim against HP:

## INSTRUCTION NO. 8 -- MITG'S CLAIM FOR BREACH OF CONTRACT

MITG and Compaq Direct, Inc., a subsidiary of Compaq and predecessor to HP, entered into a contract.

The terms of that contract are as follows:

-MITG was to provide Compaq Direct, Inc. ("CDI") with computer related support services which shall include, but not be limited to, computer hardware maintenance and repair. These services will be offered to CDI's end users, customers, companies or commercial entities (collectively "Customers") directed or referred by CDI to MITG.

- The Standard Support Agreement provided MITG the exclusive right to provide parts and services to the Customers.

-During the term of the Standard Support Agreement, when a CDI customer ordered a part not in Compaq's inventory for any reason (such as it was obsolete, backordered or made by a third party) MITG found a vendor, ordered the part from the vendor for shipment to the customer and invoiced Compaq/HP Direct. These parts were referred to as "sourced" parts. Compaq/HP Direct generated the invoice to the customer and reimbursed MITG for the cost of the product and paid MITG 75% of the gross profit on the part sale.

-If the customer ordered a Compaq/HP Direct part that was in stock, MITG ordered the part through Compaq/HP Direct and Compaq/HP Direct handled the rest of the transaction, such as shipping, invoicing, etc. No monies were paid to MITG for the sale of these parts.

-MITG could also source in stock ("CSN") parts if certain conditions were met, including that the product could be sourced from a third party vendor at a price at least $175 less expensive

then through Compaq's inventory system (or $100 for memory and hard drives) (the "MITG Bible Exception").

--CDI paid MITG a set dollar amount per call for calls received into MITG's call center, with a minimum monthly payment of $41,000, to pay for the call center operations.

*Source:* IPI 700.01

## **INSTRUCTION NO. 9 -- BREACH OF CONTRACT/BURDEN OF PROOF**

MITG has the burden of proving each of the following propositions:

First, that MITG performed all obligations required of it under the contract.

Second, that HP failed to perform it obligations under the contract and breached said contract.

Third, as a result of the breach of contract, MITG sustained damages.

If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff. On the other hand, if you find from your consideration of all the evidence that any of those propositions has not been proved, then your verdict should be for the defendant.

Source: IPI 700.19

## INSTRUCTION NO. 10 -- NOMINAL DAMAGES

If MITG establishes a breach of contract, but does not suffer or prove any actual damages, the law allows for an award of nominal damages as recognition of some breach of duty, but not as a measure of compensation for loss or detriment suffered. Nominal damages are a trivial amount, thus if you find that nominal damages should be awarded, then you should award MITG $1.00.

Sources: *Shirley's Realty, Inc. v.* Hunt, 160 S.W.3d 804, 808 (Mo. App. 2005); *Simpkins v. Ryder Freight Systems, Inc.*, 855, S.W. 2d 416, 422 (Mo. App. 1993). Thus, nominal damages are set at a "trifling sum, usually no more than $1.00, sometimes less." *Simpkins,* 855 S.W.2d at 423, *citing Seelig v. Missouri, K&T Ry., Co.*, 230 S.W. 94, 102 (Mo. 1921)

# VERDICT FORM

ANSWER ALL QUESTIONS BY A PREPONDERANCE OF THE EVIDENCE

## Question No. 1

Do you find, from a preponderance of the evidence, that HP breached the contract with MITG?

Answer "Yes" or "No":

Yes: _____

No: _____

If your answer to Question 1 is NO, then your deliberations are complete. You should disregard the remaining numbered question in this section and go to Verdict D at the end of this Verdict From and sign it. If you answered Questions 1, 2 or 3 YES, you should answer questions 4 and 5.

## Question No. 2

Do you find from a preponderance of the evidence that MITG is entitled to an award of nominal damages?

Answer "Yes" or "No":

Yes: _____

No: _____

Continue on with your verdict and sign Verdict C at the end of this Verdict Form.

Having answered the preceding questions, and signed either Verdict Form C or D, you have completed your verdict as to MITG's claim against HP.

**VERDICT C**

We the jury find for MITG and against HP on MITG's claims:

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

_____          _____

## VERDICT D

We the jury find for HP and against MITG on MITG's claims.

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

*Sources:* IPI 718V

## INSTRUCTION NO. 1 -- DEFINITION OF INCONTESTABLE

A trademark registration on the Principal Register of the United States Patent and Trademark Office is evidence of the validity of the registered mark and the registrant's exclusive right to use the mark in connection with the goods or services named in the registration. A mark that has been registered and used for more than five years is incontestable meaning that the registration is conclusive evidence of the validity of the trademark and the owner's exclusive right to use that mark for the registered goods and services.

15 U.S.C. §1065

Submitted by Defendant/Counterclaim Plaintiff

**INSTRUCTION NO. 2 -- GENERAL INSTRUCTION ON FEDERAL
TRADEMARK REGISTRATION**

Plaintiffs claim exclusive rights in the trademark "HP" as registered for computer

hardware and software, as well as computer parts and accessories and other related

products and services. Plaintiffs also claim exclusive rights in the trademark "COMPAQ"

as registered for computer hardware and software and related products and accessories.

The HP and COMPAQ trademarks have been registered with the United States Patent

and Trademark Office for more than five years and have become incontestable.

Plaintiffs claim that MITG registered and used certain internet domain names that

include Plaintiffs' trademarks in a manner that creates a "likelihood of confusion"

between Plaintiffs' and MITG's products and services and, as a result, use of the domain

names infringes plaintiffs' trademark rights.

Given: _____

Given as Modified: _____

Denied: _____

Withdrawn: _____

By the Court: _____  Dated:

_____

*Source*: 15 U.S.C. § 1065, 1115(a);

Submitted by Defendant/Counterclaim Plaintiff

## **INSTRUCTION NO. 3 -- FEDERAL TRADEMARK INFRINGEMENT**

In order to succeed on its claim of trademark infringement, the plaintiff must establish (1) that its trademark is protectable and (2) that the defendant has used a mark that is likely to cause confusion among consumers. A "likelihood of confusion" may be found if the defendant has used a mark or name in connection with its business that is likely to cause confusion, cause mistake, or deceive consumers. The factors to consider in determining if there is a likelihood of consumer confusion are:

- Similarity between the marks in appearance and suggestion;

- Similarity of the products [or services];

- Area and manner of concurrent use of the products [or services];

- The degree of care likely to be exercised by consumers;

- The strength of the complainant's mark;

- Any evidence of actual confusion; and

- The defendant's intent (or lack thereof) to palm off its product [or services] as that of another.

These factors are not a mechanical checklist; the proper weight given to each factor will vary depending on the facts of the case. Evidence of actual confusion is not necessary to find that there is a likelihood of confusion.

In light of these considerations and your common experience, you must determine if the relevant consumers would be confused as to the origin of MITG's products and services upon encountering the web sites in the marketplace, or would erroneously assume that there was an association or affiliation between Plaintiffs and MITG based on MITG's use of the "HP" and/or "COMPAQ" trademarks in its domain names, or that

there was an endorsement, approval, or sponsorship by Plaintiffs of MITG's products and

services.

Given: _____

Given as Modified: _____

Denied: _____

Withdrawn: _____

By the Court: _____    Dated:


_____

*Sources*: 15 U.S.C. § 1114(1)(a); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456,
461 (7th Cir. 2000).
Submitted by Defendant/Counterclaim Plaintiff

## INSTRUCTION NO. 4 -- FEDERAL UNFAIR COMPETITION UNDER SECTION 43(A) OF THE LANHAM ACT

In order to succeed on its claim of unfair competition against the defendant, plaintiffs must prove that the defendant used a false or misleading description or representation in connection with its business that would misrepresent the nature, qualities, or origin of the defendant's goods and services.  To succeed on a claim under §43(a) of the Lanham Act, plaintiffs must show (1) that they have rights in a valid mark and (2) that Defendant's use creates a likelihood of confusion, deception, or mistake as to the origin of the defendant's products or services. The following factors should be reviewed to determine likelihood of confusion: (a) similarity between the marks; (b) similarity of the products (or services); (c) the area and manner of concurrent use; (d) degree of care likely to be exercised by consumers; (e) strength of plaintiff's mark; (f) actual confusion, if any; and (g) the defendant's intent to "palm off" its product (or services) as originating from or being affiliated with plaintiff.  Even though no single factor is dispositive the three most important factors are the similarity of the marks, the intent of the defendant and evidence of actual confusion.

Given: _____

Given as Modified: _____

Denied: _____

Withdrawn: _____

By the Court: _____ Dated: _____

*Sources:* 15 USC § 1125(a); *Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001); *Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 f.2d 1176 (7th Cir. 1989); *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989). Submitted by Defendant/Counterclaim Plaintiff

## INSTRUCTION 5 – TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION UNDER ILLINOIS LAW

In order to prevail on a trademark infringement claim, a plaintiff must demonstrate: (1) that its mark is a valid mark entitled to legal protection; (2) that defendant has used a similar mark; and (3) that defendant's use of the similar mark creates a "likelihood of confusion" by the consuming public. In determining whether likelihood of confusion exists, you may consider such factors as: (a) the similarity of the marks in appearance and suggestion; (b) similarity of the products or services; (c) the area and manner of current use; (d) the degree of care likely to be exercised by customers; (e) the strength of the complainant's mark; (f) actual confusion; and (g) an intent on the part of the infringer to palm off his products as those of the complainant. It is not necessary to resolve all factors in favor of plaintiffs to sustain their claim of infringement.

The same set of facts and circumstances may be used to support a claim for both trademark infringement and unfair competition.

Given: _____

Given as Modified: _____

Denied: _____

Withdrawn: _____

By the Court: _____ Dated: _____

Source: *Thompson v. Spring-Green Lawn Care Corp.*, 126 Ill. App. 3d 99, 105 (Ill. App. Ct. 1984); *Bingham v. Inter-Track Partners*, 234 Ill. App. 3d 615, 619 (Ill. App. Ct. 1992); *James Burrough Ltd. v. Sign of The Beefeater, Inc.*, 540 F.2d 266 (7th Cir. 1976). Submitted by Defendant/Counterclaim Plaintiff

## INSTRUCTION NO. 6 -- TRADEMARK DAMAGES

If you found that MITG infringed Plaintiffs' marks under federal or state

trademark law or unfair competition law you must determine what damages Plaintiffs are

entitled to. If you have found such infringement or unfair competition, plaintiffs are

entitled to recover the following:

1. Plaintiff's actual damages, which is the amount of actual monetary harm to
   Plaintiff.

2. MITG's profits for the period of infringement or unfair competition. The
   Plaintiff is required to prove defendant's sales. The Defendant must prove
   elements of cost or deductions claimed.


Given: _____

Given as Modified: _____

Denied: _____

Withdrawn: _____


By the Court: _____    Dated:


_____

Source: 15 U.S.C. §1117(a)
Submitted by Defendant/Counterclaim Plaintiff

## VERDICT FORM A

### Question No. 1

Do you find, from a preponderance of the evidence, that MITG infringed on Plaintiffs'

"HP" and/or "COMPAQ" marks through use of the domain names?

Answer "Yes" or "No":

Yes: _____

No: _____

### Question Number 2:

Do you find, from a preponderance of the evidence, that MITG's use of the domain

names constituted unfair competition?

Answer "Yes" or "No":

Yes: _____

No: _____

### Question No. 3

Do you find, from a preponderance of the evidence, that MITG engaged in trademark

infringement under Illinois state law?

Answer "Yes" or "No":

Yes: _____

No: _____

### Question No. 4

Do you find, from a preponderance of the evidence, that MITG engaged in unfair
competition under Illinois state law?

Answer "Yes" or "No":

Yes: _____

No: _____

If your answer to Questions 1, 2, 3 and 4 are NO, then your deliberations are complete. You should disregard the remaining numbered questions in this section and go to Verdict B at the end of this Verdict From and sign it. If you answered Questions 1, 2, 3 or 4 YES, you should answer question 5.

**Question No. 5**

If you answered "Yes" to either Question No. 1, 2, 3, or 4 what amount of money do you

find should be awarded to Plaintiffs?

Answer in dollars and cents:

$ _____

Continue on with your verdict and sign Verdict A at the end of this Verdict Form.

Having answered the preceding questions, and signed either Verdict Form A or B, you

have completed your verdict as to HP's claims against MITG.


Submitted by Defendant/Counterclaim Plaintiff

## VERDICT A

We the jury find for HP and against MITG on HP's claim(s) as indicated above:

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

_____        _____

Submitted by Defendant/Counterclaim Plaintiff

## VERDICT B

We the jury find for MITG, and against HP on HP's claims.

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

Submitted by Defendant/Counterclaim Plaintiff

Instruction No. _____

When you retire to the jury room you will first select a foreperson. He or she will preside during your deliberations.

Your verdict must represent the considered judgment of each of you. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without disregard of individual judgment. You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Forms of verdicts are supplied with these instructions. After you have reached your verdict, fill in and sign the appropriate form of verdict and return it to the court. Your verdict must be signed by each of you. You should not write or mark upon this or any of the other instructions given to you by the court.

The parties in this case are:

Plaintiffs/Counterclaim Defendants:    Hewlett-Packard Development Company, L.P.
Hewlett-Packard Company
Compaq Tradmark B.V.

Defendant/Counterclaim Plaintiff:    Midwest Information Technology Group, Inc.

The plaintiffs have sued the defendant for trademark infringement and unfair competition as explained in these instructions. You will return one verdict form for each of these claims.

On the plaintiffs' trademark infringement and unfair competition claims, if you find for the plaintiffs and against the defendant, then you should use Verdict Form A. If you find for the defendants and against the plaintiffs, then you should use Verdict Form B.

On the defendant's claim for breach of contract, if you find for the defendant and against the plaintiffs, then you should use Verdict Form C. If you find for the plaintiffs and against the defendant, then you should use Verdict Form D.

Fed. JI 106.01; IPI 45.03, Modified
Submitted by Defendant/Counterclaim Plaintiff

Instruction No. _____

When I use the word "contract," I mean the legally enforceable agreement between Midwest Information Technology Group, Inc. and Hewlett-Packard Company.

The terms of that contract are as follows:

-MITG was to provide CDI with computer related support services which shall include, but not be limited to, computer hardware maintenance and repair. These services will be offered to CDI's end users, customers, companies or commercial entities (collectively "Customers") directed or referred by CDI to MITG.

- The Standard Support Agreement provided MITG the exclusive right to provide parts and services to certain Customers on behalf of Compaq.

- The Standard Support Agreement further provided that CDI would refer all applicable parts and service orders to MITG.

- Under the Standard Support Agreement, MITG was to receive 75% of the profits and Compaq received 25% of the profits for all sourced parts sold to customers.

-MITG sold "sourced parts" to Customers. These sourced parts were parts not found in Compaq's inventory for various reasons, including that the parts were manufactured by a third party, which Compaq did not stock, or that the parts were "legacy" or older Compaq parts no longer carried in inventory.

-MITG acquired the sourced parts from its suppliers, had the parts shipped to the Customer, and sent daily invoices to CDI for reimbursement of the actual cost of the part, plus 75% of the profit made on the part (CDI retained the other 25%).

-MITG also took orders for spare parts stocked in Compaq's inventory (sometimes referred to as the "CSN" parts).

-MITG could also source in stock ("CSN") parts if certain conditions were met, including that the product could be sourced from a third party vendor at a price at least $175 less expensive then through Compaq's inventory system (or $100 for memory and hard drives) (the "MITG Bible Exception"). MITG also outsourced backordered CSN items.

-Unless an in-stock part fell within the MITG Bible Exception or MITG could outsource backordered CSN items, MITG did not receive a profit split on the sale of these parts, nor were they paid based on the number of parts sold or amount invoiced. When a CSN part was outsourced it was subject to the same profit split as a sourced part.

-CDI paid MITG a set dollar amount per call for calls received into MITG's call center, with a minimum monthly payment of $41,000, to pay for the call center operations.

IPI 700.01
Submitted by Defendant/Counterclaim Plaintiff

Instruction No. _____

MITG has the burden of proving each of the following propositions:

First, that MITG performed all obligations required of it under the contract.

Second, that HP failed to perform its obligations under the contract and breached said contract.

Third, as a result of the breach of contract, MITG sustained damages.


If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for MITG. If, on the other hand, you find from your consideration of all the evidence, that any of those propositions has not been proved, then your verdict should be for HP.

IPI 700.19 modified
Submitted by Defendant/Counterclaim Plaintiff

Instruction No. _____

If you decide for MITG on its claim for breach of contract, you must fix the amount of money which will reasonably compensate MITG for all loss naturally arising from the breach. In calculating MITG's damages, you should determine that sum of money that will put MITG in as good a position as it would have been in if HP had performed all of its promises under the contract.

The element of damages claimed by MITG in this case is:  Lost profits

Whether this element of damages has been proved by the evidence is for you to determine.

IPI 700.13, Modified
Submitted by Defendant/Counterclaim Plaintiff

Instruction No. _____

      Damages for breach of contract may include lost profits.  Such damage is the amount of all reasonably certain net profits MITG did not earn as a result of HP's breach.

IPI 700.15
Submitted by Defendant/Counterclaim Plaintiff

VERDICT FORM C

We, the jury, find for Midwest Information Technology Group, Inc. and against HP on MITG's breach of contract claim.

We further find that the total amount of damages suffered by Midwest Information Technology Group, Inc. as a result of HP's breach of contract is $_____.

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

_____     _____

IPI 45.03.A, Modified
Submitted by CounterPlaintiff

## VERDICT FORM D

We, the jury, find for HP and against MITG on MITG's breach of contract claim.

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

_____    _____

IPI 45.03.B, Modified
Submitted by Plaintiff

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| HEWLETT-PACKARD DEVELOPMENT COMPANY, L.P., HEWLETT-PACKARD COMPANY, and COMPAQ TRADEMARK B.V., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Civil Action No. 04-3055 |
| MIDWEST INFORMATION TECHNOLOGY GROUP, INC., | ) ) ) | |
| Defendant. | ) | |

## JOINT SUBMISSION OF PROPOSED VOIR DIRE QUESTIONS

COMES NOW the parties, by and through their attorneys Juneau, Boll & Ward, and Schmiedeskamp, Robertson, Neu & Mitchell, and for their joint voir dire questions to the jury submits the attached Exhibit A as their proposed jury voir dire questions.

1

HEWLETT-PACKARD DEVELOPMENT
COMPANY, L.P., HEWLETT-PACKARD
COMPANY, and COMPAQ TRADEMARK B.V.,
Plaintiffs/Counterclaim Defendants


s/ _____ Elizann Carroll _____
      Elizann Carroll, Texas Bar #00787209
      Juneau, Boll & Ward
      15301 Spectrum Drive, Suite 300
      Addison, TX 75001
      Telephone:  972-866-8333
      Facsimile:  972-866-8378
      E-mail:  ecarroll@juneauboll.com



MIDWEST INFORMATION TECHNOLOGY
      GROUP, INC.,
      Defendant/Counterclaim Plaintiff


s/_____ James A. Hansen _____
      James A. Hansen, IL Bar #6244534
      Attorney for Defendant/Counterclaim Plaintiff,
      Midwest Information Technology Group, Inc.
      Schmiedeskamp, Robertson, Neu & Mitchell
      525 Jersey Street, P. O. Box 1069
      Quincy, IL 62306-1069
      Telephone: (217) 223-3030
      Facsimile: (217) 223-1005
      E-mail: jhansen@srnm.com


2

# EXHIBIT A

## PROPOSED VOIR DIRE QUESTIONS

1.    Are you or any family member involved in the computer industry?
2.    If so, in what capacity?
3.    Have you ever purchased computer parts?
4.    Who have you purchased them from?
5.    Any purchases from Compaq Computer Corporation or Hewlett-Packard?
6.    Has anyone been employed by or had a family member employed in the computer industry, including with Compaq or Hewlett-Packard?
7.    In what capacity?
8.    How long was the employment?
9.    Who was the employer?
10.    In what position were you/they employed?
11.    Has anyone been employed or involved in the sale of computer parts?
12.    Has anyone been employed or involved in the purchasing of computer parts?
13.    Has anyone been involved in the sales business?
14.    Has anyone been a customer service representative?
15.    Has anyone been involved in a lawsuit for lost profits to a business?
16.    What type of lawsuit?
17.    What type of business?
18.    When was the suit?
19.    Where was the suit filed?
20.    Has anyone been involved in a lawsuit for breach of contract?
21.    Where was the suit filed?
22.    What was the nature of the suit?
23.    When was the suit?
24.    Has anyone been involved in the [registering] of domain names on the internet?
25.    Has anyone been involved in the ordering of computer parts on the internet?
26.    Is anyone here a computer science major or electrical engineer or have a background in computer technology?
27.    Has anyone ever registered domain names?
28.    Has anyone purchased any computer parts on the internet?
29.    Does anyone have experience negotiating or drafting contractual provisions, including exclusivity clauses?
30.    Anyone ever been involved in a patent or trademark dispute?
31.    Anyone ever been involved in a patent or trademark lawsuit?
32.    Where was the suit filed?
33.    What was the nature of the suit?
34.    When was the suit?
35.    Has anyone worked under contract with or as a vendor for another company?
36.    What company were you working with?

3

37. What kind of work?
38. Do you continue to do work with that company? If not, why not?
39. Did your contract give you exclusive rights to provide services or for the other company to provide services for you?
40. Has anyone ever heard of Midwest Information Technology Group?
41. Does anyone know anyone who works or worked for Midwest Information Technology Group? If yes, who?
42. Ever have any dealings with Midwest Information Technology Group? Good or bad?
43. Anyone ever own a Compaq or HP computer?
44. Ever call into a call center for Compaq or HP for assistance?
45. What was your experience with that call center?
46. What about call centers for other brands of computer – dealings with them? Good or bad?
47. Has anyone ever gone to a website thinking that it was the website of a certain company or organization and you found out it was run by another company?
48. Describe what happened.
49. Has anyone ever tried to contact a company and instead gotten a company with a similar name?
50. Describe what happened.
51. Has anyone worked for a company that merged with or was bought by another company while you were working there?

4